1   LIONEL Z. GLANCY (#134180)
    ROBERT V. PRONGAY (#270796)
2   LESLEY F. PORTNOY (#304851)
    CHARLES H. LINEHAN (#307439)
3   PAVITHRA RAJESH (#323055)
4   **GLANCY PRONGAY & MURRAY LLP**
    1925 Century Park East, Suite 2100
5   Los Angeles, California 90067
    Telephone: (310) 201-9150
6   Facsimile: (310) 201-9160
    Email: info@glancylaw.com
7
8   *Attorneys for Plaintiffs*

9            **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
10

11  SHANE MULDERRIG and RONY            Case No.:
    DEVORAH, Individually and On Behalf of
12  All Others Similarly Situated,

13                          Plaintiff,    **CLASS ACTION COMPLAINT FOR**
                                          **VIOLATIONS OF THE FEDERAL**
14          v.                            **SECURITIES LAWS**

15  AMYRIS, INC., JOHN G. MELO, and      **JURY TRIAL DEMANDED**
    KATHLEEN VALIASEK,
16
                            Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Shane Mulderrig and Rony Devorah ("Plaintiff"), individually and on behalf of all others similarly situated, by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Amyris, Inc. ("Amyris" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Amyris; and (c) review of other publicly available information concerning Amyris.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired Amyris securities between March 15, 2018 and March 19, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Amyris purports to be an industrial biotechnology company that manufactures and sells natural, sustainably-sourced products in health and wellness, clean beauty, and flavor and fragrance markets.

3.     On November 13, 2018, the Company reported poor financial results for third quarter 2018, with $14.9 million revenue compared to $22.5 million revenue in the prior year period, and attributed the performance to the "volatility of the Vitamin E market."

4.     On this news, the Company's share price fell $1.76, or nearly 30%, to close at $4.14 per share on November 14, 2018, on unusually heavy trading volume.

5.     On March 19, 2019, the Company disclosed that it would be unable to timely file its annual report due to "significant time and resources that were devoted to the accounting for and disclosure of the significant transactions with Koninklijke DSM N.V. that closed in November 2018."  The Company also disclosed that it "is in the process of completing its evaluation of internal control over financial reporting and may have further deficiencies to report."

6.     On this news, the Company's share price fell $0.78, or nearly 20%, to close at

$3.10 per share on March 20, 2019, on unusually heavy trading volume.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company lacked sufficient resources to accurately account for certain transactions; (2) that, as a result, there was a material weakness in the Company's internal controls over financial reporting; (3) that, as a result, the Company would be unable to timely file its annual report; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are located in this district.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiffs Shane Mulderrig and Rony Devorah, as set forth in the accompanying certifications, incorporated by reference herein, purchased Amyris securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Amyris is incorporated under the laws of Delaware with its principal executive offices located in Emeryville, California.   Amyris's common stock trades on the NASDAQ exchange under the symbol "AMRS."

15.     Defendant John G. Melo ("Melo") was the Chief Executive Officer of the Company at all relevant times.

16.     Defendant Kathleen Valiasek ("Valiasek") was the Chief Financial Officer of the Company at all relevant times.

17.     Defendants Melo and Valiasek, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Amyris purports to be an industrial biotechnology company that manufactures and sells natural, sustainably-sourced products in health and wellness, clean beauty, and flavor and fragrance markets.

19.     Koninklijke DSM N.V. ("Royal DSM") made a $25 million equity investment into Amyris in May 2017. Then, in November 2017, Royal DSM acquired Amyris Brasil Ltda for $58 million and entered into a long-term manufacturing partnership for Amyris's high volume products.

**Materially False and Misleading**
**Statements Issued During the Class Period**

20.     The Class Period begins on March 15, 2018. On that day, the Company announced its financial results for the year ended December 31, 2017 in a press release, reporting $143.4 million revenue and $98.4 million net loss.

