Robert S. Green
GREEN & NOBLIN, P.C.
2200 Larkspur Landing Circle, Ste. 101
Larkspur, California 94939
Tel: (415) 477-6700
Fax: (415) 477-6710
-and-
4500 East Pacific Coast Highway
Fourth Floor
Long Beach, California 90804
Tel: (562) 391-2487
rsg@classcounsel.com

*Liaison Counsel for Plaintiffs*

William B. Federman (admitted *pro hac vice*)
A. Brooke Murphy (admitted *pro hac vice*)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone:  405-235-1560
Facsimile:  405-239-2112
wbf@federmanlaw.com
abm@federmanlaw.com

*Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE MULDERRIG and RONY DEVORAH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMYRIS, INC., JOHN G. MELO, and KATHLEEN VALIASEK,<br><br>Defendants. | Case No.:  4:19-cv-01765-YGR<br><br>**PLAINTIFFS' SUR-REPLY IN RESPONSE TO DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Date:  February 18, 2020<br>Time:  2:00 p.m.<br>Courtroom: 1, Fourth Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

Plaintiffs respectfully submit this Sur-reply to Defendants' Reply (Dkt. No. 53) ("Reply").

## I.    Defendants Improperly Mischaracterize the Class Period Statements

Defendants' Reply presents the new argument that Amyris "warned investors that it was making estimates regarding its Vitamin E royalty [revenue] from Nenter, and that those estimates might turn out to be wrong." Reply at 5; *see also id.* at 6. But this is simply untrue. Defendants support this incorrect assertion only by mischaracterizing Defendant Melo's statement that "[w]e have been very effective at predicting market prices to date, but there is not guarantee we will always get this right." *Id.* at 5. Indeed, Defendants *wholly omit* the language preceding, embedded in, and following Melo's statement which makes clear that he was discussing *future* revenue *guidance* for the "expected second half revenue" (Compl. ¶62, bullet B), and *not* revenue that Amyris was reporting in its financial *results*. Indeed, Melo's complete statement was:

> In aggregate, we expect these activities and our base business to deliver between $135 million and $145 million of revenue and gross profit in excess of $100 million *in the second half*. We feel very confident *about the second half* and have been exceeding our plan for the areas of our business that we control.

> The only area of our business that we have no control over is our Vitamin E royalty. In this activity, DSM is now responsible for the supply, and we are purely a receiver of value share or royalty based on market price and of volumes sold by Nenter. This is a very volatile market, and we have no control over the price Nenter sells into this market. These royalties represent between $10 million and $15 million *of expected second half performance*, and that is built within the $135 million to $145 million of *expected second half revenue*. We have been very effective at predicting market prices to date, but there's no guarantee that we will always get this right. [¶62]

Because Melo was *not* disclosing that Amyris's *reported and recognized* revenues were estimates susceptible to reversal based on uncertainties, but was instead only disclosing the uncertainties with *future projected* revenues, this disclosure does not undermine Plaintiffs' allegations. Indeed, investors expect such uncertainty in financial projections but not in financial *results*. *See* Plfs. Opp. at 10. Defendants' brazen mischaracterization of Melo's statement is disingenuous.

## II.    The Newly-Presented Language from Amyris's Form 10-Q Is Insufficient

Defendants' Reply proffers new language to argue that Amyris's Form 10-Q sufficiently disclosed how it recognized royalty revenues, and that this makes the alleged materially false or misleading statements inactionable. Reply at 3-4. Defendants are wrong on both counts.

<u>First</u>, Defendants' newly-identified disclosure is not sufficiently informative.

As an initial matter, the disclosure is unclear.  While it indicates that Amyris used estimates pursuant to "the sales-based royalty exception" (Reply at 4), this exception is meant to function so that "an entity would <u>*not estimate the variable consideration*</u> from sales- or usage-based royalties" but would instead "wait until the subsequent sale or usage occurs *to determine the amount of revenue to recognize*."  Compl. ¶26, n.1 (quoting Deloitte & Touche LLP); *see also id.* ¶30, n.2 (BDO explaining it as "an exception to the principle requiring an estimate").[1]  Thus, Defendants' proffered language is difficult to reconcile and obfuscates how estimates (versus "the licensees' product sales," Reply at 4) determine the amount of royalty revenue being recognized.

