# EXHIBIT H

Confidential

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHANE MULDERRIG and RONY          )
DEVORAH, Individually and on )    CASE NO.
Behalf of All Others              )    4:19-cv-01765-YGR
Similarly Situated                )
                                  )
            Plaintiffs,           )
                                  )
vs.                               )
                                  )
                                  )
AMYRIS, INC., et al.,             )
                                  )
            Defendants.           )
_____   )

**CONFIDENTIAL PROCEEDING**

REMOTE DEPOSITION OF VINCENT CARBONE

FRIDAY, AUGUST 27, 2021

9:01 A.M.

REPORTED BY:  KATHERINE FERGUSON, CSR NO. 12332

JOB NO. 198711

Page 16

Q   What kind of documents did you review?

A   I reviewed some paperwork from my attorney and I -- trade history.

Q   Your trade history or someone's?

A   It was -- I provided my trade history for Amyris stock.

Q   Did you review any documents that your attorneys filed with the court?

A   Yes.

Q   And when you say you asked your attorneys questions, what kind of questions did you ask them; what did you ask them about?

MS. MURPHY:  Objection.  You can answer to the extent it doesn't go into attorney/client privilege.

BY MR. ARBER:

Q   Yes.  Mr. Carbone, you don't need to tell me what your attorney said.

A   I don't remember all my specific questions. We've been in communication.  I don't remember.

Q   Okay.

And when you say you reviewed court filings, do you remember specifically which ones you reviewed?

A   No, I don't remember.

besides being current, staying up to date?

A   My communication with the attorney is to stay up to date.

Q   Is there any other reason for it?

A   And to review the documents, like I said, and to provide feedback and any questions that I have.

Q   How much time have you spent so far dealing with this case?

A   I have no idea.

Q   Do you spend any time -- on a random day, say, how much time would you spend?

MS. MURPHY:  Objection.

THE WITNESS:  Yeah.  I mean, it varies.

BY MR. ARBER:

Q   On average in a week, how many hours do you think you would spend on it?

MS. MURPHY:  Objection.

THE WITNESS:  I don't know.

BY MR. ARBER:

Q   One hour?  Five hours?  10 hours?  An estimate?

A   I would be guessing because it varies.

Q   How about on a month, over the course of a full month, how many hours do you think that you

Confidential

spend on this case?

MS. MURPHY:  Objection.

THE WITNESS:  You're trying to get me to throw a number out.  I don't know.  I just don't know.

BY MR. ARBER:

Q   And could you guess as to how much time you spent since the case started?

A   I don't log my hours for this.  I don't know.  I don't know.

Q   So you don't know how much time you spent on this case?

MS. MURPHY:  Objection, misstates the record.

BY MR. ARBER:

Q   Mr. Carbone, do you know how much time you spent on this case?

A   No, I don't know the hours that I spent or weeks or months.

Q   And you can't even give an estimate?

A   I could throw a number out, but it would be -- again, I don't keep -- clock hours that I spend on this.

Q   Mr. Carbone, as this case continues on, can you guess as to how much time you're going to have to

Page 41

Q   Do you believe that you'll -- will you receive additional compensation for being a lead plaintiff?

MS. MURPHY:  Objection.

BY MR. ARBER:

Q   Please answer.

A   No, I don't believe so.

Q   So Mr. Carbone, have you reviewed any other documents filed in this case besides the complaints?

A   I believe those were the filings I reviewed.

Q   Have you reviewed an answer filed by the defendants in this case?

A   I don't remember.

Q   Have you reviewed any documents that were produced by the defendants in this case?

A   I believe so, but I don't remember the details.

Q   Do you remember when you might have reviewed those documents?

A   I don't remember.

Q   Do you remember what those documents were about?

A   I don't remember.

Q   Do you remember why you reviewed those

Page 42

documents?

A   No, I don't remember.

Q   Do you remember the purpose of your review?

A   To be -- continue to be involved with the case.

Q   Are you -- did you know that the defendants in this case served document requests on you?

A   Yes.

Q   What's your understanding of those document requests?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I don't know.

BY MR. ARBER:

Q   So when you received the document requests, did you think that you had to do anything?

A   Yes.

Q   What did you think you had to do?

A   To provide the requested documents.

Q   And how did you decide which documents were requested?

A   I provided what was requested.

Q   If you had any questions about what was requested, how did you answer that question; did you decide for yourself whether something was responsive?

