Robert S. Green
GREEN & NOBLIN, P.C.
2200 Larkspur Landing Circle, Ste. 101
Larkspur, California 94939
Tel: (415) 477-6700
Fax: (415) 477-6710
-and-
4500 East Pacific Coast Highway
Fourth Floor
Long Beach, California 90804
Tel: (562) 391-2487
rsg@classcounsel.com

*Liaison Counsel for Plaintiffs*

William B. Federman (admitted *pro hac vice*)
A. Brooke Murphy (admitted *pro hac vice*)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone:  405-235-1560
Facsimile:  405-239-2112
wbf@federmanlaw.com
abm@federmanlaw.com

*Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| SHANE MULDERRIG and RONY DEVORAH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMYRIS, INC., JOHN G. MELO, and KATHLEEN VALIASEK,<br><br>Defendants. | Case No.:  4:19-cv-01765-YGR<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:  November 16, 2021<br>Time:  2:00 p.m.<br>Location: Courtroom 1 (via Zoom)<br>Judge:  Hon. Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................................1

II.  THE PROPOSED CLASS REPRESENTATIVES SATISFY RULE 23(A) .........................1

    A.   Plaintiff Carbone Is Both Adequate and Typical ....................................................1

        1.   Plaintiff Carbone Is Adequate ....................................................................1

        2.   Plaintiff Carbone is Typical ........................................................................3

    B.   Plaintiff Jansen Is Both Adequate and Typical .......................................................6

        1.   Plaintiff Jansen Is Adequate .......................................................................6

        2.   Plaintiff Jansen Is Typical ..........................................................................8

III. THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED .......................................10

    A.   Reliance Is Presumed ............................................................................................10

    B.   Damages Are Calculable On a Class-Wide Basis .................................................12

IV.  CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Akaosugi v. Benihana Nat. Corp.*, No. C,

11-01272 WHA, 2012 WL 1657099 (N.D. Cal. May 10, 2012) .................................................2

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,

No. 03-1519 AET, 2007 WL 276150 (D.N.J. Jan. 25, 2007) ....................................................6

*Alfus v. Pyramid Tech. Corp.*,

764 F. Supp. 598 (N.D. Cal. 1991) ..........................................................................................6

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,

133 S.Ct. 1184 (2013) ...............................................................................................10, 12, 15

*Andrews Farms v. Calcot, LTD.*,

No. CV-F-07-0464-LJO-DLB, 2010 WL 3341963 (E.D. Cal. Aug. 23, 2010) ........................1

*Angley v. UTi Worldwide Inc.*,

311 F. Supp. 3d 1117 (C.D. Cal. 2018) ..................................................................................13

*Basic, Inc. v. Levinson*,

485 U.S. 224 (1988) ...............................................................................................................10

*Booth v. Strategic Realty Tr., Inc.*,

No. 13-CV-04921-JST, 2015 WL 3957746 (N.D. Cal. June 28, 2015) ....................................1

*Butler v. Sears, Roebuck & Co.*,

727 F.3d 796 (7th Cir. 2013) ..................................................................................................13

*City of Miami Gen. Employees' & Sanitation Employees' Ret. Tr. v. RH, Inc.*,

No. 17-CV-00554-YGR, 2018 WL 4931543 (N.D. Cal. Oct. 11, 2018) ...................................1

*Comcast v. Behrend,*

133 S. Ct. 1426 (2013) ......................................................................................................12, 13

*Eggleston v. Chicago Journeymen Plumbers,*

657 F.2d 890 (7th Cir. 1981) ....................................................................................................1

*Erica P. John Fund, Inc. v. Halliburton Co.*,

563 U.S. 804 (2011) ...........................................................................................................4, 13

*Feder v. Electronic Data Sys. Corp.,*

   429 F.3d 125 (5th Cir. 2005) .................................................................................................9

*Halliburton Co. v. Erica P. John Fund, Inc.,*

   573 U.S. 258 (2014) ....................................................................................................10, 11

*Hatamian v. Advanced Micro Devices, Inc.,*

   No. 4:14-cv-00226-YGR, 2016 WL 1042502 (N.D. Cal. Mar. 16 2016) ...............................13

*Hayes v. MagnaChip Semiconductor Corp.,*

   No. 14-CV-01160-JST, 2016 WL 7406418 (N.D. Cal. Dec. 22, 2016)....................................6

*Hodges v. Akeena Solar, Inc.,*

   274 F.R.D. 259 (N.D. Cal. 2011) ....................................................................................4, 6, 7

*In re Adobe Systems, Inc. Sec. Litig.,*

   139 F.R.D. 150 (N.D. Cal. 1991) ..........................................................................................9

*In re BP p.l.c. Sec. Litig.,*

   2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) ...................................................................14, 15

*In re Connetics Corp. Sec. Litig.,*

   257 F.R.D. 572 (N.D. Cal. 2009) ......................................................................................9, 10

*In re Countrywide Fin. Corp. Sec. Litig.,*

   273 F.R.D. 586 (C.D. Cal. 2009) ...........................................................................................6

*In re Daimler Chrysler A.G. Sec. Litig.,*

   216 F.R.D. 291 (D. Del. 2003).................................................................................................9

*In re Diamond Foods, Inc., Sec. Litig.,*

   295 F.R.D. 240 (N.D. Cal. 2013) ....................................................................................12, 14

*In re Emulex Corp. Sec. Litig.,*

   210 F.R.D. 717 (C.D. Cal. 2002) ...........................................................................................9

*In re Intuitive Surgical Sec. Litig.,*

   No. 5:13-CV-01920-EJD, 2016 WL 7425926 (N.D. Cal. Dec. 22, 2016)..............................14

*In re Lendingclub Sec. Litig.,*

   282 F. Supp. 3d 1171 (N.D. Cal. 2017)..................................................................................14

