William B. Federman (admitted *pro hac vice*)
A. Brooke Murphy (admitted *pro hac vice*)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone:  405-235-1560
Facsimile:  405-239-2112
wbf@federmanlaw.com
abm@federmanlaw.com

*Class Counsel for Plaintiffs*

Robert S. Green
GREEN & NOBLIN, P.C.
2200 Larkspur Landing Circle, Ste. 101
Larkspur, California 94939
Tel: (415) 477-6700
Fax: (415) 477-6710
-and-
4500 East Pacific Coast Highway
Fourth Floor
Long Beach, California 90804
Tel: (562) 391-2487
rsg@classcounsel.com

*Liaison Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| VINCENT CARBONE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> AMYRIS, INC., JOHN G. MELO, and KATHLEEN VALIASEK, <br><br> Defendants. | Case No.:  4:19-cv-01765-YGR <br><br> **PLAINTIFF'S NOTICE OF MOTION, MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF LAW IN SUPPORT THERETO** <br><br> Date:  May 3, 2022 <br> Time:  2:00 p.m. <br> Location: Courtroom 1 (via Zoom) <br> Judge:  Hon. Yvonne Gonzalez Rogers |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 3, 2022, at 2:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Yvonne Gonzalez Rogers, Plaintiff and Class Representative Vincent Carbone will and hereby does move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) preliminarily approving the proposed Settlement; (ii) approving the form and manner of notice to the Class; (iii) approving the selection of the Claims Administrator for the Settlement; and (iv) scheduling a final Settlement Hearing, at which time the Court will consider final approval of the Settlement.

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff seeks this Court to grant preliminary approval of the class action Settlement reached by Plaintiff and Defendants. Defendants do not object to the relief sought by Plaintiff.

This Motion is based on this Notice and Motion; the Memorandum of Law in Support; the Declaration of William B. Federman and exhibits thereto, including the Stipulation and Agreement of Settlement; all pleadings and papers filed herein; arguments of counsel; and any other matters properly before the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed Settlement is within the range of fairness, reasonableness, and adequacy as to warrant: (a) the Court's preliminary approval; (b) the dissemination of Notice of Settlement to Class Members; and (c) setting a hearing date for final approval of the Settlement and the application of attorneys' fees and reimbursement of litigation expenses.

2. Whether the proposed Notice adequately apprises Class Members of the terms of the Settlement and their rights with respect to it; and

3. Whether the selection of KCC Class Action Services as Claims Administrator should be approved.

**TABLE OF CONTENTS**

I.     INTRODUCTION ...........................................................................................1

II.    FACTUAL ALLEGATIONS............................................................................2

III.   BACKGROUND TO THE SETTLEMENT ....................................................4

       A.     Procedural History...............................................................................4

       B.     Discovery.............................................................................................5

       C.     Settlement Discussions........................................................................6

       D.     The Proposed Settlement ....................................................................7

VI.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ....................7

       A.     Standards for Preliminary Approval of a Class Action Settlement......................7

       B.     The Settlement is the Product of Arm's Length Negotiated Resolution..............8

       C.     The Settlement is Well Within the Range of Reasonable ...................10

       D.     The Proposed Notice to Class Members Satisfies Rule 23 ................13

       E.     The Plan of Allocation Is Fair and Treats Class Members Equitably .................15

       F.     The Procedural Guidance for Class Action Settlement Factors Are Satisfied .....16

              1.     Information about the Settlement ............................................16

              2.     The Proposed Claims Administrator for the Settlement...........................19

              3.     The Proposed Notices to the Settlement Class ........................20

              4.     Opt-Outs .................................................................................20

              5.     Objections.................................................................................20

              6.     The Intended Attorneys' Fees and Expense Request .............................21

              7.     Requested Reimbursement Awards to Plaintiffs.....................................22

              8.     *Cy Pres* Awardee .................................................................22

              9.     Proposed Timeline...................................................................23

              10.    Class Action Fairness Act .......................................................24

              11.    Past Distributions ...................................................................24

VII.   CONCLUSION.............................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Baker v. SeaWorld Entm't, Inc.*,
  No. 14-CV-2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........................15

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) .........................................................................................12

*Churchill Village, L.L.C. v.  Gen. Elec.*,
  361 F. 3d 566 (9th Cir. 2004) ...................................................................................................8

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..................................................................................................7

*Destefano v. Zynga, Inc.*,
  No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..............................11, 21

*Ebarle v. Lifelock, Inc.*,
  No. 15-CV-00258-HSG, 2016 WL 234364 (N.D. Cal. Jan. 20, 2016) .....................................9

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ..................................................................................................9

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................................................15

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)...................................7, 8

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)...............................................................................11, 16

*In re Oracle Sec. Litig.*,
  No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994)......................................15

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007)......................................8

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ...................................................................................................7

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007).....................................................................10

*In re Zynga Inc. Sec. Litig.*,
  No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .............................12, 16

*Linney v. Cellular Alaska P'ship*,
  No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ...........................................9

*Lo v. Oxnard European Motors, LLC*,
  No. 11CV1009 JLS (MDD), 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ..........................17

*McPhail v. First Command Fin. Planning, Inc.*,
  No. 05cv179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009)....................................22

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) .............................................................................................................14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................12, 13

*Nguyen v. Radient Pharm. Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) ........................................................................................18

*Nguyen v. Radient Pharms. Corp.*,
  No. SACV 11–00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014) ...............16

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ...............................................................................................7

*Rodriguez v. West Puhl'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...............................................................................................10

*Roe v. Frito-Lay, Inc.*,
  No. 14-CV-00751-HSG, 2016 WL 4154850 (N.D. Cal. Aug. 5, 2016)...................................17

*Rosenburg v. I.B.M.*,
  No. CV06-00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ...............................15, 16

*Satchell v. Fed. Express Corp.*, No. C 03 2878 SI,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)........................................................................9

*Stanger v. China Elec. Motor, Inc.*,

    812 F.3d 734 (9th Cir. 2016) ................................................................21

*Torrisi v. Tucson Elec. Power Co.*,

    8 F.3d 1370 (9th Cir. 1993) ............................................................8, 12

*Util. Reform Project v. Bonneville Power Admin.*,

    869 F.2d 437 (9th Cir. 1989) ................................................................7

*Van Vranken v. Atl. Richfield Co.*,

    901 F. Supp. 294 (N.D. Cal. 1995) ......................................................21

*Vataj v. Johnson*,

    No. 19-CV-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ...................15

*Vincent v. Reser*,

    No. 11-03572 (CRB), 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ........................22

