William B. Federman (admitted *pro hac vice*)
A. Brooke Murphy (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10204 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112

*Class Counsel for Plaintiffs*

Robert S. Green (State Bar No. 136183)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone:  (415) 477-6700
Facsimile:  (415) 477-6710
Email:  gnecf@classcounsel.com

*Liaison Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| VINCENT CARBONE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMYRIS, INC., et al.,<br><br>Defendants. | Case No. 4:19-cv-01765-YGR<br><br>CLASS ACTION<br><br>**PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF SETTLEMENT, AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Date:    November 8, 2022<br>Time:   2:00 p.m.<br>Location:   Courtroom 1, Fourth Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 8, at 2:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Yvonne Gonzalez Rogers, Plaintiff and Class Representative Vincent Carbone will and hereby does move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) finding that the proposed Settlement is fair, reasonable, and adequate, and granting final approval of the Settlement; (ii) approving the Plan of Allocation; and (iii) directing that judgment be entered dismissing with prejudice all claims.

This Motion is based on this Notice and Motion; the Memorandum of Law in Support; the Declaration of William B. Federman and exhibits thereto; all pleadings and papers filed herein; arguments of counsel; and any other matters properly before the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed Settlement is fair, reasonable, and adequate and should be approved by the Court.

2. Whether the proposed Plan of Allocation is fair and reasonable and should be approved by the Court.

3. Whether a Final Order and Judgment should be entered, dismissing the Action in its entirety and with prejudice.

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     FACTUAL ALLEGATIONS................................................................................2

III.    BACKGROUND...................................................................................................3

        A.      Procedural History................................................................................3

        B.      Discovery...............................................................................................4

        C.      Settlement Discussions..........................................................................5

        D.      The Settlement.......................................................................................6

        E.      Preliminary Approval Granted and Notice Issued.................................6

IV.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ........8

        A.      The Relevant Factors Considered By Courts in This Circuit Favor Approval
                of The Settlement ..................................................................................9

                1.      Strength of Plaintiffs' Case, the Risk, Expense, Complexity
                        and Likely Duration Of Further Litigation.................................9

                2.      The Recovery Obtained in the Settlement Favors Approval...................12

                3.      The Stage of the Proceedings ..................................................13

                4.      The Settlement Was Vigorously Negotiated and Is Supported by
                        Experienced Counsel................................................................15

                5.      The Reaction of the Class.........................................................15

V.      THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ..........................16

VI.     THE NOTICE MEETS THE REQUIREMENTS OF DUE PROCESS AND
        RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE ...............................18

VII.    CONCLUSION ...................................................................................................19

1

## TABLE OF AUTHORITIES

2

<u>**Cases**</u>

3

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ................................................................................10

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...............................................................................8

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980).........................................................................8, 15

*Fleming v. Impax Lab'ys Inc.*,
   No. 16-CV-06557-HSG, 2021 WL 5447008 (N.D. Cal. Nov. 22, 2021)...............18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................................8, 9, 12, 16

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ..................18

*In re BofI Holding, Inc. Sec. Litig.*,
   No. 3:15-CV-02324, 2022 WL 2068424 (S.D. Cal. June 8, 2022) ........................18

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ..................................................................................12

*In re Equity Funding Corp. of Am. Sec. Litig.*,
   603 F.2d 1353 (9th Cir. 1979) ...............................................................................19

*In re Heritage Bond Litig.*,
   Nos. 02-ML-1475 DT et seq., 2005 WL 1594403 (C.D. Cal. June 10, 2005) .................11, 12

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ..................................................................8, 9, 14, 16

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................passim

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re JDS Uniphase Corp. Securities Litigation,*

No. C-02-1486, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007)………………………..10

*Linney v. Cellular Alaska P'ship,*

151 F.3d 1234 (9th Cir. 1998) .......................................................................8, 9, 14

*Linney v. Cellular Alaska P'ship,*

No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) .........................8

*Miller v. Republic Nat. Life Ins. Co.,*

559 F.2d 426 (5th Cir. 1977) ......................................................................19

*Mullane v. Cent. Hanover Bank & Trust Co.,*

339 U.S. 306 (1950).....................................................................................19

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,*

221 F.R.D. 523 (C.D. Cal. 2004)...........................................................11, 15

*Nguyen v. Radient Pharm. Corp.,*

No. 11-cv-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014).....................17

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*

688 F.2d 615 (9th Cir. 1982) ............................................................8, 12

*Reynolds v. NFL,*

584 F.2d 280 (8th Cir. 1978) ......................................................................19

*Van Wingerden v. Cadiz, Inc.,* No. LA CV15-03080 JAK (JEMx),

2017 WL 5565263 (C.D. Cal. Feb. 8, 2017) ........................................17

*Vataj v. Johnson,*

No. 19-CV-06996-HSG, 2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ................................18

**Rules**

Fed. R. Civ. P. 23 ...................................................................................passim

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff and Class Representative Vincent Carbone ("Plaintiff," "Class Representative," or "Carbone") on behalf of the Class (collectively, "Plaintiffs") respectfully submits this memorandum of law in support of the unopposed motion, pursuant to Fed. R. Civ. P. 23(e), for final approval of this class action Settlement, as set forth in the Stipulation and Agreement of Settlement, (Dkt. No. 119-1) (the "Stipulation" or "Settlement").[1]

Submitted herewith is the Declaration of William B. Federman in Support of (1) Plaintiff's Motion for Final Approval of Settlement, and (2) Plaintiff's Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Reimbursement Awards to Plaintiffs (the "Federman Decl." or "Federman Declaration") and the exhibits thereto.

