William B. Federman (admitted *pro hac vice*)
A. Brooke Murphy (admitted *pro hac vice*)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone:  405-235-1560
Facsimile:  405-239-2112
wbf@federmanlaw.com
abm@federmanlaw.com

*Class Counsel for Plaintiffs*

Robert S. Green
GREEN & NOBLIN, P.C.
2200 Larkspur Landing Circle, Ste. 101
Larkspur, California 94939
Tel: (415) 477-6700
Fax: (415) 477-6710
-and-
4500 East Pacific Coast Highway
Fourth Floor
Long Beach, California 90804
Tel: (562) 391-2487
rsg@classcounsel.com

*Liaison Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| VINCENT CARBONE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMYRIS, INC., JOHN G. MELO, and KATHLEEN VALIASEK,<br><br>Defendants. | Case No.:  4:19-cv-01765-YGR<br><br>**DECLARATION OF WILLIAM B. FEDERMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS**<br><br>Date:    November 8, 2022<br>Time:    2:00 p.m.<br>Location:  Courtroom 1, Fourth Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

I, William B. Federman, declare under penalty of perjury as follows:

1. I am an attorney duly admitted to the Bars of several states, including Oklahoma, Texas, and New York, and I am admitted *pro hac vice* in this case. I am a founder and member of the law firm Federman & Sherwood, Class Counsel in this Action.

2. I submit this declaration in support of Plaintiff's Motion for Final Approval of Class Action Settlement and Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Reimbursement Awards to Plaintiffs.

3. Through the Settlement, Defendants will pay $13,500,000 in cash in exchange for the resolution of this Action. *See* Stipulation and Agreement of Settlement (Dkt. No. 119-1) (the "Stipulation" or "Stipulation of Settlement").[1] The Settlement confers an immediate and substantial benefit on the Class. At the same time, the certainty of the Settlement eliminates the very real risk that continued litigation against the Defendants might yield nothing for the Class given the difficulties that the Class will face in establishing falsity, materiality, scienter, loss causation, and damages. The Settlement avoids these landmines and provides a certain and fair recovery for the Class while also avoiding years of delay from continued litigation, a trial, and appeals.

## I.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    The Settlement was Fairly and Honestly Negotiated

4. The record demonstrates that the Settlement was fairly and honestly negotiated at arms' length by competent and experienced counsel. This Action has been pending for over three years, and the Parties have thoroughly briefed and explored the issues, strengths, and weaknesses of their respective arguments.

5. By the time the Settlement was reached, Plaintiff and Class Counsel had gained a thorough understanding of the strengths and weaknesses of the Action and the damages that would be recoverable for the Class, if a judgment were entered in favor of Plaintiffs and sustained after

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation of Settlement.

appeals. Indeed, the Settlement was achieved only after a thorough pre-complaint investigation that culminated in a detailed Amended Complaint, hard-fought briefings and a hearing on Defendants' motion to dismiss, intensive discovery (including the review and analysis of more than 800,000 pages of documents produced by Defendants and relevant third parties), the review and challenge of Defendants' lengthy privilege log which contained thousands of entries, numerous letters and meet and confers relating to discovery issues including disputes over Defendants' privilege claims, depositions of Plaintiffs and their financial expert, motion and briefing on Class certification which resulted in the Class being certified, briefing on Defendants' petition to appeal the Court's order to certify the Class, consultation and discussions with the Class's financial expert regarding damages and loss causation, and consideration of all arguments presented. The depositions of Amyris's auditors and relevant employees were upcoming at the time the Settlement was reached.

6.     Moreover, the Settlement was reached only after the Parties conducted extensive arm's-length settlement discussions, including two full-day mediation sessions conducted by experienced and highly respected JAMS mediator, Robert A. Meyer, Esq. The mediation sessions were held on February 23, 2021, and March 18, 2021. While the mediations did not immediately result in a resolution, the Parties participated in multiple subsequent phone calls and emails facilitated by Mr. Meyer. After months of discussions and negotiations facilitated by and conducted through the mediator, Mr. Meyer proposed the $13,500,000 Settlement, which was accepted by the Parties.

