UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VINCENT CARBONE,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**AMYRIS, INC., JOHN G. MELO, AND KATHLEEN VALIASEK**<br><br>Defendants. | CASE NO. 19-cv-1765-YGR<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARD**<br><br>Re: Dkt. Nos. 122, 123 |

The Court previously granted plaintiffs' Motion for Preliminary Approval of the Class Action Settlement in this matter on July 22, 2022. (Dkt. No 121, Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order").) As directed by the Preliminary Approval Order, on October 4, 2022, plaintiffs filed their Motions for Final Approval and for Attorney's Fees, Costs, and Service Award. (Dkt. Nos. 122, 123.) The motions are unopposed. The Court held a hearing on November 8, 2022 on the pending motions.

Having considered the motion briefing, the terms of the Settlement Agreement, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the Motion for Final Approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representative and class counsel are confirmed. The Motion for Attorney's fees, Costs, and Service Award is also **GRANTED**. The Court **ORDERS** that class counsel be paid 25% of the Settlement Fund in attorney's fees and $360,177.27 in litigation costs and incentive rewards of $6,750 for Class Representative Vincent Carbone and $5,000 for lead plaintiff Rob Jansen.

## I. BACKGROUND

Plaintiffs filed their initial class action complaint on April 3, 2019, and their amended complaint on September 13, 2019, against Amyris, its current Chief Executive Officer, and its

former Chief Financial Officer. Plaintiffs are purchasers of Amyris common stock. They allege that defendants knowingly or recklessly issued statements that materially misled investors, in violation of sections 10(b) and 20(a) of the Securities Exchange Act and Securities and Exchange Commission Rule 10b-5.

Defendants moved to dismiss the Amended Complaint on October 25, 2019 (Dkt. No. 45), which plaintiffs opposed. (Dkt. Nos. 52, 56.) Following completed briefing and a hearing, the Court denied defendants' motion to dismiss in its entirety on October 5, 2020. (Dkt. No. 61.) The parties then engaged in extensive discovery.

Plaintiffs moved for class certification on July 30, 2021. (Dkt. No. 83.) Following completed briefing and a hearing, the Court entered an order on December 8, 2021, which certified a class consisting of "[a]ll persons and entities who purchased shares of Amyris, Inc., common stock during the period from March 15, 2018 through March 19, 2019 (inclusive) and were damaged thereby; excluded from the Class are the Defendants, officers and directors of Amyris, members of the immediate families of the individual Defendants, and affiliates of the corporate Defendant" ("the Class"). (Dkt. No. 101 at 20.) In its order, the Court appointed Carbone as Class Representative but declined to appoint Jansen due to concerns that issues unique to him would become the focus of the action. (*Id.*) The Court appointed Federman & Sherwood as Class Counsel. (*Id.*) On December 22, 2021, defendants filed a petition in the United States Court of Appeals for the Ninth Circuit for permission to appeal the Order certifying the Class, pursuant to Fed. R. Civ. P. 23(f). (*See* Dkt. No. 104.) On January 7, 2022, plaintiffs filed an answer to the Rule 23(f) petition, and on January 14, 2022, defendants filed a motion for leave to file a reply in support of the Rule 23(f) petition. This motion and the Rule 23(f) petition were pending when the parties agreed to resolve the action. The proceedings in the Ninth Circuit have been stayed pending completion of the settlement process, including the Court's determination whether to approve the Settlement in this action.

On February 23, 2021 and March 18, 2021 the parties attended full-day mediation with JAMS mediator Robert A. Meyer, Esq. but did not reach resolution. (Dkt. No. 122 at 5.) With the assistance of Mr. Meyer, the parties continued their negotiation efforts while litigating the action.

2

On February 3, 2022, after months of negotiations, Mr. Meyer presented the parties with a mediator's proposal for a settlement. On February 4, 2022, both parties accepted Mr. Meyer's proposal to settle the action for $13,500,000.00, subject to executing formal settlement documents and the Court's approval of the Settlement. Subsequently, the parties spent extensive time negotiating the final terms of the Stipulation and Agreement of Settlement and associated exhibits.

On March 24, 2022, plaintiffs moved for preliminary approval of settlement, which this Court granted on July 22, 2022. (Dkt. Nos. 111 and 121.)

## II.     TERMS OF THE SETTLEMENT AGREEMENT

### A.     Monetary Relief

Pursuant to the proposed Settlement, defendants will cause $13,500,000.00 to be deposited into an interest-bearing escrow account (the "Settlement Fund") for distribution to eligible class members, after deduction of court-awarded fees and expenses.

As set forth in the long notice, class members who submit claims and are authorized claimants are entitled to payment based on their recognized loss. (Dkt. No. 112-1 at 7-8.) Undistributed funds will be contributed to *cy pres* recipient Public Justice Foundation. (Dkt. No. 11 at 22.)