21.     On April 2, 2018, the Company filed a Notification of Late Filing on Form 12b-25, stating in relevant part:

> Amyris, Inc. (the "Company") was unable to file its Annual Report on Form 10-K for the fiscal year ended December 31, 2017 (the "Form 10-K") within the prescribed time period without unreasonable effort and expense because of the significant time and resources that were devoted to the accounting for and disclosure of the significant transaction with Koninklijke DSM N.V. that closed on December 28, 2017. The Company is also continuing to assess, compile and obtain information relating to its cash flows for the coming year and is finalizing related analyses and disclosures in the Form 10-K and is completing its evaluation of the impact of the adoption of ASC 606, *Revenue from Contracts with Customers*, in 2018 and related disclosure. These activities delayed the completion of the Form 10-K.
>
> As previously reported in the Company's Quarterly Report on Form 10-Q for the fiscal quarter ended September 30, 2017, the Company identified a material weakness in internal control over financial reporting related to a lack of sufficient resources in its financial reporting function to be able to adequately identify, record and disclose non-routine transactions which remains unremediated at December 31, 2017. The Company is in the process of completing its evaluation of internal control over financial reporting.

22.     On April 17, 2018, the Company filed its annual report on Form 10-K for the period ended December 31, 2018 that substantially affirmed the results announced in the previously-issued press release. The annual report also disclosed certain material weaknesses identified by management, stating in relevant part:

> Management, under the supervision of our CEO and CFO, and oversight of the Board of Directors, conducted an assessment of the effectiveness of our internal control over financial reporting as of December 31, 2017, based on the criteria set forth in Internal Control–Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework). Based on this assessment, management has identified the material weakness described

below:

- The Company's control environment was not effective because the Company lacked a sufficient number of trained resources with assigned responsibility and accountability over the design and operation of internal controls related to complex, significant non-routine transactions as well as routine transactions and financial statement presentation and disclosure;
- The Company did not have an effective risk assessment process to identify and analyze necessary changes in significant accounting policies and practices that were responsive to: (i) changes in business operations resulting from complex significant non-routine transactions, (ii) implementation of new accounting standards and related disclosures, and (iii) completeness and adequacy of required disclosures; and
- The Company did not have an effective information and communication process to ensure that the processes and controls were effectively documented and disseminated to enable financial personnel to effectively carry out their roles and responsibilities.

As a consequence, the Company did not have effective process level control activities over the following:

- The Company did not adequately design and document controls over complex, significant non-routine transactions that included various financing arrangements and a business divestiture, all which involved multiple components including revenue elements; and
- The Company's controls over account reconciliations, review and approval of manual journal entries, and timely and complete financial statement presentation and disclosure did not operate effectively

The material weakness described above resulted in material misstatements in the gain or loss on extinguishment, gain or loss from change in fair value of derivative liabilities, derivative liabilities, collaboration revenue, and additional paid-in capital in the preliminary consolidated financial statements that were corrected prior to the issuance of the consolidated financial statements as of and for the year ended December 31, 2017. However, the material weakness creates a reasonable possibility that a material misstatement of our annual or interim consolidated financial statements that would not be prevented or detected on a timely basis. Therefore, we concluded that our internal control over financial reporting is not effective as of December 31, 2017.

23.     On May 16, 2018, the Company filed a Notification of Late Filing on Form 12b-25 for the quarterly report for the period ended March 31, 2018, reportedly due to the time devoted to the "accounting for and disclosure of the adoption of ASC 606, *Revenue from Contracts with Customers* . . . ."

24.     On May 18, 2018, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2018 and reported $22.99 million revenue and $91.49 million net loss. The report also stated that the previously-identified material weaknesses in internal control over financial reporting had not yet been remediated.

25.     On August 14, 2018, the Company filed its quarterly report on Form 10-Q for the period ended June 30, 2018, in which it reported $23.19 million revenue and $1.53 million net income. The report also stated that the previously-identified material weaknesses in internal control over financial reporting had not yet been remediated.

26.     The truth began to emerge on November 13, 2018 when the Company reported poor financial results, which it attributed to the "volatility of the Vitamin E market." For the third quarter 2018, the Company announced in a press release, in relevant part:

- Q3 2018 GAAP revenue of $14.9 million, compared with GAAP revenue of $24.2 million for Q3 2017. Third-quarter revenue of $14.9 million compared with the same period in 2017 of $22.5 million when adjusted for the loss making product sales on contracts assigned to DSM.
- Q3 2018 Adjusted gross margin of $8.2 million, or 55% of revenue, compared to Q3 of 2017 of $8.3 million, or 34%.
- Current quarter delivering at $200 million of annualized recurring revenue rate* with over 60% gross margin. Doubling recurring revenue year on year while tripling adjusted gross margin dollars.
- Sugarcane based zero calorie sweetener successfully scaled and shipping commercially

EMERYVILLE, Calif., Nov. 13, 2018 (GLOBE NEWSWIRE) -- Amyris, Inc. (Nasdaq:AMRS), the industrial bioscience company, today announced preliminary unaudited financial results for the third quarter ended September 30, 2018.