More importantly, the disclosure omits the fact that Amyris *lacked critical information* necessary to effectively recognize royalty estimates as revenues, and that this made the reported royalty revenues materially uncertain and highly susceptible to reversal.  Compl. ¶32; *see also* Plfs. Opp. (Dkt. No. 52) at 3-6.  According to Defendants' own admissions: (1) Amyris had "*no visibility on the actual royalty*" (¶68); (2) the Vitamin E market was "very volatile" (*id.*); (3) "because [Amyris] was not actually supplying the farnesene, it had *much less information about what it would receive*" as royalty payments (Def. Mem. at 2); and (4) "since Amyris had *no control over the price* at which Nenter sold its products *or the quantity* it sold, *the revenue Amyris would receive was <u>inherently difficult to predict</u>*." (*id.* at n.1).  ASC 606 explicitly warns against recognizing revenue estimates when these *very* circumstances exist—where "the amount of consideration is highly susceptible to factors outside the entity's influence," where there is "volatility in a market," and where the entity has limited information or information with "limited predictive value." Compl. ¶29 (ASC 606-10-32-12).  The Form 10-Q language Defendants now present does not disclose these material adverse facts nor their impact on the reliability of the reported revenues.  Further, while Defendants assert that they were not "guessing" in arriving at

---

[1] Comments from the Financial Accounting Standards Board confirm that under the sales-based exception "an entity *should not recognize any revenue* for the variable amounts *until the uncertainty is resolved*." FASB Amendment to ASC (Topic 606), April 2016, at p. 81.  Available: https://www.fasb.org/jsp/FASB/Document_C/DocumentPage?cid=1176168066253&acceptedDisclaimer=true.  The Court may take judicial notice of this publicly available source. *Diaz v. Intuit, Inc.*, 2018 WL 2215790, at *3 (N.D. Cal. May 15, 2018).

the amounts they recognized as royalty revenues (Reply at 4), Defendants' own admissions and the significant restatement beg otherwise.  Indeed, Amyris's restatement acknowledges that "the Company did *not design and operate* effective controls over…complex, significant non-routine transactions *related to licenses and royalty revenue recognition*[.]"  (Murphy Dec. (Dkt. No. 52-1), Exh. A. at p. 13).  Recognizing revenue estimates based on information with "limited predictive value" is insufficient (Compl. ¶29) and is inconsistent with investor expectations and Defendants' assurances (*see, e.g., id.* at ¶¶57, 65, 71; *see also* ¶¶44, 51, 53, 59, 61-62, 67-68).

Second, the Form 10-Q language fails to neutralize Defendants' many materially false and misleading statements, including Defendants' statements touting the dramatically improved revenue results and attributing the results to growing demand (Compl. ¶¶44, 51, 59, 61-62, 67-68) while claiming that ASC 606 had only "de minimis" impact on financial results (¶53; ¶44).

In *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), the Supreme Court considered whether statements made in a proxy statement were materially false or misleading in light of other purportedly informative statements within that same proxy. The Court reasoned that "*not every mixture with the true will neutralize the deceptive*… The point of a proxy statement, after all, *should be to inform, not to challenge the reader's critical wits*." *Id.* at 1097 (emphasis added) (internal citations omitted).  Thus, the Court held that "*only*" when the arguably informative disclosure "*exhaust[s]* the misleading conclusion's capacity to influence the reasonable shareholder" will the misleading statement be rendered immaterial.  *Id.* at 1097-98 (emphasis added).  Thus, courts frequently decline to allow a materially false or misleading statement to be rendered inactionable based on a separate, purportedly more truthful, disclosure by the defendant-company. *See, e.g., Marksman Partners, L.P. v. Chantal Pharm. Corp*., 927 F. Supp. 1297, 1307-08 (C.D. Cal. 1996) (rejecting argument that "disclosure of the marketing agreement in the Form 10-K was sufficient to counteract the allegedly misleading appraisals of Chantal's revenues conveyed by its financial statements and public announcements" since doing so would allow issuers to make misleading statements so long as they include "a kernel of truth that might enable an analyst or accountant to spot the inconsistencies"); *S.E.C. v. Mozilo*, 2010 WL 3656068, at *11 (C.D. Cal. Sept. 16, 2010) (finding disclosures in company's SEC filings