A   I'm not sure what the question is.

on Reddit, I just have read Reddit, if that makes sense.

Q   Have you read anything on Reddit about Amyris?

A   No.

Q   About John Melo?

A   No.

Q   About anything related to this lawsuit?

A   No.

Q   DSM?

A   Um --

Q   Have you heard of a company called DSM, Mr. Carbone?

A   No, not that I'm aware of.

Q   Have you heard of a company called Mentor?

A   No.

Q   Are there any other kind of social media sites, StockTwits?

A   I haven't used StockTwits for years.

Q   But you've used it previously?

A   I've used it previously.

Q   Have you ever read or made -- have you ever read about Amyris on StockTwits?

A   Don't recall.

Q   When is the last time that you used or read

Page 78

Q   And so your claim is that Mr. Melo didn't know what was going on?

MS. MURPHY:  Objection, misstates the record, vague.

THE WITNESS:  Yeah, I don't know -- I wasn't there, so I can't speculate.

BY MR. ARBER:

Q   But you are suing Mr. Melo?

A   He's -- he's listed as a defendant, yes.

Q   Sorry, that's not quite what I asked.

Are you suing Mr. Melo?

A   I believe we, as a class, have him listed as a defendant.

Q   And why do you have him listed as a defendant?

MS. MURPHY:  Objection, asked and answered.

THE WITNESS:  I'm going to go ahead and just -- that's something you can talk to the attorneys about as far as who, why, what as far as that goes.

BY MR. ARBER:

Q   Okay.

Why are you suing Ms. Valiasek?

A   It's obvious.  She was the CFO at the time.

Q   Sorry, not entirely obvious to me.

Q   Who is that?

A   Rod Jansen.

Q   Have you ever interacted with Mr. Jansen?

A   We've been on the same e-mails and that's all.

Q   Have you ever interacted with him outside the context of this litigation?

A   No.

Q   Do you understand why you and Mr. Jansen are both being put forth as class representatives?

A   Yes.

Q   Why?

MS. MURPHY:  Objection, calls for a legal conclusion and also it goes into attorney/client privilege.

BY MR. ARBER:

Q   Without revealing any attorney/client communications, Mr. Carbone, what is your understanding of why you and Mr. Jansen are both class representatives?

MS. MURPHY:  Mr. Carbone, you can answer to the extent it does not go into attorney/client privileged communications.

THE WITNESS:  You've got to have a class representative and we were chosen.

Confidential

Page 83

BY MR. ARBER:

Q   When you say you were chosen, chosen by whom?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I'm not -- I'm not sure how it works as far as that goes.

BY MR. ARBER:

Q   But you were chosen by someone?

A   Yeah --

MS. MURPHY:  Objection.

THE WITNESS:  Yeah, we were selected.

BY MR. ARBER:

Q   Who told you you were selected?

A   It was my attorney.

Q   Have you ever e-mailed with Mr. Jansen independently of your attorneys?

A   No.

Q   Have you ever communicated with him directly even if your attorneys were on the e-mail chain?

A   No.

Q   You and Mr. Jansen have the same role or different roles?

MS. MURPHY:  Objection, vague, calls for a legal conclusion.

will adequately represent the interest of the class?

A   Yes.

Q   And what makes you think that you'll adequately represent them in addition to being fair?

A   I will continue to communicate with the -- with my attorney and stay up to date as the -- as it proceeds.

Q   Mr. Carbone, have you ever been the first one to e-mail your attorney or have you only ever responded to e-mails from your attorneys?

A   I don't recall.

Q   Mr. Carbone, I'm going to drop in one more exhibit, and after this exhibit, we can take a break.

A   Okay.

Q   Let me know when you have the document open.

        And for the court reporter's benefit, we'll mark this as Exhibit 4.

        (Exhibit 4 was marked for identification.)

BY MR. ARBER:

Q   Have you had a chance to open the document, Mr. Carbone?

A   Yes.

Q   And do you recognize this document?

A   I do.

Confidential

BY MR. ARBER:

Q   And when did you read or see or hear about those royalty revenue statements?

A   I don't recall.

Q   Do you remember if you read those before or after you bought your shares of Amyris?

MS. MURPHY:  I'm sorry, can you restate that?  You cut out on my end.

BY MR. ARBER:

Q   Do you remember if you read those statements before or after you purchased Amyris stock?