*In re Live Concert Antitrust Litig.,*

247 F.R.D. 98 (C.D. Cal. 2007) ...............................................................................2, 3, 7

*In re Novatel Wireless Sec. Litig.,* No. 08-CV-1689 H (RBB),

2010 WL 11470156 (S.D. Cal. May 12, 2010) ...........................................................9

*In re Pilgrim Sec. Litig.,*

1996 WL 742448 (C.D. Cal. Jan. 23, 1996)................................................................9

*In re Providian Financial Corp. Sec. Litig.,*

2004 WL 5684494 (N.D. Cal. Jan. 15, 2004) .............................................................9

*In re REMEC Inc. Sec. Litig.,*

702 F. Supp. 2d 1202 (S.D. Cal. 2010) ....................................................................12

*In re Silver Wheaton Corp. Sec. Litig.,*

No. 2:15-CV-05146, 2017 WL 2039171 (C.D. Cal. May 15, 2017) ........................14

*In re St. Jude Med. Inc. Sec. Litig.,*

No. 10-CV-0851 2014 WL 6908434 (D. Minn. Dec. 8, 2014) .................................14

*In re THQ, Inc. Sec. Litig.,*

No. CV 00-1783AHM(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) .............3

*In re Valence Tech. Sec. Litig.,*

No. 95-20459, 1996 WL 119468 (N.D. Cal. Mar. 14, 1996)......................................9

*Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.,*

244 F.3d 1152 (9th Cir. 2001) ....................................................................................3

*Kihn v. Bill Graham Archives, LLC,*

445 F. Supp. 3d 234 (N.D. Cal. 2020).........................................................................2

*Levya v. Medline,*

*Indns.,* 716 F.3d 510 (9th Cir. 2013) .......................................................................12

*Loritz v. Exide Techs.,*

No. 2:13-cv-02607, 2015 WL 6790247 (C.D. Cal. July 21, 2015).........................15

*Luna v. Marvell Techn. Grp., Ltd.,*

No. C 15-05447 WHA, 2017 WL 4865559 (N.D. Cal. Oct. 27, 2017)....................13

*Malone v. Microdyne Corp.*,

148 F.R.D. 153 (E.D. Va. 1993)...................................................................................................9

*McIntire v. China MediaExpress Holdings, Inc.*,

38 F. Supp. 3d 415 (S.D.N.Y. 2014) ........................................................................................14

*Mulderrig v. Amyris, Inc.*,

492 F. Supp. 3d 999 (N.D. Cal. 2020).....................................................................................4, 9

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,

292 F. Supp. 3d 1018 (S.D. Cal. 2017) ....................................................................................7

*Ortega v. Natural Balance, Inc.,*

300 F.R.D. 422 (C.D. Cal. 2014) .............................................................................................2

*Pulaski & Middleman, LLC v. Google, Inc.*,

802 F.3d 979 (9th Cir. 2015)...............................................................................................12, 15

*S. Ferry LP No. 2 v. Killinger*,

271 F.R.D. 653 (W.D. Wash. 2011).........................................................................................6

*TransUnion LLC v. Ramirez*,

141 S. Ct. 2190 (2021) .............................................................................................................6

*Waggoner v. Barclays PLC*,

875 F.3d 79, 106 (2d Cir. 2017) ..............................................................................................14

*Werdebaugh v. Blue Diamond Growers*,

No. 12-CV-02724-LHK, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014)................................14

*Wixon v. Wyndham Resort Dev. Corp.,*

2009 WL 3353445 (N.D. Cal. Oct. 19, 2009) ..........................................................................3

**Rules**

Fed. R. Civ. P. 23 ..........................................................................................................1, 12, 15

Plaintiffs Rob Jansen and Vincent Carbone ("Plaintiffs") submit this Reply Memorandum of Law in Support of Their Motion for Class Certification ("Motion") (ECF No. 83).

## I. INTRODUCTION

As this Court has recognized, securities fraud cases fit Rule 23 'like a glove.'" *City of Miami Gen. Employees' & Sanitation Employees' Ret. Tr. v. RH, Inc.*, No. 17-CV-00554-YGR, 2018 WL 4931543, at *1 (N.D. Cal. Oct. 11, 2018) (Gonzalez Rogers, J.) (quoting *Booth v. Strategic Realty Tr., Inc.*, No. 13-CV-04921, 2015 WL 3957746, at *9 (N.D. Cal. June 28, 2015)). It is perhaps unsurprising then that, rather than address the substantive issues that are <u>relevant</u> to the class certification inquiry, Defendants devote their opposition ("Opposition" or "Opp.") (ECF No. 91) to disparaging Plaintiffs and challenging the well-accepted damages methodology that is used in virtually every securities class action. Defendants' strategy amounts to little more than an attempt to divert the Court's attention from Rule 23's requirements, which Plaintiffs satisfy.

## II. THE PROPOSED CLASS REPRESENTATIVES SATISFY RULE 23(A)

Defendants argue that the proposed class representatives are inadequate and atypical, and therefore fail to satisfy Fed. R. Civ. P. 23(a). These arguments should be viewed with skepticism. As the Seventh Circuit aptly stated in *Eggleston v. Chicago Journeymen Plumbers*:

> [I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether 'the representative parties will fairly and adequately protect the interests of the class,' . . . *it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house*.

657 F.2d 890, 895 (7th Cir. 1981) (emphasis added); *Andrews Farms v. Calcot, LTD.*, No. CV-F-07-0464-LJO-DLB, 2010 WL 3341963, at *6 (E.D. Cal. Aug. 23, 2010) (same).

As set forth below, Defendants' attacks on the proposed class representatives are unconvincing and are supported only by mischaracterizations of law and fact.

### A. Plaintiff Carbone Is Both Adequate and Typical

#### 1. Plaintiff Carbone Is Adequate

Defendants argue that Plaintiff Carbone lacks a sufficient understanding of the claims to adequately represent the class. Opp. at 16-18. Defendants are wrong.