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043 (9th Cir. 2002) ..............................................................21

*Wright v. Linkus Enters., Inc.*,

    259 F.R.D. 468 (E.D. Cal. 2009) ......................................................8, 10

*Yaron v. Intersect ENT, Inc.*,

    No. 4:19-CV-02647-JSW, 2021 WL 5184290 (N.D. Cal. Nov. 5, 2021) ...............15

**Statutes**

15 U.S.C. § 78u-4(a)(7) ................................................................15

28 U.S.C. § 1715(b) ......................................................................24

**Rules**

Federal Rule of Civil Procedure 23 ................................................ *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff and Class Representative Vincent Carbone ("Plaintiff,"  "Class Representative," or "Carbone"), individually and on behalf of the other members of the Class (collectively, "Plaintiffs"), respectfully submits this Memorandum of Points and Authorities in support of its Unopposed Motion for Preliminary Approval of the Settlement of this Action against Amyris, Inc. ("Amyris" or the "Company"), John G. Melo ("Melo"), and Kathleen Valiasek ("Valiasek") (collectively "Defendants"), on the terms set forth in the Stipulation and Agreement of Settlement, ("Stipulation" or "Settlement"), attached as Exhibit 1 to the Declaration of William B. Federman in Support of Plaintiff's Motion for Preliminary Approval of Settlement (the "Federman Decl.").[1]

## I.    INTRODUCTION

Following extensive litigation, discovery, and settlement negotiations, Plaintiffs and Defendants have reached an agreement to resolve this securities class action for payment of $13,500,000.00 in cash by Defendants.  As set forth herein, the proposed Settlement is a very favorable result for the Class, particularly as compared to recoveries in other securities class actions. The benefit to the Class must also be considered in the context of the real risk that further protracted and contested litigation might lead to no recovery, or a significantly smaller recovery, from Defendants. The proposed Settlement eliminates these risks, instead providing an immediate and certain recovery for the Class.

The Settlement was achieved following intense arm's-length settlement discussions between the parties, including two full-day mediation sessions conducted by experienced and highly respected JAMS mediator Robert A. Meyer, Esq., as well as multiple subsequent phone calls and emails facilitated by Mr. Meyer. At the time the Settlement was reached, the parties well understood the strengths and weaknesses of their respective positions given the lengthy and vigorous litigation, which has spanned nearly three years and involved numerous motions, hearings, extensive discovery, and a petition to appeal the Court's class certification Order.

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

Class Representative and Class Counsel believe that the Settlement is in the best interests of the Class, meets all requirements under the *Procedural Guidance for Class Action Settlements* ("Procedural Guidance"), and satisfies the governing standards for approval in the Ninth Circuit. The proposed Settlement is well within the range of fairness, adequacy, and reasonableness so as to warrant the Court's preliminary approval and authorization for dissemination of notice of its terms to Class Members. At the final settlement hearing, the Court will have before it additional detailed motion papers submitted in support of final approval of the Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate.

## II.   FACTUAL ALLEGATIONS

This is a federal securities class action brought on behalf of purchasers of Amyris common stock against Amyris, its current Chief Executive Officer, and its former Chief Financial Officer. Plaintiffs allege that, during the Class Period, Defendants knowingly or recklessly issued statements that materially misled investors, in violation of Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5.

Amyris is an industrial biotechnology company that manufactures and sells products in health and wellness, clean beauty, and flavor and fragrance markets. On January 1, 2018, Amyris began utilizing Accounting Standard Codification ("ASC") Topic 606, Revenue from Contracts with Customers ("ASC 606"). In most circumstances, the application of ASC 606 allows a business to recognize revenue when it delivers a good sold for a fixed price if delivery of the goods is the business's final performance obligation under the contract. However, Plaintiffs allege that Defendants used ASC 606 to report as recognized royalty revenues what were actually overstated estimates of future royalty payments to be paid by a third party. *See* Amended Complaint at ¶¶ 23-32.[2] As discovery in this case has confirmed, the estimates Defendants recognized as royalty revenue were uncertain and not based on actual sales pricing or quantity information. *See* Dkt. No. 84-2 at 16-17.

---

[2] "Amended Complaint" refers to Plaintiffs' Amended Class Action Complaint (Dkt. No. 43).

1   According to Plaintiffs, Defendants knew or recklessly ignored that their application of

2   ASC 606 created speculative royalty revenues, but Defendants nonetheless falsely and

3   misleadingly: reported record financial results and improved revenues; presented these improved

4   financial results as though they were no less certain than they had been in previous years; assured

5   that the revenue growth was real and sustainable; misleadingly attributed the newly improved

6   revenue numbers to the growing acceptance of Amyris's products; claimed that the application

7   of ASC 606 had no material impact on the financial results but actually simplified Amyris's

8   financial reporting; and attested that there were no undisclosed deficiencies in the Company's

9   internal control over financial reporting. *See* Amended Complaint at ¶¶ 44-71.

10   The true facts—and the risks associated with Defendants' allegedly false and misleading

11   statements concerning Amyris's financial condition, inflated revenues, and internal control over

12   financial reporting—began to reveal themselves and materialize on November 13, 2018, when

13   Defendants announced severely disappointing third quarter royalty revenues that missed

14   Defendants' previous projections by $15 million. The truth was further revealed on March 19,

15   2019, when the Company disclosed that it would be unable to timely file its annual report due to

16   accounting difficulties, that Amyris was "is in the process of completing its evaluation of internal

17   control over financial reporting and may have further deficiencies to report," and that Amyris

18   expected to report substantial doubt about its ability to continue as a going concern.  *Id.* at ¶ 74.

19   As a result of these revelations, the price of Amyris's stock fell precipitously. *Id*. at ¶¶ 69, 75.

20   Amyris later announced that it would restate its fiscal 2018 results due to "a material error

21   [that] was made related to the estimates for recognizing revenue for royalty payments," and to

22   disclose that it had been operating with undisclosed weaknesses in its internal control over

23   financial reporting. *Id.* at ¶ 76. Shortly thereafter, Amyris disclosed that its independent

24   accounting firm was being dismissed and that the Company's CFO, Defendant Valiasek, had been

25   terminated from her role as CFO. *Id.* at ¶¶ 79-80. In October 2019, the Company ultimately

26   restated its 2018 financials in its Form 10-K, which recognized royalty revenues of $7.58 million

27   for the entire year of 2018—less half the $18.47 million in royalty revenues that Defendants

28

originally reported for just Q1 and Q2 of 2018. *See* Dkt No. 52-2; *see also* Amended Complaint at ¶¶ 51, 64. In its Form 10-K, Amyris also disclosed that "the Company did not design and operate effective controls over … complex, significant non-routine transactions related to licenses and royalty revenue recognition," which Amyris constituted a "material weakness[]" in the Company's "internal control over financial reporting" that existed in 2018 and that "resulted in material errors to our interim condensed consolidated financial statements for…March 31, 2018, June 30, 2018, and September 30, 2018[.]" *See* Dkt. No. 52-2.