## I.    INTRODUCTION

Plaintiff respectfully submits that the Settlement of the above-captioned class action (the "Action") satisfies all of the relevant standards for final approval pursuant to Fed. R. Civ. P. 23. The Settlement is fair considering the sizeable recovery to the Class and the risks attendant to further protracted litigation. Indeed, the proposed Settlement of $13.5 million recovers 18.4% of Plaintiffs' expert's maximum potential damages estimate, which is two to three times higher than the historical median settlement recovery as a percentage of estimated damages in comparable securities class actions. This is a highly favorable result for the Class.

Further, the Settlement resulted from extensive arms-length negotiations between the Parties with the active participation of a well-respected and experienced JAMS mediator, Robert A. Meyer. Federman Decl. at ¶ 6. Class Counsel was well informed about the strengths and weaknesses of the case as a result of their extensive investigations, motion practice, discovery, consultation and discussions with Plaintiffs' financial expert, and consideration of all arguments presented. *Id.* at ¶¶ 4-6.

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

## II.    FACTUAL ALLEGATIONS

This is a federal securities class action brought on behalf of purchasers of Amyris common stock against Amyris, its current Chief Executive Officer, and its former Chief Financial Officer (collectively, "Defendants"). Plaintiffs allege that, during the Class Period, Defendants knowingly or recklessly issued statements that materially misled investors, in violation of Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5.

Amyris is an industrial biotechnology company that manufactures and sells products in health and wellness, clean beauty, and flavor and fragrance markets. On January 1, 2018, Amyris began utilizing Accounting Standard Codification Topic 606, Revenue from Contracts with Customers ("ASC 606"). In most circumstances, the application of ASC 606 allows a business to recognize revenue when it delivers a good sold for a fixed price if delivery of the good is the business's final performance obligation under the contract. However, Plaintiffs allege that Defendants used ASC 606 to report as recognized royalty revenues what were actually overstated estimates of future royalty payments to be paid by a third party. *See* Amended Complaint at ¶¶ 23-32.[2]

According to Plaintiffs, Defendants knew or recklessly ignored that their application of ASC 606 created speculative royalty revenues, but Defendants nonetheless falsely and misleadingly: reported record financial results and improved revenues; presented these improved financial results as though they were no less certain than they had been in previous years; assured that the revenue growth was real and sustainable; misleadingly attributed the newly improved revenue numbers to the growing acceptance of Amyris's products; claimed that the application of ASC 606 had no material impact on the financial results but actually simplified Amyris's financial reporting; and attested that there were no undisclosed deficiencies in the Company's internal control over financial reporting. *See* Amended Complaint at ¶¶ 44-71.

---

[2] "Amended Complaint" refers to Plaintiffs' Amended Class Action Complaint (Dkt. No. 43).

The true facts—and the risks associated with Defendants' allegedly false and misleading statements concerning Amyris's financial condition, inflated revenues, and internal control over financial reporting—began to reveal themselves and materialize on November 13, 2018, when Defendants announced severely disappointing third quarter royalty revenues that missed Defendants' previous projections by $15 million. The truth was further revealed on March 19, 2019, when the Company disclosed that it would be unable to timely file its annual report due to accounting difficulties, that Amyris was "in the process of completing its evaluation of internal control over financial reporting and may have further deficiencies to report," and that Amyris expected to report substantial doubt about its ability to continue as a going concern. *Id.* at ¶ 74. As a result of these revelations, the price of Amyris's stock fell precipitously. *Id.* at ¶¶ 69, 75.

Amyris later announced that it would restate its fiscal 2018 results due to "a material error [that] was made related to the estimates for recognizing revenue for royalty payments," and to disclose that it had been operating with undisclosed weaknesses in its internal control over financial reporting. *Id.* at ¶ 76. Shortly thereafter, Amyris disclosed that its independent accounting firm was being dismissed and that the Company's CFO, Defendant Valiasek, had been terminated from her role as CFO. *Id.* at ¶¶ 79-80. In October 2019, the Company ultimately restated its 2018 financials in its Form 10-K, which recognized royalty revenues of $7.58 million for the entire year of 2018—less half the $18.47 million in royalty revenues that Defendants originally reported for just Q1 and Q2 of 2018. *See* Dkt No. 52-2; *see also* Amended Complaint at ¶¶ 51, 64.