**B.     The Settlement Provides an Excellent Result for the Class**

7.     The Settlement provides a very favorable result to the Class, particularly considering the sizeable recovery to the Class and the risks and costs attendant to further protracted litigation. The proposed Settlement will recover approximately 18.4% of the Class's damages expert's most aggressive estimate of aggregate damages ($73.17 million). The recovery achieved under the proposed Settlement is notably higher than historical median settlement recoveries as a percentage of estimated damages in securities class actions. For example, the

median recovery in securities class actions in 2020 and 2021 was approximately 1.8% of estimated damages. *See NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, at 24, attached hereto as Exhibit 1.

8.     The $73.17 million aggregate damage is an estimate of the very best outcome the Class could hope to achieve. Among other things, the $73.17 million potential recovery would be contingent on the jury finding: (1) that Defendants issued materially false or misleading statements throughout the Class Period; (2) that Defendants issued such statements with the intent to defraud investors; and (3) that the entire amount of the dollar drops following November 13, 2018, and March 19, 2019, were caused by these alleged false and misleading statements. Defendants have vehemently denied liability, scienter, and loss causation. Defendants and their financial expert have also staunchly maintained that any recoverable damages would be far less than Plaintiffs' expert's estimate. Defendants Further, the $73.17 million estimate is based on a class period ending on March 19, 2019. Defendants aggressively argued in their opposition to Plaintiffs' motion for class certification that the only viable class period ends on November 13, 2018. *See* Dkt. No. 91 at 14-16. If Defendants were successful in convincing the Court or a jury that the class period must end on November 13, 2018, the maximum potential damages, as determined by Plaintiffs' expert, would be reduced to $52.86 million and this still assumes that the entire stock drop following the November 13, 2018 disclosure was caused by Defendants' alleged misrepresentations. The Settlement represents a 25.54% recovery of maximum possible damages under this potentially shorter class period.  Moreover, Defendants vigorously argued that Plaintiffs' expert had vastly overestimated the number of publicly-traded damaged shares (as opposed to the damages per share) such that even if Plaintiffs could prove that some or all of the losses were a result of Defendants' allegedly false statements, the amount of aggregate losses estimated by Plaintiffs was still significantly inflated.

9.     Another driving motivation behind the Settlement is the legitimate concern that Defendants may not be able to pay a greater judgment or recovery in this Action. Amyris has reported in its filings with the Securities and Exchange Commission ("SEC") that there is

substantial doubt about its ability to continue as a going concern. Defendants also have very limited insurance available to fund a recovery or potential judgment in this Action. Because Defendants' attorneys' fees and costs are paid by the applicable insurance policies, the insurance remaining from these wasting policies would be further reduced were the litigation to continue.

10.     For the foregoing reasons and for the reasons further discussed in Plaintiff's Motion for Final Approval of Class Action Settlement and Memorandum of Law in Support Thereto, filed contemporaneously herewith, I believe that the proposed Settlement is fair and reasonable and satisfies all of the relevant legal standards for preliminary approval under Rule 23(e) of the Federal Rules of Civil Procedure.

## II.     THE NOTICE TO THE CLASS SATISFIES DUE PROCESS

11.     Following preliminary approval, Class Counsel instructed the Court-appointed Claims Administrator, KCC Class Action Services, to begin disseminating copies of the Notice by mail in accordance with the Preliminary Approval Order.  As set forth in the Declaration of Lance Cavallo ("Cavallo Decl.") (attached hereto as Exhibit 2), 19,079 copies of the Postcard Notice and 282 Notice Packets have been mailed to potential Class Members and nominees. *See* Cavallo Decl. at ¶ 8.  KCC also provided the Notice to the Depository Trust Company ("DTC") for posting on its Legal Notice System ("LENS").  *Id.* at ¶ 6.  In addition, KCC caused the Summary Notice to be transmitted over *PR Newswire*.  *Id.* at ¶ 10.