### B.     Attorney's Fees and Costs

Under the Settlement Agreement, Class Counsel agreed to seek attorney's fees plus reimbursement of costs and expenses. The class notice told class members that counsel would seek no more than 25% of the Settlement Fund, which is defined in the notice and Settlement Agreement to include the settlement amount of $13.5 million plus accrued interest.

### C.     Class Member Release

In exchange for the settlement award, class members will release claims as set forth in the Settlement Agreement paragraph 1 (dd) through (ff) of the Settlement Agreement. (Dkt. No. 112-1.)

### D.     Class Notice and Claims Administration

The Court approved the parties' proposed notice procedures when it granted preliminary approval. Pursuant to those procedures a Summary Notice was transmitted over PR Newswire,

1  Notice was posted on the Depository Trust Company's legal notice system, and Notices were made
2  available to the public on the Settlement Website.

**III.  DISCUSSION**

    **A.  Legal Standard**

Class actions may be settled upon the court's approval. Fed. R. Civ. P. 23(e). Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Any fairness determination requires courts to "focus[ ] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members." *Staton*, 327 F.3d at 960. Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012). Specifically, Rule 23(e)(2) provides that a court may approve a proposed class action settlement after considering whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Where, as here, the proposed settlement resolves the claims in a security class action, the Private Securities Litigation Reform Act ("PSLRA") provides guidelines for attorney fees and

imposes distinct requirements for the form and content of the notice directed to the proposed settlement class. 15 U.S.C. § 78u-4(a)(6)-(7).

### B. Adequacy of Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and Class Counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). As laid out in the background above, Counsel has litigated this case for years, through discovery, motion practice, and mediation. Lead Plaintiff and Class Representative have also been engaged in the litigation. (Dkt. No. 124, Federman Decl. at ¶¶ 42-43.) Accordingly, the Court finds the Class was adequately represented.

### C. Arms-Length Negotiation

The Settlement Agreement appears to have been the product of arm's length and informed negotiations. The settlement occurred only after motion practice and extensive discovery. Thus, the parties have vetted their claims and know the strengths and weaknesses of their case, including as was further articulated during the hearing. The Court notes that the mediation lasted several sessions with each side "walking away" at various junctures.

In addition, the parties engaged in two mediation sessions conducted by JAMS mediator Robert A. Meyer, Esq., which demonstrates that the settlement reached by the parties was a result of serious, informed, non-collusive, and arms-length negotiation. Counsel for both parties are highly experienced. Accordingly, the Court finds that the record does not indicate collusion or self-dealing. *See In re Bluetooth*, 654 F.3d at 946-47.

The relief provided for the Class appears to be adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreements required to be identified under Rule 23(e)(3).

Moreover, the Settlement Agreement appears to treat Class members equitably relative to each other.

### D. Adequacy of Relief

The Court finds settlement here is fair and reasonable. Rule 23(e)(2)(C). Absent the settlement, plaintiffs would have to show, among other things, that defendants recklessly or with knowledge issued statements that were materially false or misleading, and that this caused the entire share price drop. (Dkt. No. 123 at 7.) Further, proceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals, and declining insurance proceeds. The Settlement Amount is approximately 18.4% of plaintiffs' damages expert's estimate of maximum aggerated damages, which is greater than comparable securities class action settlement recoveries as a percentage of estimated damages. (Dkt. No. 124, Federman Decl. at ¶ 7); *see* Laarni T. Bulan, and Laura E. Simmons, Cornerstone Research, Securities Class Action Settlements—2020 Review and Analysis, at 6; NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review, at 24.

Additionally, the reaction of the class has been positive. There were no opt-outs and no objections. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.,* 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

### E. Adequacy of Notice

The Court must direct notice "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due

1  process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*,
2  472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the
3  circumstances, to apprise interested parties of the pendency of the action and afford them an
4  opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306,
5  314 (1950). The Private Securities Litigation Reform Act of 1995 ("PSLRA") creates additional
6  requirements as to the information that must be provided in a notice of settlement in a securities
7  class action. 15 U.S.C. § 78u-4(7).

8  The Court finds the notice provided adequately meets the above criteria and that the
9  Claims Administrator has shown it adequately performed its duties in reaching out to and
10  responding to class members. (*See, e.g.,* Dkt. No. 126-1.)