"We are pleased with the rapid ramp up of our new, zero calorie sweetener product and our continued strong recurring revenue growth," said John Melo, President and CEO of Amyris. "However, we are very disappointed with the volatility of the Vitamin E market and its direct impact on our third quarter revenue. Some of this shortfall is expected be made up with our core market revenue performance through year end."

27.     On this news, the Company's share price fell $1.76, or nearly 30%, to close at $4.14 per share on November 14, 2018, on unusually heavy trading volume.

28.     On November 15, 2018, the Company filed a Notification of Late Filing on Form 12b-25 to report that its quarterly report, filed the same day, was not timely filed "due to the time and resources devoted to the accounting for and disclosure of a waiver and amendment of the Company's senior loan facility, which were finalized on November 14, 2018."

29.     The same day, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2018, in which it reported $14.87 million revenue and $68.32 million net loss. The report also stated that the previously-identified material weaknesses in internal control

1   over financial reporting had not yet been remediated.

2      30.    The above statements identified in ¶¶20-26, 28-29 were materially false and/or

3   misleading, and failed to disclose material adverse facts about the Company's business,

4   operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the

5   Company lacked sufficient resources to accurately account for certain transactions; (2) that, as a

6   result, there was a material weakness in the Company's internal controls over financial reporting;

7   (3) that, as a result, the Company would be unable to timely file its annual report; and (4) that, as a

8   result of the foregoing, Defendants' positive statements about the Company's business, operations,

9   and prospects were materially misleading and/or lacked a reasonable basis.

10                      **Disclosures at the End of the Class Period**

11     31.    On March 19, 2019, after the market closed, the Company filed a Notification of

12   Late Filing on Form 12b-25 with the SEC. Therein, the Company stated:

13      Amyris, Inc. (the "Company") was unable to file its Annual Report on Form 10-K
        for the fiscal year ended December 31, 2018 (the "Form 10-K") within the
14      prescribed time period without unreasonable effort and expense because of the
        significant time and resources that were devoted to the accounting for and
15      disclosure of the significant transactions with Koninklijke DSM N.V. that closed in
        November 2018. The Company is also in the process of completing its evaluation
16      of internal control over financial reporting for 2018 and finalizing related
        disclosures in the Form 10-K. These activities delayed the completion of the Form
17      10-K.

18      As previously reported in Part II, Item 9A, "Controls and Procedures" of the
        Company's Annual Report on Form 10-K for the fiscal year ended December 31,
19      2017, the Company has identified a material weakness in its internal control over
        financial reporting, which material weakness remains unremediated as of December
20      31, 2018. The Company is in the process of completing its evaluation of internal
        control over financial reporting and may have further deficiencies to report. In
21      addition, the Company expects to continue to report that there is substantial doubt
        about its ability to continue as a going concern.

22     32.    On this news, the Company's share price fell $0.78, or nearly 20%, to close at

23   $3.10 per share on March 20, 2019, on unusually heavy trading volume.

24                           **CLASS ACTION ALLEGATIONS**

25     33.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

26   Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that

27   purchased or otherwise acquired Amyris securities between March 15, 2018 and March 19, 2019,

28

inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Amyris's common shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Amyris common stock were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Amyris or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Amyris; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

39.     The market for Amyris's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Amyris's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Amyris's securities relying upon the integrity of the market price of the Company's securities and market information relating to Amyris, and have been damaged thereby.

40.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Amyris's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Amyris's business, operations, and prospects as alleged herein.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Amyris's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the

Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

42.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.     During the Class Period, Plaintiff and the Class purchased Amyris's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

44.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Amyris, their control over, and/or receipt and/or modification of Amyris's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Amyris, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

45.     The market for Amyris's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Amyris's securities traded at artificially inflated prices during the Class Period. On

October 9, 2018, the Company's share price closed at a Class Period high of $9.20 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Amyris's securities and market information relating to Amyris, and have been damaged thereby.