insufficient to "counterbalance" misleading statements); *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1036-37 (S.D. Cal. 2005) (rejecting argument that the challenged statements were inactionable because the truth was purportedly disclosed in company's SEC filings); *S.E.C. v. Reys*, 712 F. Supp. 2d 1170, 1176 (W.D. Wash. 2010) ("CellCyt's 'corrective disclosures,' or revisions to the allegedly false statements, were not clearly corrective or conveyed 'with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by' the alleged misstatements."); *Shankar v. Imperva, Inc.*, No. 14-CV-1680-PJH, 2016 WL 2851859, at *8 (N.D. Cal. May 16, 2016) (rejecting argument that disclosures in the company's Form 10-Q rendered defendants' other materially misleading statement inactionable).

### III.    Amyris's Accrual-based Accounting Does Not Undermine Scienter

Defendants also now suggest that Amyris's use of accrual-based accounting undermines scienter. Reply at 11. Defendants, however, miss the point and misquote Plaintiffs' Opposition. *See* Plfs. Opp. at 20 (arguing that Defendants would have been aware that Amyris was not actually receiving revenue payments "at nearly the rate or amount" reported). Even under accrual-based revenue recognition, companies should receive the cash *eventually*. For 2018, however, Amyris *never* received the royalty payments in anything close to the numbers Defendants' reported in the financial results. Indeed, the royalty revenues that Amyris actually received and should have recognized for the *entire year* 2018 was only $7.58 million (*see* Murphy Dec., Exh. A at p. 167)—less half the $18.47 million Defendants' reported for *just Q1 and Q2*. *See* Compl. ¶¶51, 64.

It was readily observable to Defendants that the royalty amounts recognized were *significantly* less than the royalty payments received or actually owed, even *several* months later. Plfs. Opp. at 16-22. Yet Defendants reiterated the reported revenues. Compl, ¶¶59, 62. Even as late as November 13, 2018, when the disparity was clear, Melo still assured investors that Q1 and Q2 royalty revenues were "realized" and certain, and reiterated the expectation for $40 million in royalty revenues for the year: "We have *realized about $20 million in royalty payments during the first half of this year*. *We continue to believe and expect around $40 million of annual royalty payments* in the short to midterm and after we get through the significant current market volatility." (Melo, ¶68 bullet B). This supports an inference of scienter. *See* Plfs. Opp. at 20.

Dated: January 9, 2020                    Respectfully submitted,

                                          */s/A. Brooke Murphy*
                                          A. Brooke Murphy (admitted *pro hac vice*)
                                          William B. Federman (admitted *pro hac vice*)
                                          FEDERMAN & SHERWOOD
                                          10205 North Pennsylvania Avenue
                                          Oklahoma City, Oklahoma 73120
                                          Tel: (405) 235-1560/Fax: (405) 239-2112
                                          -and-
                                          212 W. Spring Valley Road
                                          Richardson, TX  75081
                                          abm@federmanlaw.com
                                          wbf@federmanlaw.com

                                          *Lead Counsel for Plaintiffs*

                                          Robert S. Green
                                          GREEN & NOBLIN, P.C.
                                          2200 Larkspur Landing Circle, Ste. 101
                                          Larkspur, California 94939
                                          Tel: (415) 477-6700/Fax: (415) 477-6710
                                          -and-
                                          4500 East Pacific Coast Highway
                                          Fourth Floor
                                          Long Beach, CA 90804
                                          rsg@classcounsel.com

                                          *Liaison Counsel for Plaintiffs*

Plaintiffs' Sur-reply in Response to Defendants'
Reply in Support of Their Motion to Dismiss        5        FILE NO. 4:19-cv-01765-YGR

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on Thursday, January 09, 2020.

*/s/A. Brooke Murphy*
A. Brooke Murphy