A   I don't remember.

Q   Do you -- did those statements impact your decision to buy or sell Amyris stock?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I believe so.

BY MR. ARBER:

Q   But you don't remember when you read them?

A   Yeah, I don't recall the exact date.  So obviously before.

Q   Did they impact your decision to buy or to sell?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I don't remember.

BY MR. ARBER:

Q   Do you remember how they impacted your decision to buy?

A   I remember being highly motivated thinking this was going to be good for the company.

Q   But you don't remember when you read them?

A   I don't remember.

Q   And you don't remember what those statements were?

A   They were -- the projected future income was -- for the royalties was supposed to be super big and it wasn't.

Q   Did those statements impact your decision to sell?

MS. MURPHY:  Objection, vague.

THE WITNESS:  The reason I sold was because it was down, it was like you've got to cut your losses.

BY MR. ARBER:

Q   So did those statements impact your decision to sell; did any statements from Amyris -- did any statements from Amyris impact your decision to sell?

MS. MURPHY:  Objection.

THE WITNESS:  I don't recall specifically.

Amyris, you said you were highly motivated by income projections.

MS. MURPHY:   Objection, misstates the record.

BY MR. ARBER:

Q   Do you know which -- which projections are you referring to?

A   If I remember correctly, it was royalties from the licensing.

Q   And when did those come out?

A   I don't remember.

Q   So you don't know specifically which projections you're referring to?

A   I just -- I don't recall.

Q   Were the projections released in February of 2019?

A   I don't remember.

Q   January 2019?

A   I don't remember.

Q   November 2018?

A   I don't remember.

Q   Do you remember if it was in 2018 or 2019?

A   I don't remember.

Q   Turning to the second set of purchases.

After you sold in April 2019, why did you

Confidential

MS. MURPHY:  Objection, misstates the record.

THE WITNESS:  That I read every document they produced?

BY MR. ARBER:

Q   Yes.

A   No, I don't know that.

Q   Did you read some but not others?

A   Yes, I assume I read some, maybe not all.

Q   But you don't remember which ones you read?

A   Correct.

Q   So let's talk about some of the other allegations in this case.  We've talked about the royalty revenues.

Do you remember what those royalty revenues were for?

A   Yes.

Q   What were they for?

A   I believe that was the -- for the licensing of the vitamin E.

Q   Have you ever heard of something called farnesene?

A   I don't believe so.

Q   Do you know what farnesene?

A   No.

by Amyris?

A   Not that I'm aware of.

Q   Is that something that you considered or was relevant to your decision to purchase or sell Amyris stock?

MS. MURPHY:  Objection, vague.

THE WITNESS:  Not that I can recall.

BY MR. ARBER:

Q   You also mentioned earlier that there were certain falsified documents that are part of your allegations in this case.

What falsified documents were you referring to earlier?

A   Financial statements.

Q   Which financial statements?

A   I'm not -- I'm not sure which ones.

Q   So it's your testimony that you're not sure which documents were falsified?

A   Yeah, I'm not sure exactly which one it was.

Q   But you believe that --

A   I don't want to misstate it.

Q   But you believe that some were?

A   Yes.

Q   Do you know how they were misstated?

Confidential

Page 157

THE WITNESS:  Yeah, I don't recall.  I don't know how to answer that.

BY MR. ARBER:

Q   It's your testimony you don't recall which statements were false or misleading in this case?

MS. MURPHY:  Objection, misstates the record.

THE WITNESS:  I don't remember -- I don't know if it was your profit or loss statement or I don't remember.  I don't recall if we discussed it.

BY MR. ARBER:

Q   Do you know when those statements were made?

MS. MURPHY:  Objection, asked and answered.

THE WITNESS:  Yeah, I don't recall.

BY MR. ARBER:

Q   Do you remember when you first read or heard about those statements?

MS. MURPHY:  Objection, asked and answered.

THE WITNESS:  I don't recall.

BY MR. ARBER:

Q   Can you summarize for me any specific statements at all that you think are misrepresented or false?

MS. MURPHY:  Objection, vague.

Confidential

Page 158

THE WITNESS:  Yeah, I don't have an answer for that.

BY MR. ARBER:

Q   When did you find out when any of the statements that you allege are false or misleading, when did you find out that they were false?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I don't remember.

BY MR. ARBER:

Q   How did you find out?

A   I believe a press release.

Q   Do you remember which press release?