As this Court recently recognized in *Kihn v. Bill Graham Archives, LLC*, 445 F. Supp. 3d 234, 248 (N.D. Cal. 2020) (Gonzalez Rogers, J.), "[a]dequate representatives need only have 'sufficient understanding of the legal claims against defendant and need not be fluent with the technical legal issues in order to adequately represent the class.'" *Id.* at 248 (quoting *Akaosugi v. Benihana Nat. Corp.*, No. C 11-01272 WHA, 2012 WL 1657099, at *4 (N.D. Cal. May 10, 2012). Indeed, "[t]he Ninth Circuit has never imposed…a knowledge requirement." *In re Live Concert Antitrust Litig.,* 247 F.R.D. 98, 120 (C.D. Cal. 2007). "All that is necessary is a 'rudimentary understanding of the present action and . . . a demonstrated willingness to assist counsel in the prosecution of the litigation.'" *Id.* (citation omitted).

Here, Plaintiff Carbone has more than demonstrated sufficient knowledge of the case and willingness to assist counsel in this litigation. He described what this lawsuit is about. *See* Carbone Dep. (Exhibit 1)[1] at 72:20-73:21, 74:6-75:19. He has reviewed documents and pleadings filed in this action. *Id.* at 17:3-16, 32:11-25, 86:19-87:8. He has cooperated with discovery, including producing documents and sitting for deposition. *Id.* at 42:6-43:14. Moreover, he has stayed abreast of developments in the case through regular communications with Lead Counsel. *Id.* at 26:2-27:7, 29:13-20, 36:16-17, 39:10-17, 81:1-20. *See Ortega v. Natural Balance, Inc.,* 300 F.R.D. 422, 428 (C.D. Cal. 2014) (finding that plaintiffs "have demonstrated their commitment to this case by appearing for deposition and communicating with counsel").

In truth, Defendants have shamefully mischaracterized Plaintiff Carbone's testimony. For example, Defendants claim that Plaintiff Carbone could not "articulate why he was suing defendant John Melo" (Opp. at 17), when he actually provided a spot-on answer, explaining "there's got to be some responsibility by the CEO to know what's going on within his company." Carbone Dep., Ex. 1, at 77:16-25. Defendants also claim Plaintiff Carbone "could not remember any specific filing he had reviewed" (Opp. at 17), when, in fact, Plaintiff Carbone testified that he had reviewed "the allegations against Amyris" (Carbone Dep., Ex. 1, at 32:11-25),

---

[1] All references to "Exhibit _" or "Ex. _" refer to exhibits to the Declaration of A. Brooke Murphy in Further Support of Plaintiffs' Motion for Class Certification ("Murphy Decl."), filed herewith.

"remember[ed] communications with [his] attorney for the complaint" (*id.* at 36:16-17) and remembered reviewing the motion for class certification. *Id.* at 86:19-87:8. Defendants further falsely claim that Plaintiff Carbone is "unfamiliar with his obligations as class representative," (Opp. at 17), when Plaintiff Carbone demonstrated that he understood his obligations very well and testified that he was willing to commit "as long as it takes" to fulfilling his role as a class representative. Carbone Dep., Ex. 1, at 26:2-27:7, 29:8-11, 80:1-81:20, 85:1-18, 92:7-18.

Accordingly, Plaintiff Carbone has demonstrated that he can fairly and adequately represent the class. *See Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (finding that a class representative was adequate upon showing that he "understands his duties and is currently willing and able to perform them. The Rule does not require more."); *see also Wixon v. Wyndham Resort Dev. Corp.,* 2009 WL 3353445, at *5 (N.D. Cal. Oct. 19, 2009) (finding sufficient that plaintiff understood the "gist of this suit").

Defendants cite no authority to support their view that a plaintiff must have a perfect memory and be able to recall the specific alleged misstatements (*id.* at 18), must remember the names of entities the company collaborated with (*id.*), or must be able to identify specific occasions in which he initiated communication with counsel (*id.* at 17). To the contrary, courts in this Circuit frequently reject such arguments. *See, e.g., Live Concert*, 247 F.R.D. at 120 (rejecting "abdication of counsel" argument based on claims that plaintiffs' knowledge about the suit was acquired from counsel and that plaintiffs had insufficient input in drafting the pleadings); *In re THQ, Inc. Sec. Litig.*, No. CV 00-1783AHM(EX), 2002 WL 1832145, at *6-8 (C.D. Cal. Mar. 22, 2002) (finding that plaintiffs' "deposition-induced admissions" on precise details of the suit "clearly [are] not sufficient to defeat class certification").

### 2.    Plaintiff Carbone is Typical

Defendants argue that Plaintiff Carbone is atypical because he purchased his Amyris shares after the alleged partial corrective disclosure on November 13, 2018, which is when Defendants argue the class period should end. This argument fails for a number of reasons.

First, this argument—that the March 19, 2019 stock drop was caused by factors other than the revelation of a misrepresentation—is actually a challenge to loss causation. It is well-settled

that Plaintiffs are not required to prove loss causation at the class certification stage. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813-15 (2011) ("*Halliburton I*") ("[W]e conclude the Court of Appeals erred by requiring EPJ Fund to prove loss causation at the certification stage."); *see Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 271 (N.D. Cal. 2011) ("Whether a particular announcement (i.e., 'release') actually cured a prior misrepresentation is, of course, a sensitive issue to rule on at [the class certification] stage of the proceedings, because it comes so close to assessing the ultimate merits in the case.") (internal citation omitted).

Second, Defendants' assertion that the November 13, 2018 disclosure was fully corrective is unpersuasive. As this Court previously held, Defendants' November 13, 2018 statements were themselves materially misleading because they, *inter alia*, "continued to assure investors that the first two quarters, made with the same faulty recognition in violation of GAAP, were 'realized' revenues." *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1027 (N.D. Cal. 2020).