## III.   BACKGROUND TO THE SETTLEMENT

### A.   Procedural History

This case was initiated on April 3, 2019. Dkt. No. 1. On June 28, 2019, the Court issued an order, pursuant to the Private Securities Litigation Reform Act of 1995, appointing Rob Jansen ("Jansen") as lead plaintiff and appointing Federman & Sherwood as Lead Counsel. Dkt. No. 29. On September 13, 2019, the Amended Complaint (Dkt. No. 43) was filed by Jansen and Carbone on behalf of themselves and then putative Class.

Defendants moved to dismiss the Amended Complaint on October 25, 2019 (Dkt. No. 45), which Plaintiffs opposed (Dkt. Nos. 52, 56). Following completed briefing and a hearing, the Court denied Defendants' motion to dismiss in its entirety on October 5, 2020 (Dkt. No. 61).

Plaintiffs moved for class certification on July 30, 2021. Dkt. No. 83. Following completed briefing and a hearing, the Court entered an Order on December 8, 2021, which certified a Class consisting of "[a]ll persons and entities who purchased shares of Amyris, Inc., common stock during the period from March 15, 2018 through March 19, 2019 (inclusive) and were damaged thereby; excluded from the Class are the Defendants, officers and directors of Amyris, members of the immediate families of the individual Defendants, and affiliates of the corporate Defendant." Dkt. No. 101 at 20. In its Order, the Court appointed Carbone as Class Representative but declined to appoint Jansen as a class representative. The Court appointed Federman & Sherwood as Class Counsel. *Id.*

On December 22, 2021, Defendants filed a petition in the United States Court of Appeals for the Ninth Circuit for permission to appeal the Order certifying the Class, pursuant to Fed. R. Civ. P. 23(f). On January 7, 2022, Plaintiffs filed an answer to the Rule 23(f) petition, and on January 14, 2022, Defendants filed a motion for leave to file a reply in support of the Rule 23(f) petition. This motion and the Rule 23(f) petition were pending when the parties agreed to resolve the Action. The proceedings in the Ninth Circuit have been stayed pending completion of the settlement process, including the Court's determination whether to approve the Settlement, in this Action.

### B.    Discovery

Upon entry of the Court's Order denying Defendants' motion to dismiss, which lifted the automatic stay of discovery pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the parties promptly engaged in an extensive discovery process.

As part of the discovery process, Class Representative and Class Counsel: negotiated the protective order regarding confidential materials; prepared and served multiple sets of detailed document requests and interrogatories on Defendants; prepared and served nine (9) subpoenas *duces tecum* on relevant third parties, including Amyris's current and former financial auditors, analysts, and independent contractors; prepared and served a detailed Freedom of Information Act ("FOIA") request on the Securities and Exchange Commission ("SEC"); engaged in numerous negotiations concerning the scope of document productions and electronic search parameters to be utilized; responded to Defendants' requests for production and interrogatories, including gathering and producing responsive documents on behalf of Class Representative Carbone and plaintiff Jansen; considered and challenged Defendants' privilege log, which contained thousands of entries; and prepared and issued several letters to Defendants' counsel concerning production, privilege claims, and other discovery disputes. *See* Federman Decl. at ¶ 3; *see also* Stipulation at ¶¶ G-I.

As a result of Plaintiffs' document requests on Defendants and third parties, Class Counsel was able to secure more than 800,000 pages of document production, which Class Counsel

1  reviewed, analyzed, and organized. As part of the discovery process, Class Counsel consulted

2  extensively with Plaintiffs' experts regarding damages, market efficiency, loss causation,

3  financial auditing, and the preparation of the necessary expert reports. Class Counsel also

4  prepared for and defended the depositions of Carbone, Jansen, and Plaintiffs' market efficiency

5  and damages expert. The depositions of Amyris's auditors and relevant Amyris employees were

6  scheduled and upcoming at the time the parties reached the agreement to settle in principle. *Id.*

7       **C.**    **Settlement Discussions**

8       On February 23, 2021, the parties attended a full-day mediation with JAMS mediator

9  Robert A. Meyer, Esq.  Before the mediation session, the parties exchanged extensive mediation

10  statements detailing the strengths and weaknesses of their respective positions. As an exhibit to

11  Plaintiffs' mediation statement, Class Counsel provided to Defendants and the mediator a

12  thorough report prepared by Plaintiffs' auditing expert, Harris L. Devor, CPA, which opined that

13  Amyris improperly accounted for its royalty revenues during the Class Period and that this

14  practice was a result of material weaknesses in Amyris's internal control over financial reporting.

15  The parties negotiated in good faith during this mediation but did not reach an agreement.

16       On March 18, 2021, the parties participated in a second full-day mediation with JAMS

17  mediator Robert A. Meyer, Esq. Before the mediation session, the parties exchanged reports

18  prepared by their respective damages experts, which set forth the experts' opinions on potential

19  aggregate damages in this Action. Again, the parties negotiated in good faith but did not reach an

20  agreement, and litigation continued.

21       With the assistance of Mr. Meyer, the parties continued their negotiation efforts while

22  litigating the Action. On February 3, 2022, after months of negotiations, Mr. Meyer presented to

23  the parties with a mediator's proposal for a settlement. On February 4, 2022, both parties accepted

24  Mr. Meyer's proposal to settle the Action for $13,500,000.00, subject to executing formal

25  settlement documents and the Court's approval of the Settlement. Subsequently, the parties spent

26  extensive time negotiating the final terms of the Stipulation and Agreement of Settlement and

27  associated exhibits.

28

### D.     The Proposed Settlement

Pursuant to the proposed Settlement, Defendants will cause $13,500,000.00 to be deposited into an interest-bearing escrow account (the "Settlement Fund") for distribution to eligible Class Members, before deduction of Court-awarded fees and expenses. In exchange, upon the Effective Date of the Settlement, the Class will release all Released Claims against the Released Defendant Parties.

The Settlement, and the prosecution of the Action that preceded it, reflects vigorous advocacy by Class Counsel and Class Representative on behalf of the Class. Class Representative and Class Counsel believe that the Settlement is an excellent result and is fair, adequate, and reasonable in all respects.