## III.   BACKGROUND

### A.   Procedural History

This case was initiated on April 3, 2019. Dkt. No. 1. On June 28, 2019, the Court issued an Order, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), appointing Rob Jansen ("Jansen") as lead plaintiff and appointing Federman & Sherwood as Lead Counsel. Dkt. No. 29.  On September 13, 2019, the Amended Complaint (Dkt. No. 43) was filed by Jansen and Carbone on behalf of themselves and the putative Class.

Defendants moved to dismiss the Amended Complaint on October 25, 2019 (Dkt. No. 45), which Plaintiffs opposed (Dkt. Nos. 52, 56). Following completed briefing and a hearing, the Court denied Defendants' motion to dismiss in its entirety on October 5, 2020 (Dkt. No. 61).

Plaintiffs moved for class certification on July 30, 2021. Dkt. No. 83. Following completed briefing and a hearing, the Court entered an Order on December 8, 2021, which certified a Class consisting of "[a]ll persons and entities who purchased shares of Amyris, Inc., common stock during the period from March 15, 2018 through March 19, 2019 (inclusive) and were damaged thereby; excluded from the Class are the Defendants, officers and directors of Amyris, members of the immediate families of the individual Defendants, and affiliates of the corporate Defendant." Dkt. No. 101 at 20. In its Order, the Court appointed Carbone as Class Representative but declined to appoint Jansen as a class representative due to concerns that issues unique to him would become the focus of the Action. *Id.* The Court appointed Federman & Sherwood as Class Counsel. *Id.*

On December 22, 2021, Defendants filed a petition in the United States Court of Appeals for the Ninth Circuit for permission to appeal the Order certifying the Class, pursuant to Fed. R. Civ. P. 23(f). *See* Dkt. No. 104. On January 7, 2022, Plaintiff filed an answer to the Rule 23(f) petition, and on January 14, 2022, Defendants filed a motion for leave to file a reply in support of the Rule 23(f) petition. This motion and the Rule 23(f) petition were pending when the Parties agreed to resolve the Action. The proceedings in the Ninth Circuit have been stayed pending completion of the settlement process, including the Court's determination whether to approve the Settlement in this Action.

**B.    Discovery**

Upon entry of the Court's Order denying Defendants' motion to dismiss, which lifted the automatic stay of discovery pursuant to the PSLRA, the Parties promptly engaged in an extensive discovery process.

As part of the discovery process, Class Representative and Class Counsel: (i) negotiated the protective order regarding confidential materials; (ii) prepared and served multiple sets of detailed document requests and interrogatories on Defendants; (iii) prepared and served nine (9)

subpoenas *duces tecum* on relevant third parties, including Amyris's current and former financial auditors, analysts, and independent contractors; (iv) prepared and served a detailed Freedom of Information Act ("FOIA") request on the Securities and Exchange Commission ("SEC"); (v) engaged in numerous negotiations concerning the scope of document productions and electronic search parameters to be utilized; (vi) responded to Defendants' requests for production and interrogatories, including gathering and producing responsive documents on behalf of Class Representative Carbone and plaintiff Jansen; (vii) considered and challenged Defendants' privilege log, which contained thousands of entries; and (viii) prepared and issued several letters to Defendants' counsel concerning production, privilege claims, and other discovery disputes. See Federman Decl. at ¶ 24; see also Stipulation at ¶¶ G-I.

As a result of Plaintiffs' document requests on Defendants and third parties, Class Counsel was able to secure more than 800,000 pages of document production, which Class Counsel reviewed, analyzed, and organized. Federman Decl. at ¶ 5. As part of the discovery process, Class Counsel consulted extensively with Plaintiffs' experts regarding damages, market efficiency, loss causation, financial auditing, and the preparation of the necessary expert reports. Class Counsel also prepared for and defended the depositions of Carbone, Jansen, and Plaintiffs' market efficiency and damages expert. The depositions of Amyris's auditors and relevant Amyris employees were upcoming at the time the Parties reached the agreement to settle in principle. *Id.*

## C. Settlement Discussions

On February 23, 2021, the Parties attended a full-day mediation with JAMS mediator Robert A. Meyer, Esq. Before the mediation session, the Parties exchanged extensive mediation statements detailing the strengths and weaknesses of their respective positions. As an exhibit to Plaintiffs' mediation statement, Class Counsel provided to Defendants and the mediator a thorough report prepared by Plaintiffs' auditing expert, Harris L. Devor, CPA, which opined that Amyris improperly accounted for its royalty revenues during the Class Period and that this practice was a result of material weaknesses in Amyris's internal control over financial reporting. The Parties negotiated in good faith during this mediation but did not reach an agreement.

1    On March 18, 2021, the Parties participated in a second full-day mediation with JAMS

2    mediator, Robert A. Meyer, Esq. Before the mediation session, the Parties exchanged reports

3    prepared by their respective damages experts, which set forth the experts' opinions on potential

4    aggregate damages in this Action. Again, the Parties negotiated in good faith but did not reach an

5    agreement, and litigation continued.