12.     In accordance with the Preliminary Approval Order, KCC has also established a dedicated settlement website, www.http://www.amyrissecuritieslitigation.com, to provide Class Members with information concerning the Settlement, the ability to access downloadable copies of the Notice and copies of the Stipulation and Agreement of Settlement, and the ability to submit claim forms online.  *Id.* at ¶ 12.  KCC has additionally established a toll-free telephone call center for Settlement Class Members to obtain information about the Settlement, request a Notice package, and/or seek other assistance.  *Id.* at ¶ 11.

13.     The Court-approved Notice explains the background and terms of the Settlement and provides members of the Settlement Class with the date of the final approval hearing.  The

Notice provides Settlement Class Members with an explanation of the Settlement, the Settlement benefits, the requests for fees and expenses of Plaintiffs' Counsel and awards to Plaintiffs, and the rights and options of Settlement Class Members. *See* Exhibit 2.A.

### III.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

14.   The Settlement Fund will be distributed in accordance with the Plan of Allocation. The Plan of Allocation was prepared by Plaintiffs' damages expert, Cynthia L. Jones, CFA, in consultation with Class Counsel.

15.   The Plan of Allocation reflects an assessment of the damages that could have been recovered under the claims alleged. The objective of the Plan of Allocation is to rationally and equitably distribute the net proceeds of the Settlement Fund to those Class Members who suffered economic losses as a result of the alleged misrepresentations and omissions. An Authorized Claimant's Recognized Loss will be based upon the dates of purchase and sale, if any, in correspondence with the amount of estimated alleged artificial inflation in Galena stock on the date(s) the stock was purchased. The Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Losses. All distributions to Class Members from the Settlement will be made in compliance with the Plan of Allocation, as approved by the Court.

16.   Accordingly, Class Representative and Class Counsel respectfully submit that the Plan of Allocation is fair, reasonable, and adequate, and should be approved by the Court.

### IV.   THE ATTORNEYS' FEES AND EXPENSES ARE FAIR AND REASONABLE

17.   The Notice provided to the members of the Settlement Class stated that Class Counsel would apply for a total award of attorneys' fees not to exceed 25% ($3,375,000) of the $13,500,000 Settlement Fund. The Notice further stated that Plaintiffs' Counsel would request reimbursement of expenses incurred and advanced by Plaintiffs' Counsel in prosecuting this litigation not to exceed $400,000.

18.   The work undertaken by Plaintiffs' Counsel in prosecuting this case and arriving at the Settlement in the face of substantial risks and very experienced defense counsel has been

time-consuming and challenging.  The litigation settled only after extensive work by Plaintiffs' Counsel.

19.     Plaintiffs' Counsel prosecuted this case on a contingency basis, committed substantial resources to the matter, and litigated it for more than three years—advancing and risking out of pocket costs in the process—without any compensation or guarantee of success. Based on the result achieved for the Class, the extent of work performed, the risks of the litigation and the contingent nature of the representation, we submit that a 25% fee award is fair and reasonable and should be approved.

### A.     Time and Labor Expended by Counsel

20.     It takes hard and diligent work by skilled counsel to efficiently develop facts and theories that will succeed or that will persuade defendants to enter into serious settlement negotiations.

21.     Plaintiffs' Counsel's experience aided the prosecution and favorable resolution of this Action.  Plaintiffs' Counsel have effectively litigated numerous complex actions and are particularly specialized in the niche area of securities fraud class actions.  Plaintiffs' Counsel have attached (as Exhibits 3 and 4) the respective firm resumés of Federman & Sherwood (Class Counsel) and Green & Noblin, P.C. (Liaison Counsel), setting forth their firms' respective experience.[2]

22.     The quality of opposing counsel is also a significant factor in considering the quality of services rendered by plaintiffs' counsel.  Plaintiffs here were opposed in this case by very skilled and highly respected counsel.  They proved to be formidable adversaries and spared no expense or effort in vigorously representing their clients.