### F. Notice to Government Agencies

The Settlement Administrator provided the required notice to federal and state attorneys general under the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1715(b). (Dkt. No. 471-2 ¶ 6.) Notice occurred on March 31, 2022, more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

## IV. MOTION FOR ATTORNEY'S FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

### A. Attorney's Fees

Attorney's fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id*. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

The Court analyzes an attorney's fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth

7

1    Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical
2    or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45
3    (citing *Vizcaino,* 290 F.3d at 1050–51.)
4         The percentage method is commonly used in securities fraud cases. The plain language of
5    the PSLRA states that class counsel is entitled to attorneys' fees that represent a "reasonable
6    percentage" of the damages recovered by the class. 15 U.S.C.A. § 78u-4(a)(6); *see In re American*
7    *Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20; *see also In re Rite Aid Corp. Sec. Litig.*,
8    396 F.3d 294, 300 (3d Cir. 2005), as amended (Feb. 25, 2005) ("[T]he PSLRA has made
9    percentage-of recovery the standard for determining whether attorney's fees are reasonable.").
10   Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of
11   the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the
12   record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942
13   (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).
14   The benchmark should be adjusted when the percentage recovery would be "either too small or
15   too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican*
16   *Workers*, 904 F.2d at 1311.  When using the percentage-of-recovery method, courts consider a
17   number of factors, including whether class counsel "'achieved exceptional results for the class,'
18   whether the case was risky for class counsel, whether counsel's performance 'generated benefits
19   beyond the cash settlement fund,' the market rate for the particular field of law (in some
20   circumstances), the burdens class counsel experienced while litigating the case (e.g., cost,
21   duration, foregoing other work), and whether the case was handled on a contingency basis." *In re*
22   *Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290
23   F.3d at 1047-50. "[T]he most critical factor [in determining appropriate attorney's fee awards] is
24   the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).
25        Under the lodestar approach, a court multiplies the number of hours reasonably expended
26   by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("A
27   reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'").
28        Here, class counsel advocates applying the percentage-of-the-fund method. Class counsel

request 25% of the Settlement Fund.[1] In applying the percentage-of-the-fund method, the Court finds that an award of $3,375,000 (25% of the common fund) is reasonable especially given the length and complexity of the proceedings. *See, e.g., In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941–42 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). The instant litigation was not run-of-the-mill and included arcane areas of accounting.

The Court authorizes the award after applying the lodestar method as a cross-check. *In re Bluetooth*, 654 F.3d at 944–45. Class counsel has submitted several declarations describing its billing rates and hours worked for this case. Having reviewed the billing rates, the Court finds them reasonable in light of the prevailing market rates in this district and that class counsel has submitted adequate documentation justifying those rates. The Court also finds that the billing records adequately reflect the amount of time reasonably spent on this litigation. (Dkt. No. 129-1.) Accordingly, the Court finds that class counsel's reported total lodestar of $1,480,242, which covers 2,440.60 hours of time worked, reasonable.

The Court's award represents a positive multiplier of 2.28. (Dkt. No. 129 at 1.) As indicated above, the Court may "adjust" the lodestar figures "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth*, 654 F.3d at 941-42.

The Court concludes that a positive multiplier of 2.28 is appropriate, in line with the vast majority large settlements such as this one, and would adequately reward class counsel for the work performed in this litigation. The Court recognizes that class counsel has achieved significant benefits for the class and that class counsel assumed a risk of nonpayment while litigating this case for over three years. As discussed, the cash fund represents approximately 18.4% percent of

---

[1] As defined in the Settlement Agreement greement, Definitions at ¶ 1(qq) and in the long-form notice, the Settlement Fund includes the $13.5 million settlement amount plus accrued interest.

the maximum potential damages for the class. Class counsel achieved a significant result for the class.

Based on the foregoing, the Court awards class counsel 25% of the Settlement Fund.

B. **Costs Award**

Class Counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses in the amount of $360,177.27. The Court finds an award of $360,177.27 in costs reasonable, fair, and adequate.

C. **Service Awards**

The district court must evaluate requested awards using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013). The PSLRA acknowledges, and allows for, the option that class representatives and lead plaintiffs be provided reimbursement awards to compensate them for their service on behalf of the class. *See* 15 U.S.C. § 78u-4(a)(4) ("Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.").

Here, class representative Carbone spent significant time, in excess of 85 hours,

representing the Class.  (Federman Decl. at ¶ 42.)  Lead plaintiff Jansen has similarly assisted in this litigation for years, including by responding to discovery requests, being deposed, and and participation in the two mediations.  (*Id.* at ¶ 43.)  Thus, the Court approves the requested incentive award payment.

## V. CONCLUSION

Based upon the foregoing, the motions are **GRANTED**.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement issued on July 22, 2022, and this Order.  This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than **JULY 21, 2023**.  The Court **SETS** a compliance deadline on **JULY 28, 2023** on the Court's 9:01 a.m. calendar to verify timely filing of the post-distribution accounting.

This terminates docket numbers 122, 123.

**IT IS SO ORDERED.**

Dated: November 8, 2022

_____<br>
YVONNE GONZALEZ ROGERS<br>
UNITED STATES DISTRICT COURT JUDGE