46.     During the Class Period, the artificial inflation of Amyris's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Amyris's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Amyris and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.     At all relevant times, the market for Amyris's securities was an efficient market for the following reasons, among others:

(a)     Amyris shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Amyris filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Amyris regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Amyris was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and

1  entered the public marketplace.

2      48.    As a result of the foregoing, the market for Amyris's securities promptly digested

3  current information regarding Amyris from all publicly available sources and reflected such

4  information in Amyris's share price. Under these circumstances, all purchasers of Amyris's

5  securities during the Class Period suffered similar injury through their purchase of Amyris's

6  securities at artificially inflated prices and a presumption of reliance applies.

7      49.    A Class-wide presumption of reliance is also appropriate in this action under the

8  Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

9  because the Class's claims are, in large part, grounded on Defendants' material misstatements

10 and/or omissions.  Because this action involves Defendants' failure to disclose material adverse

11 information regarding the Company's business operations and financial prospects—information

12 that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to

13 recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable

14 investor might have considered them important in making investment decisions.  Given the

15 importance of the Class Period material misstatements and omissions set forth above, that

16 requirement is satisfied here.

17

18                    **<u>NO SAFE HARBOR</u>**

19     50.    The statutory safe harbor provided for forward-looking statements under certain

20 circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

21 The statements alleged to be false and misleading herein all relate to then-existing facts and

22 conditions. In addition, to the extent certain of the statements alleged to be false may be

23 characterized as forward looking, they were not identified as "forward-looking statements" when

24 made and there were no meaningful cautionary statements identifying important factors that could

25 cause actual results to differ materially from those in the purportedly forward-looking statements.

26 In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-

27 looking statements pleaded herein, Defendants are liable for those false forward-looking

28 statements because at the time each of those forward-looking statements was made, the speaker

had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Amyris who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Amyris's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Amyris's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Amyris's financial well-being and prospects, as specified herein.

55.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Amyris's value and performance

and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Amyris and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Amyris's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether

1    those statements were false or misleading.

2        58.    As a result of the dissemination of the materially false and/or misleading

3    information and/or failure to disclose material facts, as set forth above, the market price of

4    Amyris's securities was artificially inflated during the Class Period.  In ignorance of the fact that

5    market prices of the Company's securities were artificially inflated, and relying directly or

6    indirectly on the false and misleading statements made by Defendants, or upon the integrity of the

7    market in which the securities trades, and/or in the absence of material adverse information that

8    was known to or recklessly disregarded by Defendants, but not disclosed in public statements by

9    Defendants during the Class Period, Plaintiff and the other members of the Class acquired

10   Amyris's securities during the Class Period at artificially high prices and were damaged thereby.

11       59.    At the time of said misrepresentations and/or omissions, Plaintiff and other

12   members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff

13   and the other members of the Class and the marketplace known the truth regarding the problems

14   that Amyris was experiencing, which were not disclosed by Defendants, Plaintiff and other

15   members of the Class would not have purchased or otherwise acquired their Amyris securities, or,

16   if they had acquired such securities during the Class Period, they would not have done so at the

17   artificially inflated prices which they paid.

18       60.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act

19   and Rule 10b-5 promulgated thereunder.

20       61.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the

21   other members of the Class suffered damages in connection with their respective purchases and

22   sales of the Company's securities during the Class Period.

23                          **SECOND CLAIM**
                   **Violation of Section 20(a) of The Exchange Act**
24                    **Against the Individual Defendants**

25       62.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully

26   set forth herein.

27       63.    Individual Defendants acted as controlling persons of Amyris within the meaning

28   of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and

their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, Amyris and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

1    (d)    Such other and further relief as the Court may deem just and proper.