A   No.

Q   Do you remember when that press release came out?

A   No.

Q   Do you remember if it was before or after February 2019?

A   I don't remember.

Q   Is this the press release that you referred to in your E*TRADE app?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I don't recall.

BY MR. ARBER:

Q   You mentioned that you got a notification

Confidential

Page 161

A    What's that?

Q    Thank you for coming back.

A    Not a problem.

Q    So to quickly recap, you don't recall this March 2018 press release?

A    Yeah, I don't remember that one specifically.

Q    So there's a bunch of other documents that I could show you, but instead of showing you, maybe to make it a little bit easier, I'm going to ask if you recall any of them before I show them to you.

Do you recall reading or reviewing anything in particular in April of 2018?

MS. MURPHY:  Vague.

THE WITNESS:  I don't.

BY MR. ARBER:

Q    Do you recall reviewing a 10K filed in April of 2018?

THE WITNESS:  Objection, vague.

THE WITNESS:  I don't recall.

BY MR. ARBER:

Q    Do you recall reviewing a press release in May 2018 from Amyris?

MS. MURPHY:  Objection, vague.

THE WITNESS:  Yeah, I don't recall.

Confidential

Page 162

BY MR. ARBER:

Q   Do you recall reviewing a transcript of an investigator call that occurred in May 2018?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I don't recall.

BY MR. ARBER:

Q   Do you recall reviewing a Form 12B-25 in May 2018 from Amyris?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I don't recall.

BY MR. ARBER:

Q   Do you recall reviewing a May 2018 10Q filed by Amyris?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I don't recall.

BY MR. ARBER:

Q   Do you recall reviewing a May 2018 investigator meeting transcript or listening in on the call in May -- a May 2018 investor meeting?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I don't recall.

BY MR. ARBER:

Q   Do you recall an August 2018 press release from Amyris?

MS. MURPHY:  Objection, vague.

Confidential

Page 163

THE WITNESS:  I don't recall.

BY MR. ARBER:

Q  In August 2018, an investor call with Amyris?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I don't recall.

BY MR. ARBER:

Q  In August 2018, a 10Q filed by Amyris?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I don't recall.

BY MR. ARBER:

Q  In November 2018, a press release released by Amyris?

MS. MURPHY:  Objection, vague.

THE WITNESS:  Yeah, I don't recall.

BY MR. ARBER:

Q  A November 8th, 2018 investor call from Amyris?

MS. MURPHY:  Objection, vague.

THE WITNESS:  I don't recall.

BY MR. ARBER:

Q  A November 2018 10Q filed by Amyris?

MS. MURPHY:  Objection, vague.

THE WITNESS:  Don't recall.

BY MR. ARBER:

Confidential

Page 164

Q   Do you recall reviewing any of those documents at any time, even if not when they were issued?

A   It's so long ago, I don't remember.

Q   So you don't remember reviewing any of those documents that I've just gone through?

MS. MURPHY:  Objection, lacks foundation.

THE WITNESS:  You just listed off a bunch. I don't know.  Don't recall.

BY MR. ARBER:

Q   You don't recall any of the documents that I've listed out?

MS. MURPHY:  Objection, asked and answered.

THE WITNESS:  I don't recall.

BY MR. ARBER:

Q   Sorry, you don't recall any of the documents?  Yes or no.

MS. MURPHY:  Objection, misstates the record, asked and answered.

BY MR. ARBER:

Q   Sorry, Mr. Carbone, could you repeat your answer?

A   Yeah, I cannot say I recall any of those.

Q   Do you recall reviewing any of these statements before you made your decision to purchase

Confidential

Amyris stock in February of 2019?

MS. MURPHY:  Objection, vague.

THE WITNESS:  Specifically, I don't remember any document.

MR. ARBER:  In that case I think we're done with our questions, Defendants Amyris and John Melo. If counsel for Ms. Valiasek has any questions, you're welcome to ask.

MS. MCCAFFERTY:  Nothing further from us.

MR. ARBER:  In that case we reserve the right to recall Mr. Carbone if there's any issues that arise from later productions or other issues that arise during the course of discovery.

MS. MURPHY:  We reserve the right to object.  We are going to be designating this as confidential.  And I guess -- I don't any follow-up questions.

THE VIDEOGRAPHER:  All right.  If there's no further questions, this ends today's deposition and we're going off the record at 1:34 p.m.