Third, the March 19, 2019 alleged corrective disclosure revealed previously undisclosed information that was corrective of the alleged misstatements. Specifically, the March 19, 2019 disclosure revealed <u>for the first time</u>: (a) that Amyris would be late in filing its Form 10-K due, in part, to its "continued evaluation of internal control over financial reporting for 2018"; (b) that Amyris would be reporting at least one material weakness in its internal control over financial reporting which remained unremediated as of December 31, 2018; (c) that Amyris may have <u>further deficiencies</u> to report; and (d) that Amyris expected to report that there was substantial doubt about its ability to continue as a going concern. As explained by Plaintiffs' expert this "specific information [is] directly related to Plaintiffs' allegations." *See* Rebuttal Report of Cynthia L. Jones, CFA ("Jones Rebuttal"), Exhibit 5, at ¶27. In particular, the internal controls disclosures, including that <u>previously undisclosed</u> deficiencies may have existed during 2018, were corrective of Defendants' false assurances about those controls and the accuracy of Amyris's financial reporting. *See Mulderrig*, 492 F. Supp. 3d at 1024 ("Amyris's statements, as certified by Melo and Valiasek, representing to investors and the SEC that there were no changes 'reasonably likely to materially affect' Amyris's internal control over financial reporting satisfy

the pleading standard with respect to being objectively false, misleading, and undisclosed throughout the Class Period.").

Tellingly, while insisting that March 19, 2019 could not be corrective, Defendants consistently ignore the allegations of Amyris's materially deficient internal control over financial reporting, failing to acknowledge such allegations even <u>once</u> in their Opposition. Not only does this mischaracterize Plaintiffs' allegations, it also contradicts the reality that the falsely reported royalty revenues were a result of Amyris's ineffective internal control over financial reporting. The SEC recently published an Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order ("SEC Order and Findings") crystalizing this fact. As described by the SEC:

> Amyris improperly recognized certain royalty revenues that rendered its financial statements materially inaccurate. *These revenue recognition errors resulted from internal accounting control failures* that led to important information not being communicated to the company's internal accounting staff concerning certain significant royalty payments, which also resulted in Amyris's failure to make and keep accurate books and records.

*Id.*, Exhibit 6, at ¶¶1, 3 (emphasis added). The SEC further explained that "*Amyris senior executives" had actual royalty data from Nenter that contradicted* the revenue numbers reported in Amyris's SEC filings for Q1 and Q2 of 2018 but that such information was not provided to Amyris's accounting staff. *Id.* at ¶¶10, 14.[2] Thus, the SEC concluded: "Amyris's *insufficient internal accounting controls* relating to communications with accounting personnel and *Amyris's ability to account for significant royalty revenue transactions* contributed to Amyris's failure to reverse any of its first-quarter or second-quarter royalty revenues *in the third-quarter 2018 Form 10-Q*." *Id.* at ¶18. Clearly, Defendants' evasion of the internal control allegations must be rejected.

Fourth, Defendants fail to cite a case in which a court found a plaintiff atypical based on Defendants' insistence that the class period was too long. In fact, in *Alfus v. Pyramid Tech. Corp.*,

---

[2] The SEC further explained that once Amyris's accounting staff received the contradicting information from Nenter sometime after September 30, 2018, "Amyris's accounting staff discussed with a senior Amyris executive the possibility of reversing some of the license and royalty revenue recognized in the first and second quarters" but Amyris executives insisted that the information from Nenter was not accurate. *Id.* at ¶17.

764 F. Supp. 598 (N.D. Cal. 1991), a case relied upon by Defendants, the Court rejected Defendants' argument that the plaintiff lacked standing based on when she purchased during the alleged class period. *Id.* at 606 ("Since Alfus alleges that she was injured during the period in a manner typical of all stockholders who purchased in that same period, the standing requirement is fulfilled, and Alfus is a suitable representative of the named class."); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 602 (C.D. Cal. 2009) (rejecting argument due to "purchases during the disclosure period—often referred to as 'post disclosure purchases'" since "other class members also presumably purchased after Countrywide's first corrective disclosure and during the disclosure period"). The other cases cited by Defendants are inapposite or support Plaintiffs.[3]

## B.   Plaintiff Jansen Is Both Adequate and Typical

### 1.   Plaintiff Jansen Is Adequate

Defendants argue that Plaintiff Jansen is an inadequate "liar" based on the fact that his short trades are not listed on his Certification of Investment. Opp. at 11-12. This is an obvious attempt to create controversy where none exists. Quite plainly, Plaintiff Jansen's short trades—which started after the alleged corrective disclosures and amounted to a very small portion of his trades in Amyris stock—were not listed on his Certification of Investment for the simple reason that shares bought as part of a short trade are not considered damaged shares (*i.e.*, not eligible for recovery) in Section 10(b) actions, as Lead Counsel had explained to Plaintiff Jansen. However, Plaintiff Jansen never "swore under penalty of perjury that his only transactions in Amyris securities during the class period were ordinary buy and sell transactions." Opp. at 11. To the

---

[3] *See, e.g., Hodges*, 274 F.R.D. at 271 (rejecting "defendants['] conten[tion] that, as a matter of law, investors could not have relied upon any allegedly misleading statements after January 17, 2008"); *S. Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653, 658 (W.D. Wash. 2011) (dealt with a proposed class representative whose ownership of the shares via questionable assignment made his standing as a class member "tenuous at best"); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200, 2204 (2021) (finding lack of standing, due to lack of injury, for individuals whose inaccurate credit files were not communicated and thus suffered no reputational harm); *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 7406418, at *7 (N.D. Cal. Dec. 22, 2016) (finding a lack of price impact, not atypicality, after disclosure that the company's prior financial statements "should not be relied upon"); *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. 03-1519 AET, 2007 WL 276150, at *3 (D.N.J. Jan. 25, 2007) (defining class period, not finding atypicality, to end on the release of FDA's data and the advisory committee ruling).