## VI.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.     Standards for Preliminary Approval of a Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis. Whether to approve a proposed settlement is within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring the pretrial settlement of class action lawsuits. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."); *accord, Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution"); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ("In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'") (citation omitted).

In considering whether to grant preliminary approval of a class action settlement, courts make a preliminary evaluation of the fairness of the settlement prior to issuing notice to the class

and prior to holding a final approval hearing. Under Rule 23(e), the Court is required to examine whether it is likely to grant final approval of the settlement. At the preliminary approval stage, the "Court need only determine whether the proposed settlement appears on its face to be fair." *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 WL 76112, at *5 (S.D. Cal. Mar. 4, 2010); *see Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009) ("For purposes of preliminary approval … a district court must evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval.") (citing Newburg on Class Actions (4th ed. 2002) § 11:25).

Class Representative here requests only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement. The proposed Settlement confers a valuable benefit to the Class. Given the limited maximum potential damages in this Action and the depletion of insurance policies, the Settlement represents a reasonable resolution of the Action and eliminates the risk that the Class might recover less or nothing at all from Defendants.

As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, a preview of the factors considered by courts in granting final approval of class action settlements demonstrates that this Settlement is well within the range of possible approval.[3] The Court will likely be able to approve the Settlement as fair, reasonable and adequate under Rule 23(e)(2).

**B.      The Settlement is the Product of Arm's Length Negotiated Resolution**

There is an initial presumption that a proposed settlement is fair and reasonable when it is "the product of arm's-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138

---

[3] At the final approval stage, the Court answers the ultimate question: whether the Settlement is fair, reasonable and adequate. In making that ultimate determination, the Court reviews the following factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of Class members to the proposed settlement. *See Churchill Village, L.L.C. v. Gen. Elec.*, 361 F. 3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

VRW, 2007 WL 1991529, at *5 (N.D. Cal. June 30, 2007); *see Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

Before reaching the Settlement, the parties had vigorously litigated the Action for nearly three years, including through a motion to dismiss, a motion for class certification, Defendants' petition to appeal the Court's class certification order, and extensive discovery. *See* Sections III.A-B, *supra*. The history of this Action demonstrates that the litigation was hard-fought by both parties throughout. *See Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, *5 1997 (N.D. Cal. July 18, 1997) *aff'd* 151 F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place, create a presumption that the agreement is fair.").

The Settlement was achieved only after intense arm's-length negotiations, including the exchange of detailed mediation materials, two full day formal mediation sessions with experienced neutral mediator Robert A. Meyer, Esq., and months of subsequent back-and-forth discussions through Mr. Meyer, which prompted him to present the parties with a mediator's proposal that the claims be settled for $13.5 million. *See* Section III.C, *supra*. Thus, there can be little doubt that the Settlement was reached without collusion and after good-faith bargaining among the parties. *See Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Indeed, courts have recognized that agreements reached through the involvement of a mediator and based on a mediator's proposal demonstrate non-collusive conduct. *See*, *e.g.*, *Ebarle v. Lifelock, Inc.,* No. 15-CV-00258-HSG, 2016 WL 234364, at *6 (N.D. Cal. Jan. 20, 2016) (finding that acceptance of a mediator's proposal following mediation "strongly suggests the absence of collusion or bad faith").

In every respect, the Settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  This factor supports a finding that the Settlement is fair, adequate, and reasonable

1   for purposes of preliminary approval. A "proposed settlement [that] appears to be the product of

2   serious, informed, non-collusive negotiations" should be given effect. *In re Tableware Antitrust*

3   *Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ("As noted in the Manual for Complex

4   Litigation, Second, '[i]f the proposed settlement appears to be the product of serious, informed,

5   non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

6   treatment to class representatives or segments of the class, and falls within the range of possible

7   approval, then the court should direct that the notice be given to the class members of a formal

8   fairness hearing ....'") (quoting Manual for Complex Litigation; Second § 30.44 (1985)). As

9   recognized by the Ninth Circuit, courts appropriately "put a good deal of stock in the product of

10  an arms-length, non-collusive, negotiated resolution." *Rodriguez v. West Puhl'g Corp.,* 563 F.3d

11  948, 965 (9th Cir. 2009)).

12      **C.    The Settlement is Well Within the Range of Reasonable**

13      At this preliminary approval stage, the court need only determine whether the proposed

14  settlement is "within the range of possible approval." *Wright v. Linkus Enterprises, Inc.*, 259

15  F.R.D. 468, 472 (E.D. Cal. 2009).  This Settlement is well within the range of possible approval

16  for several reasons.

17      As set forth above, the Settlement provides for an immediate recovery of $13.5 million in

18  cash, plus interest thereon, for the benefit of the Class. This is a favorable result for Class

19  Members.  Plaintiffs' damages expert estimated the <u>maximum</u> potentially compensable damages

20  for the Class's claims to be $73.17 million. Thus, the Settlement recovers approximately 18.4%

21  of the maximum possible aggregate damages. This recovery is substantially higher than historical

22  median settlement recoveries as a percentage of estimated damages in securities class actions.

23  According to Cornerstone Research, cases brought under Rule 10b-5 with potential damages

24  between $25 and $75 million recovered a median of 7.6% of potential damages between 2011

25  and 2019, and only 5.3% of potential damages for cases settled in 2020. *See* Laarni T. Bulan, and

26  Laura E. Simmons, Cornerstone Research, *Securities Class Action Settlements—2020 Review and*

27

28

*Analysis*, at 6.[4]  Moreover, NERA Economic Consulting concluded that the median recovery in securities class actions in 2020 and 2021 was approximately 1.8% of estimated damages. *See NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, at 24 (attached as Exhibit 2 to Federman Decl.). Accordingly, the recovery achieved here well exceeds the median percentage of recovery for settlements in securities class actions over the past decade.

The recovery of 18.4% of maximum potential damages also compares favorably to other securities class action settlements approved by courts within the Ninth Circuit. *See, e.g., Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (finding settlement recovering 14 percent of estimated damages to be "well within the range of percentages approved in other securities-fraud related actions in this District."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (granting final approval of a settlement fund of $13.75 million where the gross class recovery was 9 percent of maximum potential recovery).