6    With the assistance of Mr. Meyer, the Parties continued their negotiation efforts while

7    litigating the Action. On February 3, 2022, after months of negotiations, Mr. Meyer presented the

8    Parties with a mediator's proposal for a settlement. On February 4, 2022, both parties accepted

9    Mr. Meyer's proposal to settle the Action for $13,500,000.00, subject to executing formal

10   settlement documents and the Court's approval of the Settlement. Subsequently, the Parties spent

11   extensive time negotiating the final terms of the Stipulation and Agreement of Settlement and

12   associated exhibits.

13       **D.      The Settlement**

14   Pursuant to the proposed Settlement, Defendants will cause $13,500,000.00 to be

15   deposited into an interest-bearing escrow account (the "Settlement Fund") for distribution to

16   eligible Class Members, before deduction of Court-awarded fees and expenses. In exchange, upon

17   the Effective Date of the Settlement, the Class will release all Released Claims against the

18   Released Defendant Parties.

19   The Settlement, and the prosecution of the Action that preceded it, reflects vigorous

20   advocacy by Class Counsel and Class Representative on behalf of the Class. Class Representative

21   and Class Counsel believe that the Settlement is an excellent result and is fair, adequate, and

22   reasonable in all respects.

23       **E.      Preliminary Approval Granted and Notice Issued**

24   On July 22, 2022, the Court issued an Order granting preliminary approval of the

25   Settlement and approving the dissemination of the Postcard Notice, Long Notice, Proof of Claim,

26   and Summary Notice to the Class ("Preliminary Approval Order").  Dkt. No. 121.  Copies of the

27   Postcard Notice, Long Notice, Proof of Claim, and Summary Notice are attached as Exhibits A-

28

B to the Declaration of Lance Cavallo ("Cavallo Declaration" or "Cavallo Decl."), attached as Exhibit 2 to Federman Decl. In its Preliminary Approval Order, the Court also appointed KCC Class Action Services ("KCC") as the Claims Administrator and set a hearing date of November 8, 2022, to consider the fairness, reasonableness and adequacy of the Settlement.

In compliance with the Preliminary Approval Order and under the supervision of Class Counsel, KCC mailed the Postcard Notice to (i) all potential members of the Settlement Class who could be reasonably identified; and (ii) known brokers/nominees who may have purchased Amyris common stock for the beneficial interest of individual investors. Cavallo Decl. at ¶¶ 3-9. To date, KCC has mailed 19,079 Postcard Notices and 282 Notice Packets. *Id.* at ¶ 8.

In addition, the Long Notice, Proof of Claim, and other documents relevant to the Settlement were posted on the settlement website, www.AmyrisSecuritiesLitigation.com, maintained by KCC. *Id.* at ¶ 12. KCC also disseminated the Summary via *PR Newswire*. *Id.* at ¶ 10. KCC further provided the Notice to the Depository Trust Company ("DTC") for publication on its legal notice system ("LENS"), which is accessible to any broker or other nominee that participates in DTC's security settlement system. *Id.* at ¶ 6.

The Notice described the claims asserted in the Action, the contentions of the Settling Parties, a history of the litigation of the Action, the terms of the Settlement, the proposed Plan of Allocation, the maximum amount of the fees and expenses that Class Counsel intended to seek; the right of Settlement Class Members to (i) be excluded from the Settlement Class; (ii) to object to the Settlement; and (iii) to make an appearance at the Final Approval Hearing; and apprised Settlement Class Members of all deadlines relevant to the exercise of the above rights. *See* Cavallo Decl. at Exhibits A-B.

The response of the Settlement Class to the Settlement has been overwhelmingly positive. As of October 3, 2022, no requests to be excluded from the Class have been received, and no objections to any aspect of the Settlement have been received. Cavallo Decl. at ¶¶ 13-14. This response is strong indicia of the fairness, adequacy, and reasonableness of the Settlement.

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

Federal Rule of Civil Procedure 23(e) provides that "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses." *Id.*    In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Consequently, in making its assessment pursuant to Rule 23(e), the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion and that the Settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

To avoid excessive intrusion into the parties' compromise, the court considers the settlement taken as a whole, rather than its individual component parts, and examines it for overall fairness. *Officers for Justice*, 688 F.2d at 628. Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625.  To the contrary, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length [sic] negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981).

As explained below, the Settlement was reached after extensive litigation by experienced counsel on both sides and after aggressively fought arms-length negotiations.  Under these circumstances, the Settlement should be afforded the presumption of fairness.

### A.    The Relevant Factors Considered by Courts in This Circuit Favor Approval of The Settlement

To determine whether a proposed settlement is fair, reasonable, and adequate under Rule Rule 23(e) of the Federal Rules of Civil Procedure, the Ninth Circuit has identified the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Hanlon*, 150 F.3d at 1026; *Linney*, 151 F.3d at 1242.