23.     Federman & Sherwood, as Class Counsel, led the litigation and prosecution of this Action, devoting 2,440.60 hours to this litigation.  Class Counsel staffed this case efficiently, primarily utilizing two attorneys experienced in securities class actions: William B. Federman

---

[2] Class Counsel worked with Liaison Counsel who assisted in the litigation under the direction and supervision of Class Counsel. Liaison Counsel are not filing separate fee applications but instead seeks fees as part of Plaintiffs' application.

Declaration of William B. Federman                                    Case No. 4:19-cv-01765-YGR

and A. Brooke Murphy. Both attorneys actively managed this Action from its inception to the present.

24. Among other things, Class Counsel, primarily Mr. Federman and Ms. Murphy, have: (i) prepared and filed a motion and supporting memoranda to establish a leadership structure on behalf of all Plaintiffs; (ii) conducted a thorough case investigation and assessment of the factual and legal bases of the action, which included reviewing Defendants' public statements in both earnings call transcripts and investor presentations, and reviewing analyst reports and new articles; (iii) researched the then-new Accounting Standard Codification Topic 606, Revenue from Contracts with Customers ("ASC 606"), which involved an extensive review of articles from financial auditors and comments from the Financial Accounting Standards Board; (iv) drafted and filed the detailed amended complaint (*see* Dkt. No. 43); (v) prepared and filed detailed substantive briefing in opposition to Defendant's motion to dismiss the amended complaint (*see* Dkt. Nos. 52, 56) and argued in opposition of the motion during a substantive hearing; (vi) drafted and served multiple sets of document requests and interrogatories on Defendants; (vii) prepared and served nine (9) subpoenas *duces tecum* on relevant third parties, including Amyris's current and former auditors; (viii) prepared and served a detailed Freedom of Information Act ("FOIA") request on the SEC; (ix) responded to Defendants' discovery requests and produced responsive documents; (x) reviewed Defendants' lengthy privilege log, which contained thousands of entries, and raised challenges to Defendants' privilege claims; (xi) exchanged numerous substantive letters relating to discovery issues; (xii) participated in multiple meet and confers to resolve discovery disputes and to negotiate narrowed discovery requests; (xiii) reviewed and analyzed more than 800,000 pages of documents produced by Defendants and relevant third parties and gathered exhibits for depositions and potential summary judgment submissions; (xiv) participated in consultations with Plaintiffs' experts and assisted in the preparation of expert reports regarding issues of market efficiency, damages, and corporate auditing; (xv) prepared for and defended the depositions of Class Representative, lead plaintiff Rob Jansen, and Plaintiffs' damages expert; (xvi) researched and drafted the motion for class certification and the supporting memoranda;

(xvii) prepared an filed a detailed answer in opposition to Defendants' petition to appeal the Court's class certification order pursuant to Rule 23(f); (xviii) prepared a detailed mediation statement, reviewed and considered Defendants' mediation statement, and participated in two full-day mediation sessions with the involvement of well-respected JAMS mediator, Robert A. Meyer; (xvix) participated in extensive subsequent settlement negotiations through the assistance of Mr. Meyer; (xvx) memorialized the substantive settlement terms and prepared the settlement documents, including the exhibits thereto; (xxi) consulted with claims administrators to jointly develop a notice and claims submission program; (xxii) prepared motions and briefs in support of the settlement; and (xxiii) supervised the program to provide notice to the Class.

25.    In performing the above tasks and prosecuting this Action over the course of more than three years, Class Counsel committed more than **2,406 hours**, resulting in a lodestar of **$1,451,512.50**, as presented in the following table:

Federman & Sherwood

| NAME | | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| William B. Federman | (A) | 197.10 | $900 | $177,390.00 |
| Stuart W. Emmons | (A) | 46.60 | $675 | $31,455.00 |
| A. Brooke Murphy | (A) | 2,004.35 | $600 | $1,202,610.00 |
| Emily J. Seikel | (A) | 7.40 | $500 | $3,700.00 |
| Carin L. Marcussen | (A) | 2.50 | $450 | $1,125.00 |
| Molly E. Brantley | (A) | 5.70 | $450 | $2,565.00 |
| Seth A. Schwenn | (A) | 12.00 | $185 | $2,220.00 |
| Priscilla M. Scoggins | (PL) | 49.00 | $250 | $12,250.00 |
| Robin K. Hester | (PL) | 42.80 | $250 | $10,700.00 |
| Lacrista A. Bagley | (PL) | 3.70 | $250 | $925.00 |
| Tiffany R. Peintner | (PL) | 2.80 | $250 | $700.00 |
| Allison D. Bolton | (PL) | 7.70 | $250 | $1,925.00 |
| Jordan K. Medaris | (LC) | 7.00 | $175 | $1,225.00 |
| Asher P. Ang | (LC) | 15.55 | $150 | $2,332.00 |
| Reed C. Trechter | (LC) | 2.60 | $150 | $390.00 |
| **TOTAL** | | **2,406.80** | | **$1,451,512.50** |

(A) Attorney    (PL) Paralegal    (LC) Law Clerk

---

Declaration of William B. Federman                                    Case No. 4:19-cv-01765-YGR

26.     Class Counsel utilized Liaison Counsel to act as local counsel in this Action. Liaison Counsel's work included reviewing and finalizing certain filings, coordinating with Class Counsel regarding local rules and practices, filing documents with the Court, and participating in hearings alongside Class Counsel. To date, the number of hours spent on this litigation by Liaison Counsel is 33.80 hours.  A breakdown of the lodestar for Liaison Counsel is provided in the following chart:

Green & Noblin, P.C.

| NAME | | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| Robert S. Green | (A) | 33.80 | $850 | $28,730.00 |
| **TOTAL** | | **33.80** | | **$28,730.00** |

(A) Attorney

27.     Thus, from case inception, Class Counsel and Liaison Counsel have spent a combined total of **2,440.60 hours** in the prosecution of this Action on behalf of the Class.  This includes the work described in paragraphs 24 and 26, *supra*.  This does not include time spent in drafting the motion for attorneys' fees and expenses and does not include time that will be spent by Plaintiffs' Counsel on continuing services to the Class, including responding to Class Members' inquiries, supervising the Claims Administrator in the review and processing of claims, attending the final Settlement hearing, and overseeing the distribution of Settlement checks to Class Members.

28.     The total lodestar for the 2,440.60 hours of combined attorney and paraprofessional time based on the respective firm's/attorney's current rates is **$1,480,242.00**. The hourly rates are the usual and customary rates set by each firm, respectively, for each individual in this type of engagement.  The rates have been evaluated and approved by courts in class actions and complex litigations.[3]  The billing rates are reasonable for this case considering

---

[3] *See, e.g., In re Solara Medical Supplies Data Breach Litig*., No. 3:19-cv-02284-H-KSC, slip op. (S.D. Cal. Sept. 19, 2022); *Poling v. Artech, LLC*, No. 3:20-cv-07630-LB, slip op. (N.D. Cal. February 10, 2022); *In re Galena Biopharma, Inc. Sec. Litig.*, No. 2:17-cv-00929-JMV-JBC, slip op. (D.N.J. February 24, 2022); *Angley v. UTi Worldwide, Inc., et al*., 2:14-cv-02066-CBM-E slip op. (C.D. Cal. February 28, 2019).

---

the experience and expertise the lawyers have in this area of law.  Moreover, the billing rates are in line with prevailing fees in the community.[4]

29.     As noted above, the Action was undertaken on a wholly contingent basis. Plaintiffs' fee request of 25% of the Settlement Fund ($3,375,000) results in a reasonable multiplier of 2.28.  *See Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multiplers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *see, e.g., Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (approving attorneys' fees that resulted in lodestar multiplier of 2.83); *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *21 (N.D. Cal. Feb. 11, 2016) ("In securities class actions in particular, courts have applied multipliers ranging from 1.25 up to 4.") (collecting cases).