2

3                              **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

4

5

Dated: April 3, 2019                    **GLANCY PRONGAY & MURRAY LLP**

6

7                                        By: _s/ Lesley F. Portnoy_
                                         Lionel Z. Glancy
8                                        Robert V. Prongay
                                         Lesley F. Portnoy
9                                        Charles H. Linehan
                                         Pavithra Rajesh
10                                       1925 Century Park East, Suite 2100
                                         Los Angeles, CA 90067
11                                       Telephone:  (310) 201-9150
                                         Facsimile:   (310) 201-9160
12

13                                       *Attorneys for Plaintiffs*

                                         **LAW OFFICES OF HOWARD G. SMITH**
14                                       Howard G. Smith
                                         3070 Bristol Pike, Suite 112
15                                       Bensalem, PA 19020
                                         Telephone: (215) 638-4847
16                                       Facsimile: (215) 638-4867

17                                       *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

## SWORN CERTIFICATION OF PLAINTIFF

Amyris, Inc., **SECURITIES LITIGATION**

I, Shane Mulderrig, certify:

1. I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2. I did not purchase Amyris, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Amyris, Inc., during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ____☐ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 3/22/19

_____ DVM
(Please Sign Your Name Above)

**(REDACTED)**

**Shane Mulderrig's Transactions in Amyris, Inc.  (AMRS)**

### Account #1

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 2/14/2019 | Bought | 91 | $4.8600 |
| 2/15/2019 | Bought | 5,590 | $4.9200 |

### Account #2

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 2/26/2019 | Bought | 4,000 | $4.6500 |

### Account #3

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 2/11/2019 | Bought | 400 | $5.1690 |
| 2/11/2019 | Bought | 1,698 | $5.1651 |
| 2/11/2019 | Bought | 200 | $5.2356 |
| 2/11/2019 | Bought | 2,838 | $5.2354 |
| 2/11/2019 | Bought | 4,000 | $5.2850 |
| 2/11/2019 | Bought | 164 | $5.1000 |
| 2/11/2019 | Bought | 8,659 | $5.1070 |
| 2/26/2019 | Bought | 3,191 | $4.6900 |

## SWORN CERTIFICATION OF PLAINTIFF

## AMYRIS, INC. SECURITIES LITIGATION

I, Rony Devorah individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase the Amyris, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Amyris, Inc. securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

3/25/2019
_____
Date

DocuSigned by:
C51D167E464C4EE...
_____
Rony Devorah

**Rony Devorah's Transactions in Amyris, Inc. (AMRS)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 2/5/2019 | Bought | 670 | $5.5482 |
| 2/5/2019 | Bought | 330 | $5.1167 |
| 2/6/2019 | Bought | 1,670 | $5.1167 |
| 2/6/2019 | Bought | 1,385 | $5.1698 |
| 2/6/2019 | Bought | 1,115 | $5.1700 |
| 2/6/2019 | Bought | 1,000 | $5.4301 |
| 2/6/2019 | Bought | 430 | $5.4299 |
| 2/6/2019 | Bought | 200 | $5.4150 |
| 2/6/2019 | Bought | 100 | $4.9450 |
| 2/6/2019 | Bought | 35 | $4.9500 |
| 2/6/2019 | Bought | 33 | $4.9401 |
| 2/6/2019 | Bought | 32 | $4.9467 |
| 2/7/2019 | Bought | 1,000 | $5.5490 |
| 2/8/2019 | Bought | 8,300 | $5.5800 |
| 2/8/2019 | Bought | 1,000 | $5.4859 |
| 2/8/2019 | Bought | 900 | $5.5700 |
| 2/8/2019 | Bought | 800 | $5.5600 |
| 2/8/2019 | Bought | 300 | $5.4800 |
| 2/8/2019 | Bought | 200 | $5.4764 |
| 2/8/2019 | Bought | 200 | $5.4832 |
| 2/8/2019 | Bought | 100 | $5.4773 |
| 2/8/2019 | Bought | 100 | $5.4771 |
| 2/8/2019 | Bought | 100 | $5.4900 |
| 2/11/2019 | Bought | 5,000 | $5.4887 |
| 2/11/2019 | Bought | 4,200 | $5.5564 |
| 2/11/2019 | Bought | 715 | $5.5500 |
| 2/11/2019 | Bought | 85 | $5.5599 |
| 2/13/2019 | Bought | 2,000 | $4.7174 |
| 2/13/2019 | Bought | 500 | $4.6917 |
| 2/13/2019 | Bought | 500 | $4.6952 |
| 2/13/2019 | Bought | 100 | $4.6298 |