contrary, Plaintiff Jansen's short trades were listed and accounted for on his loss analysis, which was filed with the Court from the outset and at the same time that his Certification of Investment was first filed. *See* ECF No. 12-2; *see also* Exhibit 3. Defendants are directly aware of this loss analysis and that was filed with the Court (though they conveniently fail to mention it in their Opposition) as Plaintiff Jansen specifically referenced and even attached it to his responses to Defendants' First Set of Interrogatories. *See* Exhibit 4 at Response No. 2 (p. 3) and Exhibit B thereto. Accordingly, Defendants' repeated accusation that Plaintiff Jansen misled the Court as to his trading history is utterly baseless, as Defendants well know.

Defendants' attempts to discredit Plaintiff Jansen for his statements on social media are, again, much ado about nothing. For example, while Defendants make the incendiary statement that "Jansen also admitted to lying to other stockholders" (Opp. at 13), the "lie" they point to is a post in which Jansen said he was a public accountant when in fact he was "an *assistant* accountant." Jansen Dep. at 140:16-20. If such trivial (and irrelevant) minutiae could disqualify potential class representatives, courts would be hard-pressed to ever appoint a class representative. Fortunately, the law does not conform to Defendants' notions, as evidenced by their inability to cite a single case in which a court found a class representative inadequate based on imprecise social media posts or unfunny jokes made on social media. *See Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1035 (S.D. Cal. 2017) ("'Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate.'").

Here, Plaintiff Jansen has easily demonstrated knowledge of the case and willingness to assist counsel in this litigation—facts Defendants do not contest. Plaintiff Jansen has a thorough understanding of the lawsuit. Jansen Dep. (Exhibit 2) at 170:19-171:3, 179:10-19. He has cooperated with discovery, including producing documents and sitting for deposition. *Id.* at 19:18-20:8, 76:6-11, 305:16-306:24. Further, he has stayed involved in the case, communicates with Lead Counsel, and is willing to continue pursuing the action on behalf of the Class. *Id.* at 15:4-6, 304:8-15, 305:13-15. This is more than sufficient to satisfy the adequacy component. *Live Concert Antitrust Litig.*, 247 F.R.D. at 120; *see also, supra*, Section II.A.1.

### 2. Plaintiff Jansen Is Typical

While Defendants attack Plaintiff Carbone as not being knowledgeable enough about Amyris, they simultaneously charge Plaintiff Jansen as being too knowledgeable. Opp. at 8-11. Defendants' self-contradictory argument is untenable and unconvincing.

To be clear, Defendants do <u>not</u> argue that Plaintiff Jansen was in possession of non-public information that influenced his trading. To the contrary, Defendants argue that Plaintiff Jansen was simply "a very sophisticated investor with an extremely specific and developed interest in the company" such that he "understood the implications of the new accounting rule ASC 606 well before Defendants allegedly 'revealed' the 'truth.'" Opp. at 10. But this misses the point completely. Plaintiffs' allegations are not that Defendants misled the market about "Amyris's use of ASC 606" or how ASC 606 <u>should</u> be applied (*id.*); Plaintiffs' allegations are that Defendants misled the market about <u>how Amyris misapplied</u> ASC 606, reported inflated revenues based on that misapplication, and falsely assured investors that Amyris had no undisclosed material weaknesses in its internal control over financial reporting. Here, as Defendants now admit (ECF No. 84-2) and as the SEC concluded in its investigation, the royalty revenues Defendants reported directly contradicted the actual sales and pricing information <u>Defendants had</u> from third-party Nenter, making it "probable that a significant portion of [the reported royalty revenues] would be subject to reversal." *See* SEC Order and Findings, Ex. 6, at ¶¶10, 14. This was <u>not</u> a proper application of ASC 606 (*id.* at ¶¶25-27) nor was this known to Plaintiff Jansen. *See* Jansen Dep., Ex. 2, at 103:4-25. To be sure, had Plaintiff Jansen known Defendants were using ASC 606 to misstate Amyris's royalty revenues and financial results during the Class Period, it is unlikely that he would have purchased so many Amyris shares and incurred hundreds of thousands of dollars in losses as a result. *See* Exhibit 3.

Defendants point to the fact that <u>after</u> Amyris announced $0 in royalty revenue for Q3, Plaintiff Jansen ascertained from public information that Amyris "should have gotten royalty" unless Nenter "sold below market price" for Q3. Opp. at 10. However, this cannot reasonably be interpreted to mean that Plaintiff Jansen was not misled by Defendants' earlier reported royalty results and projections, nor does it mean that he fully understood the alleged fraud in November

2018.  If anything, this confirms that Plaintiff Jansen <u>was</u> misled by the earlier misstatements and by Defendants' partially corrective but partially misleading November 2018 statements.  Indeed, as Plaintiff Jansen testified, the November 2018 disclosures caused him to lose some optimism in Amyris, but he "still had some hope for the company" and even purchased additional shares in Amyris after the November 13, 2018 disclosure.  Jansen Dep., Ex. 2, at 158:5-20; *see also id.* at 162:22-164:16.  Thus, even with his post-November 2018 sells and short trade, Plaintiff Jansen had a net <u>long</u> position in Amyris at the end of the Class Period (March 19, 2019).  *See* Exhibit 3.  Notably, Plaintiff Jansen's shaken but not entirely tarnished view after November 2018 is consistent with this Court's prior findings.  *See Mulderrig*, 492 F. Supp. 3d at 1010 (discussing facts still concealed in Defendants' November 2018 only partially corrective statements).