Further, the $73.17 million aggregate damage is an estimate of the <u>best</u> outcome Plaintiffs could hope to achieve. Among other things, the $73.17 million estimate is based on a class period ending March 19, 2019. Defendants argued in their opposition to Plaintiffs' motion for class certification that the only viable class period ends on November 13, 2018. *See* Dkt. No. 91 at 14-16. Were Defendants successful in convincing the Court or a jury that the class period must end on November 13, 2018, the maximum potential damages would be reduced to only $52.86 million, as determined by Plaintiffs' expert. *See* Federman Decl. at ¶ 5. Moreover, the $73.17 million potential recovery would be contingent on the jury finding: (1) that Defendants issued materially false or misleading statements throughout the Class Period; (2) that Defendants issued such statements with the intent to defraud investors; <u>and</u> (3) that the <u>entire amount</u> of the dollar drops following November 13, 2018 and March 19, 2019 were caused by these alleged false and

---

[4]   *Available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis (last viewed March 17, 2022).

1    misleading statements. Defendants have vehemently denied liability, scienter, and loss causation.

2    *See id.* Defendants and their financial expert have also stanchly maintained that any recoverable

3    damages would be far less than Plaintiffs' expert's estimate. *Id.* Thus, if the Action had continued,

4    Plaintiffs faced substantial risks, including failure to establish Defendants' liability or the full

5    amount of the Class's damages at summary judgment or trial. In short, this Court should find that

6    "Plaintiff has demonstrated that there is a substantial risk in litigating this case further," and

7    therefore, that negotiations between Class Counsel and Defendants' counsel that produced the

8    Settlement were "serious" and "informed." *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC,

9    2015 WL 6471171, at \*9 (N.D. Cal. Oct. 27, 2015).

10        In addition, a driving motivation behind the Settlement is the legitimate concern that

11   Defendants may not be able to pay a greater judgment or recovery in this Action. A defendant's

12   financial condition often predominates the analysis of the adequacy of a settlement. *See Torrisi,*

13   8 F.3d 1370 at 1376 (finding defendant company's "financial condition" was the "predominate"

14   factor supporting adequacy of settlement); *see also Chatelain v. Prudential-Bache Sec., Inc.,* 805

15   F. Supp. 209, 214 (S.D.N.Y. 1992) ("The prospect of a bankrupt judgment debtor down at the

16   end of the road does not satisfy anyone involved in the use of class action procedures."). Here,

17   Amyris has reported in its SEC filings that there is substantial doubt about its ability to continue

18   as a going concern. There is also very limited insurance available to fund a recovery or potential

19   judgment in this Action. *See* Federman Decl., at ¶ 6. Because Defendants' attorneys' fees and

20   costs are paid by the applicable insurance policies, the insurance remaining from these wasting

21   policies would be further reduced were the litigation to continue. *Id.* Indeed, payment of the

22   Settlement will effectively deplete the remaining applicable insurance. *Id.*

23        Ultimately, an evaluation of the benefits of settlement must be tempered by a recognition

24   that any compromise involves concessions on the part of the settling parties. For this reason, "[t]he

25   Court shall consider the vagaries of litigation and compare the significance of immediate recovery

26   by way of the compromise to the mere possibility of relief in the future, after protracted and

27   expensive litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526

28

1    (C.D. Cal. 2004). This case presents a number of complex issues, and the risks and costs of further

2    litigating the case through summary judgment, trial, and appeal are significant. While Class

3    Representative and Class Counsel believe that they could present evidence at trial that would

4    establish Defendants' liability, Defendants believe with equal conviction that they would prevail

5    should this case progress. Under the circumstances, Class Representative maintains it is "proper

6    to take the bird in hand instead of a prospective flock in the bush." *Id.* (internal citation omitted).

7        **D.      The Proposed Notice to Class Members Satisfies Rule 23**

8            On December 8, 2021, the Court certified the Class. *See* Dkt. No. 101 at 20. For any class

9    certified under Rule 23(b)(3), "the court must direct to class members the best notice that is

10   practicable under the circumstances, including individual notice to all members who can be

11   identified through reasonable effort." Fed. R. Civ. P. Rule 23(c)(2)(B). Rule 23(e)(1) provides

12   that "[t]he court must direct notice in a reasonable manner to all class members who would be

13   bound by the proposal." Thus, Rule 23(c)(2) requires the "best practicable notice," while Rule

14   23(e) requires notice that is "reasonably calculated, under all of the circumstances, to apprise

15   interested parties of the pendency of the settlement proposed and to afford them an opportunity

16   to present their objections." The notice plan contemplated under the Settlement satisfies these

17   requirements.

18           In accordance with the terms of the Preliminary Approval Order, Class Counsel shall

19   cause the Claims Administrator to mail the Postcard Notice to all members of the Class that may

20   be identified through reasonable effort. To facilitate this process, Amyris, at no cost to the Class,

21   shall provide and/or cause its transfer agent to provide to Class Counsel such information as is

22   reasonably available to Defendants regarding the record owners of the Company securities which

23   may be included in the Class in electronic format ("Stockholder Records") within 20 calendar

24   days of the entry of the Preliminary Approval Order. *See* Preliminary Approval Order (Stipulation

25   at Exhibit A), at ¶ 6.

26           No later than thirty (30) calendar days after the entry of the Preliminary Approval Order

27   (the "Notice Date"), the Claims Administrator shall cause a copy of the Postcard Notice to be

28

mailed by first-class mail to the potential members of the Class. *Id.* at ¶ 7. The Claims Administrator shall also use reasonable efforts to give securities brokers and other nominees notice that, if they purchased or otherwise acquired the Company common stock during the Class Period for the beneficial interest of persons or entities other than themselves, they must either send Postcard Notices to all such beneficial owners or provide a list of the names and addresses of all such beneficial owners to the Claims Administrator who will mail the Postcard Notices. *Id.* at ¶ 9. Contemporaneously with the mailing of the Postcard Notice, the Claims Administrator shall cause copies of the (i) Stipulation, (ii) the Summary Notice, (iii) the Claim Form, and (iv) the Long Notice, to be posted on a website dedicated to the Settlement ("Settlement Website") from which copies of the Notice and Claim Form can be downloaded. *Id.* Additionally, Class Counsel, within ten (10) calendar days after the Notice Date, shall also cause the Claims Administrator to publish the Summary Notice on *PR Newswire*. *Id.* at ¶ 7.

The proposed Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process for filing a proof of claim; (e) a description of the Plan of Allocation; (f) the fees and expenses to be sought by Class Counsel; and (g) the necessary information for any Class Member to examine the Court records should they desire to do so. The Notice also sets forth instructions to securities brokers and other nominee holders regarding forwarding the Notice to those persons for whom the nominees held shares for their benefit. The proposed Notice closely tracks a model notice published by the Federal Judicial Center. *Compare* Exhibit A-1 to the Stipulation *with* Federal Judicial Center, *Securities Class Action Certification and Settlement: Full Notice*.[5]

The proposed Notice and its dissemination are thus "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more

---

[5] *Available at* https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

1    detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec.*

2    *Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (citations omitted); *Yaron v. Intersect ENT, Inc.*, No.