Consideration of these factors points toward approval of the proposed Settlement.  The Settlement provides a certain and substantial recovery for Class Members while avoiding the impending lengthy litigation, escalation of expenses, the uncertainty of maintaining class certification, further dispositive motions, and trial, each of which provides an avenue for Defendants to significantly limit or foreclose any recovery for the Class.

### 1.    Strength of Plaintiffs' Case, the Risk, Expense, Complexity and Likely Duration of Further Litigation

When evaluating proposed class action settlements, courts consider the "strength of the plaintiffs' case" and the risk faced in further litigation.  *In re Mego Financial Corp. Securities Litigation*, 213 F.3d at 458.  As set forth herein and in the accompanying Federman Declaration, while Class Representative and Class Counsel believe that all the claims asserted against Defendants have merit, they also recognize the numerous risks and uncertainties in further litigating the claims.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[M]erely reaching trial is no guarantee of recovery.").  Indeed, there have been many securities class actions prosecuted in the belief that the alleged claims were meritorious, only to

lose on summary judgment, at trial, or on appeal. *See, e.g., In re JDS Uniphase Corp. Securities Litigation*, No. C-02-1486, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict against plaintiffs, the action was dismissed, and plaintiffs were ordered to pay defendants' costs).

By their very nature, securities class actions, such as this Action, involve complex legal and factual issues. As recognized by retired Supreme Court Justice Sandra Day O'Connor, sitting by designation on the Fifth Circuit, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). In this case, there were substantial risks with respect to Plaintiffs' ability to sustain the Action, prove that Defendants had made material misstatements or omissions, with scienter, and that damages were caused by the alleged misrepresentations.

In particular, the process of proving liability was by no means certain, and success on this element would require Plaintiffs to prove that Defendants' public statements were materially false or misleading and made with an intent to deceive or with extreme recklessness as to the potential to deceive. However, Defendants consistently argued that Plaintiffs could not meet their burden of proof because Defendants made accurate statements concerning the application of ASC 606 and that the reason for the disappointing royalty revenues was a drop in the market price of Vitamin E. *See* Dkt. No. 45 at 9-11; Dkt. No. 91 at 6. Thus, Defendants argued that they did not act knowingly or with extreme recklessness in light of the information they had at the time their statements were made. *Id.* Defendants also argued that Plaintiffs could not prove loss causation, particularly for the alleged corrective disclosures on March 19, 2019. *See* Dkt. No. 91 at 14-16. Further, Defendants petitioned to appeal this Court's class certification Order pursuant to Rule 23(f), arguing that the class should not have been certified. *See* Dkt. No. 104.

While Plaintiffs disagree with Defendants' arguments and believe the Ninth Circuit would affirm the Court's class certification Order and that the evidence would ultimately support a finding of liability and loss causation, there is no guarantee of success especially in a complex

case such as this one.  Indeed, a determination of liability would turn on the jury's assessment of Plaintiffs' experts, Defendants, and other witnesses on the stand.  This posed a significant risk to Plaintiffs at trial, as no one can accurately predict how a particular witness would present in front a jury or how a jury might react to the evidence.  *See In re Heritage Bond Litig*., Nos. 02-ML-1475 DT et seq., 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.").  Moreover, proving liability would be contingent on the jury's ability and willingness to become educated on highly technical issues such as generally accepted accounting principles ("GAAP"), SEC disclosure laws, and the theories and methodologies for determining loss causation.

Assuming Plaintiffs could prove liability, Plaintiffs faced considerable challenges in proving loss causation and damages.  While Plaintiffs' expert estimated the range of potential damages to be a ***maximum*** of $73.17 million, Defendants have argued that Plaintiffs could not prove that the Class's losses were caused by the alleged misstatements (as opposed to other factors such as unexpectedly poor earnings results).  *See* Dkt. No. 91 at 6.  Defendants further argued that the March 19, 2019 disclosure in particular was not corrective of the alleged misstatements and that the Class Period was unsustainable.  *Id.* at 14-16.  While Plaintiffs, through the assistance of Plaintiffs' expert, had a well-planned strategy for addressing these issues at trial, the challenges were real and created considerable risk that a jury might not be able to determine what, if any, losses were caused by Defendants' alleged misrepresentations rather than by other adverse news or events.

The risks and uncertainties of surviving Defendants' petition to appeal the class certification Order, anticipated motion for summary judgement, proving Plaintiffs' claims at trial, and upholding a judgment on appeal, strongly indicate that a settlement at this time (that potentially nets a greater recovery than after trial and appeals) is in the best interest of the Class. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to

1  lengthy and expensive litigation with uncertain results.").  The Settlement confers an immediate,

2  reasonable, and valuable cash benefit on Class Members—one that negates the very real risks to

3  recovery posed by continued litigation.