30.     Securities class action lawsuits are exceedingly expensive and difficult to litigate successfully.  Given the complexity of the Action, the responsibility and risk undertaken by Plaintiffs' Counsel, the difficulty of proof of liability and damages, the experience of Plaintiffs' Counsel and defense counsel, the excellent result achieved, the number of hours committed by Plaintiffs' Counsel, and the contingent nature of Plaintiffs' Counsel's agreement to prosecute this Action, Plaintiffs' Counsel respectfully submit that the requested attorneys' fees are reasonable and should be approved.  The reasonableness of the requested fee award is further evidenced by the fact that no Class Member has objected to the request, even though the Notice advised that it would be sought.  *See* Exhibit 2 at ¶ 14.

---

[4] For example, in *Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010), the Ninth Circuit affirmed the district court's approval of similar hourly rates for attorneys more than a decade ago. *Id.* at 455. Standard hour rates have only increased since then.  *See e.g., In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, slip op. at 3 (N.D. Cal. Sept. 20, 2018) (approving rates from $300 to $1,050 for attorneys, and $100 to $400 for paraprofessionals); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (awarding partners rates "from about $ 490 to $ 975" and non-partners "from about $ 310 to $ 800"); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-5923, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (approving and finding reasonable rates between $300 and $975 for attorneys and $150-$430 for litigation support and paralegals).

**B.    Reimbursement of Litigation Expenses**

31.    Plaintiffs' Counsel are also requesting reimbursement of the out-of-pocket expenses necessarily incurred and advanced by Plaintiffs' Counsel in the prosecution of the litigation in the amount of $360,177.27.

32.    The expenses incurred in this Action are reflected in the books and records of Plaintiffs' Counsel.  These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.  A breakdown of the combined litigation expenses incurred in this Action is set forth in below table:

| EXPENSE CATEGORY | AMOUNT |
|---|---|
| Court Reporters, Transcripts, Depositions | $3,278.29 |
| Experts, Consultants | $130,135.01 |
| Filing, Witness, Service of Process | $845.00 |
| Hotels, Meals, & Transportation | $4,921.38 |
| Investigators | $9,439.30 |
| Legal Notice | $465.00 |
| Lexis, Westlaw, Online Library Research | $27,559.31 |
| Mediation Fees | $15,500.00 |
| Messenger, Overnight Delivery | $756.83 |
| Photocopies | $1,962.25 |
| Production, E-Discovery, Document Database | $165,211.91 |
| Telephone, Facsimile, Video Conferencing | $102.99 |
| **TOTAL** | **$360,177.27** |

33.    The foregoing expenses were necessary and appropriate for the prosecution of this Action.  These expenses were essential to enable Plaintiffs' Counsel to achieve the results now before the Court.

34.    These expenses were advanced on a contingent basis.  Thus, throughout the litigation, Plaintiffs' Counsel was cognizant of the risk that the litigation expenses might not be reimbursed and were, therefore, incentivized only to incur necessary litigation costs.

35.    Initially, in order to meet the heightened pleading standards imposed by the PSLRA, including the requirement that Plaintiffs allege a strong inference of scienter, Lead Counsel was required to retain two sets of investigators to assist Class Counsel in investigating the underlying facts this case.  The investigators identified, located, and conducted preliminary

interviews of potential witnesses who were former employees of Amyris, including certain former Amyris employees identified as confidential witnesses in the Amended Complaint. Class Counsel were then able to conduct subsequent interviews of the witnesses with information relevant to the allegations. The money spent on these investigators proved to be invaluable in that Plaintiffs were able to utilize information gathered from the investigations to craft a complaint that survived the PSLRA's enhanced pleading standards. *See* Dkt. No. 61 at 26 ("[Plaintiffs] allege facts, including confidential witness statements to show that defendants had access to and would have known information contradicting the statements they were making to investors").