Moreover, while Defendants claim that Plaintiff Jansen is atypical based his purchases after the November 13, 2018 partial corrective disclosure, courts have repeatedly rejected such atypicality arguments.  *See, e.g., In re Providian Financial Corp. Sec. Litig.,* 2004 WL 5684494, *4-5 (N.D. Cal. Jan. 15, 2004) ("[A] proposed class representative's purchases after full and partial disclosures do not destroy typicality."); *In re Novatel Wireless Sec. Litig.,* No. 08-CV-1689 H (RBB), 2010 WL 11470156, at *5 (S.D. Cal. May 12, 2010) (plaintiff who bought stock after adverse disclosures was not atypical); *In re Emulex Corp. Sec. Litig.,* 210 F.R.D. 717, 719 (C.D. Cal. 2002) (same); *In re Pilgrim Sec. Litig.,* 1996 WL 742448, *5 (C.D. Cal. Jan. 23, 1996) (same); *In re Adobe Systems, Inc. Sec. Litig.,* 139 F.R.D. 150, 155 (N.D. Cal. 1991) (same); *In re Daimler Chrysler A.G. Sec. Litig.,* 216 F.R.D. 291, 298 (D. Del. 2003) (post-class period purchases have been "repeatedly recognized" as "a common investment strategy" and, "therefore, such investment strategies are not atypical"); *Malone v. Microdyne Corp.,* 148 F.R.D. 153, 159 (E.D. Va. 1993) (same).[4]  For example, as this Court held in *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572 (N.D. Cal. 2009):

> Defendants do not explain why the timing of lead plaintiff's purchases automatically make it unique—other class members may also have purchased Connetics stock after partial adverse disclosures by the company. Even if lead

---

[4] *In re Valence Tech. Sec. Litig.*, No. 95-20459, 1996 WL 119468, at *5 (N.D. Cal. Mar. 14, 1996), cited by Defendants, is apposite. There, plaintiff <u>tripled</u> his holdings <u>after</u> filing his fraud suit.

plaintiff is revealed to be the only class member that bought additional stocks after the disclosures, defendants have not established that this issue "threaten[s] to become the focus of the litigation," *see Hanon,* 976 F.2d at 508, or that lead plaintiff was not relying on the integrity of the market when it made its purchases.

*Id.* at 576-77; *see also Feder v. Electronic Data Sys. Corp.,* 429 F.3d 125, 137 (5th Cir. 2005).

Defendants' logically strained arguments fail to show atypicality as to Plaintiff Jansen.

**III.   THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED**

**A.   Reliance Is Presumed**

No proof of individual reliance is required if Plaintiffs can invoke the fraud-on-the-market presumption of reliance. *Basic, Inc. v. Levinson*, 485 U.S. 224, 247-48 (1988). This is because "[t]he fraud-on-the-market theory rests on the premise that [in an efficient market] the 'market price of shares' will 'reflec[t] all publicly available information.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1192 (2013)  (quoting *Basic*, 485 U.S. at 246). Here, based on convincing evidence that Amyris stock traded in an efficient market throughout the Class Period (ECF No. 84-1), the Class is entitled to a presumption of reliance.

Defendants do <u>not</u> dispute that Amyris stock traded in an efficient market throughout the Class Period. Instead, they take the very novel position that the presumption of reliance is rebutted based on Plaintiff Jansen's purported trading motivations, which they argue were unrelated to the integrity of Amyris's stock price. Defendants' argument fails for several reasons.

First, Defendants' theory, even if true (which it is not), could not operate to rebut the presumption of reliance <u>as to the Class</u>. Evidence claiming to sever the link between the misrepresentation and an individual plaintiff's decision to trade in the stock would only rebut the presumption of reliance as to that particular plaintiff. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) ("*Halliburton II*") ("*Basic* does afford defendants an opportunity to rebut the presumption of reliance with respect to an individual plaintiff by showing that he did not rely on the integrity of the market price in trading stock."). However, "[t]hat the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate," nor would it rebut the presumption with respect to the Class. *Id.* To rebut the presumption of reliance as to the Class, Defendants

would need to show that the "alleged misrepresentation did not actually affect the market price of the stock." *Id*. at 284.  Defendants to not attempt this.

Second, Defendants fail to demonstrate that Plaintiff Jansen did not rely on the integrity of market for Amyris stock.  Defendants use cherry-picked social media posts by Plaintiff Jansen to argue that he "believed the stock price was tainted" but nevertheless purchased Amyris shares on "the belief that he could profit from his own trading strategy."  Opp. at 19.  As demonstrated *supra*, the isolated and out-of-context social media posts bandied by Defendants fail to show that Plaintiff Jansen understood the fraud being perpetrated by Defendants.  *See* Section II.B.2.

Third, the notion of trading strategies untethered to the integrity of the market has been criticized by numerous courts.  The Supreme Court in *Halliburton II* rejected the idea, reasoning:

> Halliburton identifies a number of classes of investors for whom "price integrity" is supposedly "marginal or irrelevant." The primary example is the value investor, who believes that certain stocks are undervalued or overvalued and attempts to "beat the market" by buying the undervalued stocks and selling the overvalued ones.
>
> ***
>
> In any event, there is no reason to suppose that even Halliburton's main counterexample—the value investor—is as indifferent to the integrity of market prices as Halliburton suggests. Such an investor implicitly relies on the fact that a stock's market price will eventually reflect material information—how else could the market correction on which his profit depends occur? To be sure, the value investor "does not believe that the market price accurately reflects public information *at the time he transacts*." **But to indirectly rely on a misstatement in the sense relevant for the *Basic* presumption, he need only trade stock based on the belief that the market price will incorporate public information within a reasonable period**. The value investor also presumably tries to estimate *how* undervalued or overvalued a particular stock is, and such estimates can be skewed by a market price tainted by fraud.