3    4:19-CV-02647-JSW, 2021 WL 5184290, at *2 (N.D. Cal. Nov. 5, 2021) (finding postcard notice

4    and online posting of long form notice "the best notice practicable under the circumstances");

5    *Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927, at *5 (N.D. Cal. Nov. 5, 2021)

6    (same); *Baker v. SeaWorld Entm't, Inc.*, No. 14-CV-2129-MMA (AGS), 2020 WL 818893, at *2-

7    *3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar proposed notice program

8    including website).

9          The proposed Notice also informs Class Members how they may object to or exclude

10   themselves from the Settlement and clearly states that all those who do not exclude themselves

11   will be bound by the Settlement and Final Judgment.

12         Furthermore, the PSLRA-mandated disclosures are provided in the proposed Notice as it:

13   (1) states the amount of the Settlement on both an aggregate and average per share basis; (2)

14   provides a brief statement explaining the reasons why the parties are proposing the Settlement;

15   (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an

16   aggregate and average per share basis) that Class Counsel will seek; and (4) provides the names,

17   addresses, and telephone numbers of representatives of the Claims Administrator and Class

18   Counsel, who will be available to answer questions from Class Members. *See* 15 U.S.C. § 78u-

19   4(a)(7).

20         Accordingly, the form and manner of providing Notice to the Class Members here satisfy

21   the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §78u-4(a)(7).

22   **E.    The Plan of Allocation Is Fair and Treats Class Members Equitably**

23         A plan of allocation will be preliminarily approved so long as "the proposed plan is

24   rationally related to the relative strengths and weaknesses of the respective claims asserted."

25   *Rosenburg v. I.B.M.*, No. CV06-00430PJH, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007);

26   *see also In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June

27

28

18, 1994) (finding it reasonable to allocate more to class members with stronger claims). The Plan of Allocation detailed in the Notice meets that standard. *See* Stipulation at Exhibit A-1, at 7-10.

The Plan was developed by Plaintiffs' damages expert in consultation with Class Counsel and the Claims Administrator. It provides a fair and reasonable method for the allocation of the Net Settlement Fund to Authorized Claimants. Each Authorized Claimant shall receive his (her or its) *pro rata* share of the Net Settlement Fund based upon his (her or its) Recognized Loss. *See id.* The Plan reduces a claimant's Recognized Loss to zero if he (she or it) had a trading gain or broke even from his, her, or its overall transactions in Amyris's common stock during the Class Period. *See id.* Similar plans have been approved by courts in this Circuit.[6] Since the Plan's formula for allocating the Net Settlement Fund is "rationally related to the relative strengths and weaknesses of the respective claims asserted," *Rosenburg*, 2007 WL 128232, at *5, the Court should preliminarily approve it.

### F.   The Procedural Guidance for Class Action Settlement Factors Are Satisfied

#### 1.   Information about the Settlement

##### a)   Guidance ¶ 1.d – Differences in Claims to be Released and Claims Certified

On December 8, 2021, the Court certified a Class consisting of "[a]ll persons and entities who purchased shares of Amyris, Inc., common stock during the period from March 15, 2018 through March 19, 2019 (inclusive) and were damaged thereby; excluded from the Class are the Defendants, officers and directors of Amyris, members of the immediate families of the individual Defendants, and affiliates of the corporate Defendant." Dkt. No. 101 at 20. Pursuant to that Order, Plaintiffs allege that Defendants knowingly or recklessly issued statements that materially misled investors, in violation of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5. The Class will be releasing these claims and other Unknown Claims as outlined in paragraphs 1(rr) and 2-4 of the Stipulation, submitted herewith.

---

[6] *See, e.g., Zynga*, 2015 WL 6471171, at *9; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008); *Nguyen v. Radient Pharms. Corp.*, No. SACV 11–00406 DOC (MLGx), 2014 WL 1802293, *5 (C.D. Cal. May 6, 2014).

**b)** __Guidance ¶ 1.e – Expected Recovery for the Class__

As discussed above, the Settlement provides for an immediate recovery of $13.5 million in cash, plus interest thereon, for the benefit of the Class. This compares to Plaintiffs' damages expert's estimation that the __maximum__ potentially compensable damages for the Class's claims would be $73.17 million. *See* Section IV.C, *supra.* Thus, the Settlement recovers approximately 18.4% of the maximum possible aggregate Class damages, which compares very favorably to other settlements of securities fraud class actions. *Id.*

The Settlement was reached only following Class Representative and Class Counsel's serious consideration that a larger recovery or judgment might be secured were the litigation to continue. *See, e.g.*, *Roe v. Frito-Lay, Inc.*, No. 14-CV-00751-HSG, 2016 WL 4154850, at *7 (N.D. Cal. Aug. 5, 2016) ("The risks and costs associated with class action litigation weigh strongly in favor of settlement."). To be sure, if the action against Defendants had continued, the Class faced substantial risks, including failure to establish Defendants' liability or the full amount of the Class's damages at summary judgment or trial. *See* Section IV.C., *supra*. In addition, were the litigation to continue, the Class faces the risk that Defendants may not be able to pay a greater judgment or recovery. *Id.* Class Representative and Class Counsel's evaluation of these risks were aided by the input of an experienced neutral mediator, Robert A. Meyer, Esq., who is specialized in securities class actions mediations.[7] Class Representative and Class Counsel believe that the Settlement, which provides a certain and immediate recovery of $13.5 million for the benefit of the Class, is fair, reasonable, and adequate. *See Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (addressing preliminary approval and stating that "'[c]onsidering the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate.").