4          **2.      The Recovery Obtained in the Settlement Favors Approval**

5          The immediate $13.5 million cash payment to the Class will provide an excellent recovery

6  under the circumstances.  "The proposed Settlement is not to be judged against a hypothetical or

7  speculative measure of what might have been achieved by the negotiators." *Officers for Justice*,

8  688 F.2d at 625.  As "[s]ettlement is the offspring of compromise[,] the question we address is

9  not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate

10 and free from collusion."  *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally

11 embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties

12 each give up something they might have won had they proceeded with litigation." *Officers for*

13 *Justice*, 688 F.2d at 624.

14         Here, the Settlement represents approximately 18.4% of Plaintiffs' damages expert's

15 estimate of maximum aggregate damages ($73.17 million).  The recovery is an excellent result

16 and significantly larger than typical recoveries in cases of this type.  *See, e.g., Omnivision,* 559 F.

17 Supp. 2d at 1042 (noting the average recovery in securities class actions is less than 3% of possible

18 damages and approving settlement representing 6% of recoverable maximum damages); *Heritage*

19 *Bond,* 2005 WL 1594403, at *8-9 (recognizing average recovery of between 2% to 3% of

20 maximum damages); *In re Cendant Corp. Litig.,* 264 F.3d 201, 241 (3d Cir. 2001) (typical

21 recoveries in securities class actions range from 1.6% to 14% of total losses).  Even under

22 Plaintiffs' highest damages estimate, the Settlement here is approximately ***three times larger*** than

23 historical median settlement percentage recoveries in comparable securities class actions.

24 According to Cornerstone Research, cases brought under Rule 10b-5 with potential damages

25 between $25 and $75 million recovered only 5.3% of potential damages for cases settled in 2020

26 and recovered a median of 7.6% of potential damages for cases settled between 2011 and 2019.

27 *See* Laarni T. Bulan, and Laura E. Simmons, Cornerstone Research, *Securities Class Action*

28

*Settlements—2020 Review and Analysis*, at 6.[3] Similarly, NERA Economic Consulting concluded that the median recovery in securities class actions in 2020 and 2021 was approximately 1.8% of estimated damages. *See NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, at 24 (attached as Exhibit 1 to Federman Decl.).

Recovery of the entire $73.18 million of ***potentially*** compensable damages assumes, first, that a jury would find Defendants liable for their statements and second that the entire share price drops on November 13, 2018, and March 19, 2019, were caused by Defendants' Class Period statements. Such a showing could prove difficult, as Defendants emphatically argued that the Class Members' losses were not the result of corrections to Defendants' alleged misrepresentations, and thus even if Plaintiffs were to prove falsity and scienter, no damages caused by Defendants' alleged misstatements could be proven. *See* Federman Decl. at ¶ 8. Moreover, Defendants vigorously argued that Plaintiffs' expert had vastly overestimated the number of publicly-traded damaged shares (as opposed to the damages per share) such that even if Plaintiffs could prove that some or all of the losses were a result of Defendants' allegedly false statements, the amount of aggregate losses estimated by Plaintiffs was still significantly inflated. *Id.* Under Defendants' assessment, the amount of aggregate damages, if any, would only be a fraction of the amount estimated by Plaintiffs' expert. Consequently, had the case been tried, it was likely that the damages ultimately proven could have been lower.

### 3. The Stage of the Proceedings

This Action has been pending for over three years, and the Parties have thoroughly briefed and explored the issues as well as the strengths and weaknesses of their respective arguments. By the time the Settlement was reached, the Action was in the advanced stages of litigation. Plaintiff and Class Counsel had conducted an extensive pre-complaint investigation which included, *inter alia*, interviewing confidential witnesses (mostly former high-ranking employees of Amyris), reviewing hundreds of pages of documents (including Amyris's filings with the SEC, press

---

[3] *Available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis (last viewed September 20, 2022).

releases, and transcripts of earnings conference calls), and researching the applications for the then-new accounting rule ASC 606. Class Counsel had fully briefed and argued against Defendants' motions to dismiss, resulting in the denial of Defendants' motion. Class Counsel had defended the depositions of Plaintiff and Plaintiffs' financial expert. Class Counsel had successfully briefed and argued that the action should be certified for class action treatment. Class Counsel had served multiple sets of interrogatories and document requests on Defendants and had served nine (9) subpoenas *duces tecum* on relevant third parties, including Amyris's current and former financial auditors. Class Counsel had culled, analyzed, and reviewed more than 800,000 pages of document production obtained by Defendants and third parties. Class Counsel and Plaintiff had prepared and submitted a detailed mediation statement that included a thorough discussion of evidence and relevant arguments, and had reviewed Defendants' mediation statement. Further, Plaintiff and Class Counsel had consulted with their damages expert and their financial auditing expert to develop preliminary reports, which were submitted to the mediator and Defendants as part of the settlement discussion process.