36.     Because of the complex issues presented by this case and how deep this Action went into the litigation process before a fair and reasonable settlement could be achieved, Class Counsel was required to utilize the services of an expert who analyzed and opined on issues of market efficiency, loss causation and damages. After careful consideration, Class Counsel selected Cynthia L. Jones, CFA, to serve as Plaintiffs' expert on these issues. Class Counsel consulted with Ms. Jones on the efficiency of the market for Amyris's stock, whether monetary losses were attributable to Defendants' alleged misstatements and omissions, and in what amount investors were damaged by Defendants' alleged misrepresentations. As part of her engagement on behalf of the Class, Ms. Jones prepared three (3) detailed expert reports—two on the issues of market efficiency and class-wide damages methodologies (which were filed with the Court), and one on the issues of Plaintiffs' losses and estimated damages (which was presented to the mediator and discussed with Defendants). Class Counsel also engaged Harris L. Devor, CPA, as an expert to analyze and prepare an expert report on issues relating to generally accepted accounting principles ("GAAP") and Defendants' alleged misstatements regarding the recognized royalty revenues and Amyris's internal control over financial reporting. This report was presented to the mediator and was discussed with Defendants during the settlement negotiations.

37.     Due to the large amount of discovery in this case, Class Counsel was required to incur considerable expenses for the electronic collection, storage, photocopying, imaging, and electronic management of hundreds of thousands of pages of relevant documents. In particular,

Class Counsel utilized the services of electronic discovery support vendors to conduct forensic document collections and productions, to create and maintain an electronic document review platform for the more than 800,000 pages of documents produced in this case, and to add, de-duplicate, organize, and provide reports on the extensive rolling document productions from Defendants and third parties.  These electronic discovery services allowed Class Counsel to efficiently and effectively search, review, code, and categorize documents based on, among other things, relevance, issues, custodians, and potential use in depositions, briefs, settlement negotiations, and trial.  Through the use of these services, Class Counsel are able to locate highly relevant documents that were presented to the mediator, and which likely assisted in persuading Defendants to agree to the settlement favorable to Plaintiffs.  In addition, Class Counsel incurred discovery expenses related to reimbursements for certain third party document collections and productions.  The discovery expenses were essential in that they enabled Class Counsel to collect and analyze relevant documents and prepare a chronology of evidence anticipated to be presented at trial.

38.    Throughout the more than three years of litigation, Class Counsel utilized various online research platforms, such as Westlaw, to conduct factual and legal research.  Such research was integral to Class Counsel's ability to effectively plead Plaintiffs' claims and to persuasively support the legal basis for those claims.  Indeed, the findings of such research served as the foundation for Class Counsel's arguments in briefs, hearings, and mediation submissions.

39.    The foregoing expenses are a necessary part of litigation of this magnitude and scale and were essential to enable Plaintiffs' Counsel to achieve the results now before the Court—the $13.5 million Settlement.

## V.    THE REQUESTED AWARDS TO CLASS REPRESENTATIVE AND LEAD PLAINTIFF ARE FAIR

40.    We seek a reimbursement award for Plaintiff Carbone, Court-appointed Class Representative, for the lost time and efforts expended in the more than three years of prosecuting and overseeing the Action on behalf of the Class.  The amount requested for Class Representative

is $6,750. A detailed declaration setting forth Plaintiff Carbone's participation in the Action is attached hereto. *See* Exhibit 5.

41.     Among other things, Class Representative: (i) reviewed and provided input on numerous pleadings and filings in this Action, including the allegations in the Amended Complaint; (ii) had multiple discussions and email exchanges with Class Counsel concerning the case status and strategy, including discussions on Defendants' motion to dismiss, Plaintiffs' motion for class certification, and Defendants' petition to appeal the Court's class certification Order; (iii) responded to Defendants' multiple sets of discovery requests, which included locating, gathering, and producing responsive documents and responding to detailed interrogatories; (iv) participated in the two mediations and stayed involved in the continued settlement negotiations; (v) prepared for and allowed himself to undergo a grueling deposition; (vi) carefully considered and approved the proposed Settlement in light of the strengths and weaknesses of the case, following phone conversations and emails with Class Counsel that centered around what was in the best interests of the Class; and (vii) reviewed and approved the Settlement Agreement and briefing submitted in support of the Settlement. *See id.* at ¶ 8.