*Halliburton II,* 573 U.S. at 273-74 (emphasis in bold and underlining added) (internal citations omitted).  This Court made a similar holding in *In re Diamond Foods, Inc., Sec. Litig.*:

> That [a plaintiff] thinks it is smarter than the rest of the market in evaluating truthful public data in the market should not be a license for manipulators to pump false information into the public domain to grossly inflate a stock price. *Most investors think they are a little smarter than average and see opportunities others have missed. Still, they all rely on publicly available data* (with the exception, of course, of investors trading on insider information)…. Defendant has not set forth any evidence rebutting the presumption that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price."

295 F.R.D. 240, 252-53 (N.D. Cal. 2013) (emphasis added) (internal citations omitted); *see also In re REMEC Inc. Sec. Litig.,* 702 F. Supp. 2d 1202, 1263 (S.D. Cal. 2010) (collecting cases).

Defendants' half-baked arguments fail to rebut the presumption of reliance afforded to the Class based on the compelling evidence of market efficiency and price impact.  *See* ECF 84-1.

## B.    Damages Are Calculable On a Class-Wide Basis

At class certification, the issue is whether "common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1196 (2013) (quoting Fed. R. Civ. P. 23(b)(3)).  While Defendants cite *Comcast v. Behrend,* 133 S. Ct. 1426, 1433 (2013) to argue that the class should not be certified based on the proposed damages methodology (Opp. at 6-7), the Ninth Circuit has explicitly held that "even after *Comcast*…'[d]amages calculations alone ... cannot defeat certification.'" *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) (internal citation omitted). Thus, the Ninth Circuit in *Pulaski* found the district court "abused its discretion in denying class certification" on the basis of damages, holding that even after *Comcast* plaintiffs need only "show that their damages stemmed from the defendant's actions that created the legal liability." 802 F.3d at 987 (quoting *Levya v. Medline Indns.,* 716 F.3d 510, 514 (9th Cir. 2013)).

Plaintiffs' expert has made this showing. Under Ms. Jones's proposed damages methodology, she would: (1) use historical price data and an event study to determine the amount of artificial inflation per share in Amyris's stock price on each day of the Class Period; and (2) apply the inflation matrix to each individual class member's trades, aligning the artificial inflation on purchase and sale dates to determine out-of-pocket per share damages.  ECF No. 84-1 at ¶¶86-91; Jones Rebuttal, Ex. 5, at ¶9.  This common formula (inflation matrix) would take into account and reflect any change in artificial inflation and change in prices over each investor's holding period. *Id.*  Thus, the damages methodology is tied to Plaintiffs' theory of liability.  Importantly, unlike in *Comcast*, nothing has disrupted Plaintiffs' theory of liability such that the proposed damages methodology is inextricably tied to theories no longer at issue in the case.  *See Comcast*, 133 S. Ct. at 1433 (where plaintiffs' expert conceded that the proffered model included damages unconnected to class's sole remaining theory of liability); *Butler v. Sears, Roebuck & Co.,* 727

F.3d 796 (7th Cir. 2013) *cert. denied*, 134 S. Ct. 1277 (U.S. 2014) ("Unlike the situation in *Comcast*, there is no possibility in this case that damages could be attributed to acts of the defendants that are not challenged on a class-wide basis….").

Defendants' criticisms are that Ms. Jones's damages methodology will face <u>hypothetical</u> challenges in <u>calculating</u> inflation and/or establishing <u>loss causation</u>. Opp. at 20-25; Jones Rebuttal, Ex. 5, at ¶¶8-37. For example, Defendants assert that the calculation for damages from the November 2018 disclosure will need to account for the purported "confounding factor" of Vitamin E price volatility (Opp. at 22), while ignoring that this volatility had already been disclosed by Melo in August 2018 and, thus, was not a true confounding factor. Jones Rebuttal, Ex. 5, at ¶¶23-25. Regardless, whether class members' losses were caused by confounding information or what the precise value of inflation are merits questions reserved for the trier of fact. *Halliburton I*, 563 U.S. at 813 (plaintiff not required to prove loss causation, *i.e.*, that loss was not "caused by factors other than the revelation of a misrepresentation" for class certification). Accordingly, this Court in *Hatamian v. Advanced Micro Devices, Inc.,* No. 4:14-cv-00226-YGR, 2016 WL 1042502 (N.D. Cal. Mar. 16 2016) (Gonzalez Rogers, J.) rejected "Defendants attack [on] the 'fit' between an alleged corrective disclosure and a prior alleged fraudulent statement" as "nothing more than an attack on loss causation." *Id.* at *9. Similarly, in *Luna v. Marvell Techn. Grp., Ltd.,* No. C 15-05447 WHA, 2017 WL 4865559 (N.D. Cal. Oct. 27, 2017), the Court held that plaintiff's expert need not show "how he will disaggregate price inflation attributable to confounding events" since that "is not…an attack on his damages model, but is rather an inquiry into loss causation." *Id.* at *6.

Further, Ms. Jones's proposed methodology <u>will account for</u> confounding factors or non-constant inflation <u>if</u> those prove to be issues after all discovery is complete. Jones Rebuttal, Ex. 5, at ¶¶14-37. While Defendants argue that such an event study methodology is inadequate under *Comcast* (Opp. at 21), this view is inconsistent with the <u>overwhelming</u> majority of securities cases, including cases where <u>Ms. Jones</u> proposed the damages methodology. *See Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117, 1129 (C.D. Cal. 2018) ("[C]ourts have recognized the event study/out of pocket method as proposed by [Ms.] Jones is an accepted method for