---

[7] *See* https://www.jamsadr.com/meyer/ (last visited March 17, 2022).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

c)   **Guidance ¶ 1.f-g – The Plan of Allocation and Claims Process**

The process of paying Class Members under the Settlement will be based on claims submitted to the Claims Administrator and will be uniformly calculated based on the Plan of Allocation. The Plan of Allocation was developed by Plaintiffs' damages expert in consultation with Class Counsel and the Claims Administrator. It provides a fair and reasonable method for the allocation of the Net Settlement Fund to Authorized Claimants. Each Authorized Claimant shall receive his (her or its) *pro rata* share of the Net Settlement Fund based upon his (her or its) recognized loss. *See* Stipulation at Exhibit A-1, at 7-11; *see also* Section VI.E, *supra*. The Plan reduces a claimant's Recognized Loss to zero if the claimant had a trading gain or broke even from his, her, or its overall transactions in Amyris common stock during the Class Period. *See id.*

Because the large majority of investors own shares of common stock, including Amyris common stock, in street name only and are not registered shareholders, the number of Class Members in this Action is unknown. *See Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012) (explaining that where, as here, a case involves "nationally traded stocks," "the exact size of the proposed class is unknown"). Based on prior experience in securities class action settlements, Class Counsel and the Claims Administrator estimate that approximately 4,000 claims will be submitted as part of this Settlement. *See* Federman Decl. at ¶ 8. In estimating the potential number of Class Members expected to submit claims, the Claims Administrator considered several other recent administrations, including settlements in this District, similarly sized and involving actions with similar alleged claims and/or company profiles (*i.e.*, trading volume, market capitalization of the relevant stock, etc.). These settlements included: *Banerjee, et al. v Avinger, Inc., et al.*, No. 4:17-cv-3400-CW (N.D. Cal.) ($5 million settlement), *DeVry Education Group, Inc. Securities Settlement*, No. 1:16-cv-05198 (N.D. Ill.) ($27.5 million settlement), *EZCorp, Inc. Securities Litigation*, No. 1:15-CV-00608-SS (W.D. Tex) ($4.8 million settlement), *In re Extreme Networks, Inc. Securities Litigation*, No. 3:15-cv-04883-BLF (N.D. Cal.) ($7 million settlement).

1

      **d)**     **Guidance ¶ 1.h – Reversions**

2

      Under the Settlement, Defendants will cause $13,500,000.00 to be paid into an interest-
bearing Settlement Fund from which Class Members who submit Valid Claims will be paid. The
Settlement Fund in this case is non-reversionary, meaning that if all conditions of the Stipulation
are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned
to Defendants or their insurance carriers. *See* Stipulation at ¶¶ 11, 25. Instead, any balance
remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or
otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement
Fund shall be redistributed to Class Members in accordance with the provisions of the Stipulation.
*See id.* at ¶ 25. Any balance that remains in the Net Settlement Fund after such redistribution(s),
which would not be feasible or economical to reallocate to Class Members, shall be contributed
to Public Justice Foundation, a §501(c)(3) non-profit, non-sectarian organization devoted to
litigation and education in issues of public interest. *Id.*

      **2.**     **The Proposed Claims Administrator for the Settlement**

      Class Representative requests that the Court authorize the retention of KCC Class Action
Services ("KCC") as the Claims Administrator for the Settlement. KCC is an experienced claims
administration firm and has extensive experience in class actions and on notice issues. *See* Exhibit
3 to Federman Decl. Based on KCC's track-record and competitive proposal, KCC was selected
over other administrators. KCC's notice and administration proposal for this Settlement appears
reasonable based on Class Counsel's experience, and it was less than proposals provided by
competing claims administrators. KCC has estimated that full notice and administration of this
Settlement will cost less than $125,000.[8] *See* Federman Decl. at ¶ 8. The costs of the claims
administration will be deducted from the Settlement Fund prior to the distribution of payments to
Class Members. *See* Stipulation at ¶ 1(s).

---

[8] The ultimate cost of administration may vary, depending on unknown factors, *inter alia*, the
number of claims submitted, including by brokers and other nominees of Class Members.

3.      **The Proposed Notices to the Settlement Class**

Under the proposed notice plan, outreach to the Class will be through direct mail notice to Class Members' physical addresses, mail notice to securities brokers and nominees who purchased Amyris common stock for the beneficial ownership of Class Members, publication notice to be disseminated over a national newswire, and notice on the Settlement Website. *See* Preliminary Approval Order (Stipulation at Exhibit A), at ¶ 7. That is consistent with this District's Procedural Guidance, which suggests "mail, email, and/or social media as appropriate" and a "settlement website." Procedural Guidance at ¶ 3. Further, consistent with the Procedural Guidance, the Claims Administrator, KCC, is an experienced notice provider and settlement administrator who assisted in preparing the notices—which comply with the Procedural Guidance—providing sufficient information for Class Members to understand their rights and options, as well as ways to get more information.

4.      **Opt-Outs**

The proposed Notice includes information on a Class Member's right to request exclusion, including the manner and deadline for submitting such a request. *See* Stipulation at Exhibit A-1, at 12-13. Requests for exclusion must state the name, address and telephone number of the Person seeking exclusion, must state that the sender requests to be excluded from the Class in *Carbone v. Amyris, Inc., et al.*, Case No. 4:19-cv-01765-YGR (N.D. Cal.), and must be signed. Requests for exclusion must also provide: the date(s), price(s), and number(s) of shares of all purchases and sales of Amyris common stock during the Class Period along with documented proof of such purchases and sales. This information is necessary to determine whether the person requesting exclusion is otherwise an eligible Class Member.

5.      **Objections**

The proposed Class Notice complies with Rule 23(e)(5) in that it discusses the rights the Class Members have concerning the Settlement. The proposed Notice includes information on a Class Member's right to: (1) object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (2) participate in the Settlement and instructions on how to

1    complete and submit a Claim Form to the Claims Administrator. *See* Stipulation at Exhibit A-1,

2    at 14-15.  The Notice also provides contact information for Class Counsel, as well as the postal

3    address for the Court.

### 6.    The Intended Attorneys' Fees and Expense Request

5    Plaintiffs' Counsel intend to seek attorneys' fees of 25% of the Settlement Fund, which

6    equates to $3,375,000. This request is consistent with the Ninth Circuit's "benchmark" and is

7    reasonable for this Action. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)

8    (upholding a 28% fee award, which resulted in a multiplier of 3.65, and finding that

9    "[i]n common fund cases, the 'benchmark' award is 25 percent of the recovery obtained")

10   (internal quotations and citations omitted). To date, Plaintiffs' Counsel have recorded a combined

11   "lodestar" of $1,424,657.50 resulting from 2,351.9 hours of professional and staff time devoted

12   to this Action. Based on the current lodestar—which does not include the time that Plaintiffs'

13   Counsel will expend to manage the notice process, oversee the claims administration, present the

14   Settlement for final approval, and supervise the distribution of Settlement payments to the Class—

15   an award of 25% of the Settlement Fund would result in a multiplier of 2.37. This is well within

16   the range of multipliers regularly approved by courts within this District. *See Stanger v. China*

17   *Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to

18   represent class clients, who might otherwise be denied access to counsel, on a contingency

19   basis."); *see, e.g., Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995)

20   ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action

21   litigation."); *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *21 (N.D.