In short, this Action settled after substantial motion practice and discovery. The Ninth Circuit has approved settlements where the parties had far less information than what was before the Parties here. *See, e.g., Mego*, 213 F.3d at 459 (even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998) (approving settlement reached before any formal discovery was conducted and finding that the parties had "sufficient information to make an informed decision about settlement"). Here, Plaintiff and Class Counsel were more than sufficiently aware of the strengths and weaknesses of the case and the risks of proceeding to trial. *See, e.g*., Federman Decl. at ¶¶ 5 and 24. Having sufficient information to properly evaluate the Action, Plaintiff and Class Counsel managed to secure an excellent Settlement for the Class without the substantial additional expense, risk, and uncertainty of continued litigation. This factor weighs in favor of this Court's approval of the Settlement.

### 4.   The Settlement Was Vigorously Negotiated and Is Supported by Experienced Counsel

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis*, 87 F.R.D. at 18; *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citation omitted); *Omnivision*, 559 F. Supp. 2d at 1043 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

This case has been litigated by experienced and well-respected counsel on both sides. Class Counsel has considerable experience litigating securities class actions nationwide – including within this Circuit and District. *See* Federman Decl. at Exhibit 3. Similarly, throughout the litigation and settlement negotiations, Defendants were represented by two sets of very skilled and highly respected counsel at Gibson, Dunn & Crutcher LLP and Orrick, Herrington & Sutcliffe LLP. In addition, the Parties' negotiations were thorough (involving extremely detailed mediation submissions), and the Settlement was reached without collusion after good-faith bargaining among the Parties and Defendants' insurance carriers. Class Counsel, Defendants' Counsel, and carrier counsel, participated in two extensive mediation sessions overseen by experienced and well-regarded JAMS mediator, Robert A. Meyer. *See* Federman Decl. at ¶ 6. During the mediation sessions, the Parties addressed numerous contentious and complex issues. Even after these two full-day mediation sessions, the Parties were unable to reach a resolution of the case. However, the Parties continued to discuss settlement options and their respective positions with Mr. Meyer in subsequent months. These discussions and evidentiary showings eventually prompted Mr. Meyer to present the Parties with a mediator's proposal, which the Parties accepted. *Id.* Accordingly, this factor weighs in favor of the Settlement.

### 5.   The Reaction of the Class

Pursuant to the Order granting preliminary approval of the proposed settlement (Dkt. No. 121), KCC mailed 19,079 Postcard Notices and 282 Notice Packets to potential Class Members and nominees. Cavallo Decl. at ¶ 8. KCC also disseminated the Summary via *PR Newswire*. *Id.*

at ¶ 10.  In addition, KCC provided the Notice to the DTC for publication on LENS, which is accessible to any broker or other nominee that participates in DTC's security settlement system. *Id.* at ¶ 6.

To date, the Claims Administrator has received 79 claim forms, 63 of which are deemed preliminarily valid.  *Id.* at ¶ 9.  In KCC's experience, the substantial majority of claims are electronically filed by institutions or third party services, with such electronic filings usually submitted very close to the filing deadline.  *Id.*  Accordingly, the number of claims is expected to increase by the time the claims deadline closes on October 25, 2022.  *Id.*

To date, not a single Class Member has objected to the Settlement or the Plan of Allocation.  Federman Decl. at ¶ 14.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted).  Additionally, no Class Member has sought exclusion from the Settlement.  *Id.* at ¶ 13. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."  *Hanlon*, 150 F.3d at 1027; *see also Mego Fin. Corp.*, 213 F.3d at 458.  Given the size of the Class and the widely distributed Notice, the reaction of the Class weighs in favor of settlement approval. *Omnivision*, 559 F. Supp. 2d at 1043.

By November 1, 2022, Plaintiffs will submit a supplemental declaration from the Claims Administrator which will provide updated claims, exclusion, and objection information.

In summary, the pertinent factors considered by courts all weigh in favor of final approval of the Settlement. As such, the Court should finally approve the Settlement as fair, reasonable, and adequate.

## V.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

Assessment of the adequacy of a plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate."  *Omnivision*, 559 F. Supp. 2d at 1045. "It is reasonable to allocate

the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Van Wingerden v. Cadiz, Inc*., No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263, at *9 (C.D. Cal. Feb. 8, 2017) (quoting *Omnivision*, 559 F. Supp. 2d at 1045); *see also Nguyen v. Radient Pharm. Corp*., No. 11-cv-00406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon…the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

Here, the proposed Plan of Allocation, which was developed by Plaintiffs' damages/loss causation expert in close consultation with Class Counsel, provides a fair and reasonable method to allocate the Settlement Fund among Class Members who submit valid claim forms. A Class Member's recognized loss will be based upon the dates of purchase and sale, if any, in correspondence with the amount of estimated alleged artificial inflation in Amyris stock on the date(s) the stock was purchased. The Settlement Fund will be allocated to Class Members on a *pro rata* basis based on the relative size of their recognized losses. The Plan of Allocation was described in detail in the Notice, including a table showing the amount of inflation per share, as determined for the Plan of Allocation, on every trading date during the Class Period. *See* Notice at 4-6, attached as Exhibit 2.A to the Federman Decl.