42.     Plaintiff Carbone took his fiduciary obligations as a Class Representative very seriously, and he devoted considerable time, in excess of 85 hours, to overseeing the progress of this Action. *Id.* at ¶ 9. Had he not been devoting time to this Action, Class Representative would have spent the time on other endeavors, including his work as an insurance agent. *Id.* at ¶ 10. It is my opinion that the requested award of $6,750 is a reasonable reimbursement for the time, expense (including lost income), and effort Class Representative committed to this Action. Without these efforts by Class Representative, there would be no Settlement.

43.     We also seek a reimbursement award of $5,000 for Court-appoint lead plaintiff Rob Jansen. *See* Exhibit 6, attached hereto. While Mr. Jansen was not appointed as a class representative due to concerns that defenses unique to him would detract from the primary issues of the Action, Mr. Jansen had previously served as lead plaintiff for more than two years, during which he devoted considerable time and effort towards the litigation. Among other things, lead

plaintiff Jansen: (i) reviewed and provided input on numerous pleadings and filings, including the allegations in the Amended Complaint; (ii) had multiple discussions and email exchanges with Class Counsel concerning the case status and strategy, including discussions on Defendants' motion to dismiss and Plaintiffs' motion for class certification; (iii) responded to Defendants' multiple sets of discovery requests, which included locating, gathering, and producing responsive documents and responding to detailed interrogatories; (iv) participated in the two mediations; and (v) prepared for and allowed himself to undergo a lengthy deposition that took approximately seven hours to complete. *See id.* at ¶ 4. I believe the $5,000 amount requested is reasonable in light of lead plaintiff Jansen's contributions and expenses (including lost income) to the Action.

44. The reasonableness of the requested awards is further evidenced by the fact that no Class Member has objected to the awards, even though the Notice advised that awards of up to $7,500 each would be sought for both Plaintiff Carbone and lead plaintiff Jansen. *See* Exhibit 2.A.

## VI.    REACTION OF THE CLASS SUPPORTS APPROVAL OF THE SETTLEMENT

45. To date, no Class Member, out of thousands, has objected to any aspect of the Settlement, the Plan of Allocation, the Notice, the request for attorneys' fees and expenses, or for reimbursement awards. *Id.* at ¶ 14. Moreover, no investor has sought exclusion from the Class. *Id.* at ¶ 13.

46. Because the proposed Settlement has been overwhelmingly accepted by the members of the Class, this factor weighs heavily in favor of approving the Settlement, the Plan of Allocation, the request for attorneys' fees and expenses, and the reimbursement awards to Class Representative and lead plaintiff.

## VII.    CONCLUSION

47. For the reasons set forth herein and in the accompanying memoranda, the Settlement, Plan of Allocation, request for attorneys' fees and reimbursement of litigation expenses to Plaintiffs' Counsel, and request for awards to Class Representative Vincent Carbone and lead plaintiff Rob Jansen are fair, reasonable, and adequate and should be approved.

Declaration of William B. Federman                                Case No. 4:19-cv-01765-YGR

15

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 4, 2022                                  Respectfully submitted,

/s/William B. Federman
William B. Federman (admitted *pro hac vice*)
A. Brooke Murphy (admitted *pro hac vice*)
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Tel: (405) 235-1560/Fax: (405) 239-2112
-and-
212 W. Spring Valley Road
Richardson, TX  75081
wbf@federmanlaw.com
abm@federmanlaw.com

*Class Counsel for Plaintiffs*

Robert S. Green
GREEN & NOBLIN, P.C.
2200 Larkspur Landing Circle, Ste. 101
Larkspur, California 94939
Tel: (415) 477-6700/Fax: (415) 477-6710
rsg@classcounsel.com

*Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on Tuesday, October 4, 2022.

/s/William B. Federman
William B. Federman