calculating damages in securities fraud class actions. Therefore, Plaintiff meets its burden of demonstrating damages are calculable on a class-wide basis."); *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 435 (S.D.N.Y. 2014) (finding damages methodology proffered by Ms. Jones satisfied the "obligations under *Comcast*"); *see also Waggoner v. Barclays PLC*, 875 F.3d 79, 106 (2d Cir. 2017) ("Plaintiffs' [event study] damages model in this case complies with *Comcast*….*Comcast* does not suggest that damage calculations must be so precise" "as to account for variations in inflation"); *In re Diamond Foods,* 295 F.R.D. at 251 (*Comcast* satisfied where "damages 'will be calculated using an event study analysis'"); *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1184 (N.D. Cal. 2017) ("Whether plaintiff will ultimately prevail in proving damages…., is not necessary to determine at this stage.… [plaintiffs'] proposed method—using an event study—is widely accepted for calculating damages of a class of stockholders."); *In re Silver Wheaton Corp. Sec. Litig.,* No. 2:15-CV-05146, 2017 WL 2039171, at *14-15 (C.D. Cal. May 15, 2017) ("Damages for every class member can be mechanically calculated according to [the] proposed [event-study] methodology and are therefore subject to class wide proof."); *In re Intuitive Surgical Sec. Litig.*, No. 5:13-CV-01920-EJD, 2016 WL 7425926, at *17 (N.D. Cal. Dec. 22, 2016) (holding that "[d]efendants' reading of *Comcast* is too broad" and finding the proposed "'out-of-pocket' methodology" to be "widely" accepted); *In re St. Jude Med. Inc. Sec. Litig.,* No. 10-CV-0851 2014 WL 6908434, at *5-9 (D. Minn. Dec. 8, 2014) ("Defendants' criticisms…go to the accuracy of…calculations and not to the appropriateness of the method's ability to determine damages[.]").

The two unreported securities cases relied upon by Defendants (Opp. at 20-23) are easily distinguishable.[5]  In *In re BP p.l.c. Sec. Litig.,* 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013), plaintiffs proffered a constant inflation formula that was <u>contrary to plaintiffs' claims of liability</u>, and plaintiffs "concede[d]" that they failed to show how they could adjust for varying inflation.

---

[5] The case *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014), cited by Defendants, was not a securities case but instead alleged deceptive labeling and misbranding. In that case, plaintiff's model "fail[ed] to control for the effect of advertising on price." *Id.* at *13.  Here, however, the methodology proposed by Ms. Jones will account for non-fraud factors such as confounding events.  Jones Rebuttal at ¶¶14-19.

*Id.* at \*17.  This is not the case here.  Ms. Jones is <u>not</u> proposing a constant inflation formula, she has shown how the proposed methodology can address variable inflation or other potential issues, and the proposed methodology supports Plaintiffs' theories, including materialization of the risk. Jones Rebuttal, Ex. 5, at ¶¶32-36.  Similarly, here, unlike in *Loritz v. Exide Techs*., No. 2:13-cv-02607, 2015 WL 6790247 (C.D. Cal. July 21, 2015), Ms. Jones has done more than merely "recount[] various [damages] techniques," *id.* at \*24, but has presented a methodology that can account for all the hypothetical complexities Defendants raise.  *See* Jones Rebuttal, Ex. 5, at ¶¶14-37.  This was not done in *Loritz.  Id.* at \*22 (explaining that plaintiffs' expert "fails to tie these theories to the facts of this case or to each other").  Further, since the order in  *Loritz*, the Ninth Circuit has explicitly rejected challenges that go to purported difficulties calculating damages where plaintiffs present a workable damages methodology.  *Pulaski,* 802 F.3d at 988-89.

Ms. Jones proposes a well-accepted methodology for determining damages on a class-wide basis that is "both targeted to remedying the alleged harm and does not turn on individual circumstances." *Id.* at 989.  Nothing more is required at the class certification stage, even after *Comcast*.  *Id*.  Defendants' call for what would be a full-blown trial on the merits is directly contrary to the Supreme Court's mandate that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen*, 133 S. Ct. at 1194-95.

Under the proposed damages methodology, the Class will stand or fall together, using <u>one</u> theory of inflation damages that will impact <u>all</u> investors in the market. "Because the question of [damages] is common to the class, and because a failure of proof on that issue would not result in questions 'affecting only individual members' predominating," this is not a case in which class action treatment would be "inefficient or unfair." *Id*. at 1197.

## IV.    CONCLUSION

Plaintiffs request that the Court certify this action as a class action pursuant to Rule 23, appoint Plaintiffs Jansen and Carbone as Class Representatives, and appoint Federman & Sherwood as Class Counsel.

Dated: November 2, 2021                    Respectfully submitted,


                                           */s/A. Brooke Murphy*
                                           A. Brooke Murphy (admitted *pro hac vice*)
                                           William B. Federman (admitted *pro hac vice*)
                                           FEDERMAN & SHERWOOD
                                           10205 North Pennsylvania Avenue
                                           Oklahoma City, Oklahoma 73120
                                           Tel: (405) 235-1560/Fax: (405) 239-2112
                                           -and-
                                           212 W. Spring Valley Road
                                           Richardson, TX  75081
                                           abm@federmanlaw.com
                                           wbf@federmanlaw.com

                                           *Lead Counsel for Plaintiffs and Proposed Class
                                           Counsel*

                                           Robert S. Green
                                           GREEN & NOBLIN, P.C.
                                           2200 Larkspur Landing Circle, Ste. 101
                                           Larkspur, California 94939
                                           Tel: (415) 477-6700/Fax: (415) 477-6710
                                           -and-
                                           4500 East Pacific Coast Highway
                                           Fourth Floor
                                           Long Beach, CA 90804
                                           rsg@classcounsel.com

                                           *Liaison Counsel for Plaintiffs*



                            **CERTIFICATE OF SERVICE**

        I hereby certify that this document was filed through the ECF system and will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF),

and paper copies will be sent to those indicated as non-registered participants on Tuesday,

November 2, 2021.

                                           */s/A. Brooke Murphy*
                                           A. Brooke Murphy