22   Cal. Feb. 11, 2016) ("In securities class actions in particular, courts have applied multipliers

23   ranging from 1.25 up to 4.") (collecting cases).

24   Plaintiffs' Counsel also intend to request reimbursement of litigation expenses not to

25   exceed $400,000. This request will reimburse Plaintiffs' Counsel for litigation expenses actually

26   incurred in this case, including: fees for expert witness reports, consultations, and testimony;

27   discovery expenses and discovery-support vendor fees relating to forensic document collections

28

and productions, the creation and maintenance of an electronic document review database, and reimbursements for certain third party productions; costs for legal research platforms such as Westlaw; fees for private investigators who located potential witnesses; transcripts and depositions costs; and other reasonably incurred litigation expenses. "Attorneys who created a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser*, No. 11-03572 (CRB), 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013).

### 7.   Requested Reimbursement Awards to Plaintiffs

Class Counsel intend to seek reimbursement awards for Class Representative Carbone and lead plaintiff Jansen, not to exceed $7,500 each. Both Carbone and Jansen activity participated in this litigation by reviewing pleadings, regularly consulting with Class Counsel during the progress of the Action, participating in settlement negotiations (including two mediation sessions), gathering and producing relevant documents, responding to multiple sets of interrogatories, preparing and sitting for depositions, and supervising the litigation for nearly three years on behalf of the Class. Many cases have approved reasonable payments to compensate class representatives and lead plaintiffs for the time, effort, and expenses devoted by them on behalf of a class. *See, e.g., McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 WL 839841, at *8 (S.D. Cal. Mar. 30, 2009) (approving awards to six class representatives and noting that "the requested reimbursement is consistent with payments in similar securities cases").

### 8.   *Cy Pres* Awardee

The Stipulation provides that the Net Settlement Fund will be distributed to Class Members on a *pro rata* basis in accordance with the Plan of Allocation, with remaining funds to be redistributed to eligible Class Members. Stipulation at ¶ 25. The Claims Administrator is to conduct as many redistributions to Class Members as are feasible and economical. *Id.* Any balance that remains in the Net Settlement Fund after such redistribution(s), which would not be feasible or economical to reallocate to Class Members, shall be contributed to Public Justice Foundation, a §501(c)(3) non-profit, non-sectarian organization devoted to litigation and education in issues of public interest, including on matters such as recovering funds for investors.

1  *Id.* Neither Class Representative nor Plaintiffs' Counsel has any relationship to Public Justice

2  Foundation.

3  **9.    Proposed Timeline**

4  Plaintiffs propose the following schedule of events leading to the Court's hearing for final

5  approval of the Settlement (the "Settlement Hearing").

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Hearing. | At least 100 days after the Court preliminarily approves the settlement. |
| Posting of Stipulation and its exhibits, Preliminary Approval Order, and Long Notice and Claim Form on the Claims Administrator's website and Mailing of Postcard Notice. | No later than 30 calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 7) |
| Publication of Summary Notice. | No later than 10 calendar days after the Notice Date. (Preliminary Approval Order ¶ 7). |
| Deadline for filing Proofs of Claim. | No later than 14 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 11). |
| Date for Class Counsel to file and motion papers in support of the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's application for attorneys' fees and reimbursement of expenses. | No later than 35 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 18). |
| Filing deadline for requests for exclusion. | No later than 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 13). |
| Filing deadline for objections. | No later than 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 15). |
| Date for Class Counsel to file reply papers in support of the Settlement, the Plan of Allocation, and application for attorneys' fees and reimbursement of expenses. | No later than 7 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 18). |

### 10.    Class Action Fairness Act

Within ten days of the filing of the Stipulation, Defendants will distribute notice of the proposed Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b). *See* Preliminary Approval Order (Exhibit A to the Stipulation), at ¶ 22.

### 11.    Past Distributions

Pursuant to Section 11 of the Procedural Guidance, Class Counsel submits that the settlement in the following case provides useful comparison to this Settlement.

| Case | *Angley v. UTi Worldwide, Inc.,* Case No., 2:14-cv-02066-CBM-E |
|---|---|
| **Settlement Fund** | $13,000,000.00 plus interest thereon |
| **Number of Class Members** | Unknown due to majority of investors holding shares in unregistered "street name" |
| **Number of Class Members to Whom Notice was Sent** | 7,649 |
| **Methods of Notice** | Mail, publication over newswire, website posting |
| **Claim Forms Submitted** | 6,144 |
| **Average Recovery** | Approximately $7,308 per class member[9] |
| **Amounts Distributed to *Cy Pres* Recipients** | $754.83 |
| **Notice and Administration Costs** | $99,130.16 |
| **Attorneys' Fees and Costs** | $4,218,340.30 |

## VII.   CONCLUSION

For the reasons set forth above, Class Representative respectfully requests that the proposed Settlement be preliminarily approved and the [Proposed] Preliminary Approval Order entered by the Court.

---

[9] This figure was derived by dividing the number of valid and eligible claim forms submitted by the net settlement fund. The actual recovery was dependent on the amount of each class member's recoverable losses as determined by the plan of allocation in that case.

Dated: March 24, 2022                    Respectfully submitted,


                                         */s/William B. Federman*
                                         William B. Federman (admitted *pro hac vice*)
                                         A. Brooke Murphy (admitted *pro hac vice*)
                                         FEDERMAN & SHERWOOD
                                         10205 North Pennsylvania Avenue
                                         Oklahoma City, Oklahoma 73120
                                         Tel: (405) 235-1560/Fax: (405) 239-2112
                                         -and-
                                         212 W. Spring Valley Road
                                         Richardson, TX  75081
                                         wbf@federmanlaw.com
                                         abm@federmanlaw.com

                                         *Class Counsel for Plaintiffs*


                                         Robert S. Green
                                         GREEN & NOBLIN, P.C.
                                         2200 Larkspur Landing Circle, Ste. 101
                                         Larkspur, California 94939
                                         Tel: (415) 477-6700/Fax: (415) 477-6710
                                         -and-
                                         4500 East Pacific Coast Highway
                                         Fourth Floor
                                         Long Beach, CA 90804
                                         rsg@classcounsel.com

                                         *Liaison Counsel for Plaintiffs*



## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on Thursday, March 24, 2022.

                                         */s/William B. Federman*
                                         William B. Federman