Class Counsel submit that the Plan of Allocation fairly and rationally allocates the proceeds of the Settlement among Class Members based on the losses they suffered from purchases of Amyris stock attributable to the conduct alleged. *See Radient Pharm. Corp.,* 2014 WL 1802293, at *5 ("'[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'") (citation omitted).[4]

---

[4] All distributions to Class Members from the Settlement will be made in compliance with the Plan of Allocation, as approved by the Court. To the extent any funds from the Settlement remain after six (6) months following the initial distribution, the Claims Administrator will make a second distribution of such funds, if economically feasible, to authorized claimants who deposited the checks sent to them in the initial distribution in an equitable and economical fashion. If any funds from the Settlement remain following the second distribution, such funds shall be donated to

In the Preliminary Approval Order, the Court preliminarily approved the Plan of Allocation. Plaintiff now respectfully requests that the Court give final approval of the Plan of Allocation, for the purpose of administering the Settlement.

## VI. THE NOTICE MEETS THE REQUIREMENTS OF DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

An extensive notice procedure, by mail and publication, has been completed. The Court approved the notice procedures in the Preliminary Approval Order (Dkt. No. 121).

Pursuant to the Preliminary Approval Order, a total of 19,079 Postcard Notices and 282 Notice Packets were mailed to potential Class Members. *See* Cavallo Decl. at ¶ 8. KCC also re-mailed 94 Postcard Notices that were returned as undeliverable. *Id.* at ¶ 7. The Summary Notice was timely transmitted over *PR Newswire,* and the Notice was posted to the DTC's legal notice system. *See id.* at ¶¶ 6-10. In addition, the Notice, Proof of Claim, and other relevant documents were posted on the settlement website, www.AmyrisSecuritiesLitigation.com, maintained by KCC. *Id.* at ¶ 12. This notice procedure, developed in conjunction with KCC, an experienced claims administrator, was tailored to reach Class Members and is similar to notice programs approved by numerous courts within this Circuit. *See, e.g., In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324, 2022 WL 2068424, at *12 (S.D. Cal. June 8, 2022) (approving mail notice to potential class members and brokers, publication notice, and dedicated website); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) (same); *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2021 WL 5447008, at *4 (N.D. Cal. Nov. 22, 2021) (approving mail notice to potential class members and nominees, publication notice, notice on Depository Trust Company's legal notice system, and dedicated website); *Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 1550478, at *11 (N.D. Cal. Apr. 20, 2021) (same).

The Notice explains the Action, Settlement, Plan of Allocation, the attorney fee and expense request, and the rights and options of Class Members. The Notice also explains how to

---

Public Justice Foundation, a §501(c)(3) non-profit, non-sectarian organization devoted to litigation and education in issues of public interest.

obtain additional information regarding any aspect of the Settlement or litigation. The Notice clearly and concisely provides information concerning the Settlement, including the estimated per share recovery for Class Members. This Notice complies with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. *See In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361 (9th Cir. 1979) (finding notice sufficient where it informed class members of the subject matter of the litigation, the terms of the proposed settlement and the proposed plan of allocation of the settlement proceeds); *see also Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977); *Reynolds v. NFL*, 584 F.2d 280, 285 (8th Cir. 1978) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Accordingly, Plaintiff respectfully submits that the notice program implemented in the Action constitutes the best notice practicable under the circumstances and satisfies the requirements of due process and Federal Rule of Civil Procedure 23.

## VII. CONCLUSION

In summary, the Settlement provides an immediate and guaranteed recovery for all Class Members that recovers a substantial portion of the estimated maximum damages, and it does so while avoiding the unpredictable risks inherent in continued litigation. Plaintiff, therefore, submits that the Settlement is fair, reasonable, and adequate. Plaintiff respectfully requests that this Court grant final approval of the Settlement and the Plan of Allocation.

Dated: October 4, 2022                 Respectfully submitted,

*/s/ William B. Federman*
William B. Federman (admitted *Pro Hac Vice*)
A. Brooke Murphy (admitted *Pro Hac Vice*)
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
-and-
212 W. Spring Valley Road
Richardson, TX  75081
wbf@federmanlaw.com
abm@federmanlaw.com

*Class Counsel for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Robert S. Green
GREEN & NOBLIN, P.C.
2200 Larkspur Landing Circle, Ste. 101
Larkspur, California 94939
Tel: (415) 477-6700/Fax: (415) 477-6710
-and-
4500 East Pacific Coast Highway
Fourth Floor
Long Beach, CA 90804
rsg@classcounsel.com


*Liaison Counsel for Plaintiffs*



## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed through the ECF system and will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF),

and paper copies will be sent to those indicated as non-registered participants on Tuesday,

October 04, 2022.

/s/ William B. Federman
William B. Federman